UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ                                          CIVIL ACTION

VERSUS                                                        NO. 20-2389

LAMORAK INSURANCE CO., ET AL.              SECTION "R" (4)


**ORDER AND REASONS**


Plaintiff, Callen Cortez, moves to remand this matter to state court.[1]

Defendants, Huntington Ingalls Incorporated, Lamorak Insurance

Company, and Albert L. Bossier, Jr. (collectively, "Avondale") oppose the

motion.[2]  For the following reasons, the Court denies plaintiff's motion to

remand.


## I.    BACKGROUND

This case arises from alleged exposure to asbestos.  Plaintiff Callen

Cortez worked at Avondale Shipyards from 1969 to 1974.[3]  During his time

at Avondale, plaintiff alleges that he was exposed to asbestos in the course of

his work and while riding to and from work with other Avondale employees

---

[1]     *See* R. Doc. 15.
[2]     *See* R. Doc. 29.
[3]     *See* R. Doc. 1-1 at 5 ¶ 8.

on a labor bus.[4]  Plaintiff contends that other Avondale employees on the bus wore clothing and carried items contaminated with asbestos.[5]  On June 2, 2020, Cortez was diagnosed with malignant mesothelioma.[6]

On July 1, 2020, Cortez filed a complaint in the Civil District Court for the Parish of Orleans suing, among others, Huntington Ingalls, Inc., the successor corporation to Avondale.[7]  Plaintiff alleges that his exposure to asbestos while at Avondale caused his mesothelioma.[8]  Cortez's state-court petition asserts failure-to-warn and other negligence claims against Avondale.[9]  Avondale was served with Cortez's state-court petition on July 8, 2020, and on July 28, 2020.[10]

On August 11 and 12, 2020, the defendants deposed Cortez.[11]  Cortez testified that he worked primarily at Avondale's Westwego Yard[12] and that he traveled to and from work on a co-worker's labor bus every day.[13]  Cortez

---

[4]     *See id.*

[5]     *See id.*

[6]     *See id.* at 10 ¶ 17.

[7]     *See id.* at 3 ¶ 3.

[8]     *See id.* at 5 ¶ 8.

[9]     *See id.* at 6-7 ¶ 10.

[10]    *See* R. Doc. 15-25 at 1-2 (Service of Huntington Ingalls Incorporated and Lamorak Insurance Company on July 8, 2020); *See id.* at 3 (Service of Albert Bossier, Jr., on July 28, 2020).

[11]    *See* R. Doc. 1-2.

[12]    *See id.* at 25 (Cortez Deposition at 109:9).

[13]    *See id.* at 736  (Cortez Deposition at 820:18, 23).

noted that all of the employees on the labor bus were Avondale employees.[14] One of those employees, Cortez testified, was a man who went by the name "Black Reulet."[15]   Avondale submits an obituary suggesting that "Black Reulet" is Pierre Helton Reulet.[16]   Avondale also submits Pierre Helton Reulet's injury report, which indicates that Reulet worked as a shipfitter on three U.S. Coast Guard Cutters built at the Westwego Yard in 1970 and 1971.[17] Avondale asserts that the U.S. Government required Avondale to install asbestos on all three of those Coast Guard vessels.[18]

On August 31, 2020, Avondale removed this matter to federal court under the Federal Officer Removal Statute, 28 U.S.C. § 1442.[19]   In its notice of removal, Avondale argues that removal is timely,[20] and that Cortez was exposed to asbestos as a result of the Avondale's contracts to build vessels on behalf of the United States.[21]   As a result, Avondale asserts that it is entitled

---

[14]   *See id.* at 737 (Cortez Deposition at 821:4).

[15]   *See id.* at 700 (Cortez Deposition at 784:19).

[16]   *See* R. Doc. 1-3 at 4 (Obituary referring to Pierre Helton Reulet as "Black").

[17]   *See* R. Doc. 29-1 at 15-16, 22-25, 27, 38 (Reulet Accident Reports). Defendants represent that in Reulet's reports, Westwego is abbreviated to "Wego" or "WW," and the Coast Guard Cutters are noted as "C.G. Cutter," "USCGC," "CGC," and "CC."  *See* R. Doc. 29 at 4 n.26.

[18]   *See* R. Doc. 29 at 5.

[19]   *See* R. Doc. 1.

[20]   *See id.* at 6 ¶ 8.

[21]   *See id.* at 6 ¶ 7.

to litigate plaintiff's claims in federal court.  Plaintiff now moves to remand this matter to state court.[22]

## II.    LEGAL STANDARD

The Federal Officer Removal Statute authorizes removal of a suit by the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1).  The party asserting jurisdiction under this statute bears the burden of establishing that federal jurisdiction exists. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998).

The purpose of the statute is to protect the lawful activities of the federal government from undue state interference.  *See Willingham v. Morgan*, 395 U.S. 402, 405-06 (1969).  Because the federal government "can act only through its officers and agents," it has a strong interest in ensuring that the states do not hinder those officers in the execution of their duties. *Id.* at 406-07.  The Federal Officer Removal Statute "authorizes removal of the entire case even though only one of its controversies might involve a

---

[22]    *See* R. Doc. 15.

federal officer or agency." *IMFC Prof. Servs. of Fla. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 158 (5th Cir. 1982).

Because of its broad language and unique purpose, the Federal Officer Removal Statute is construed more liberally than the general removal provision.  Unlike the general removal statute, which must be  "strictly construed in favor of remand," *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002), the Federal Officer Removal Statute "must be liberally construed." *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007) (collecting cases).  This right to removal "is absolute for conduct performed under color of federal office, and [the U.S. Supreme Court] has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citing *Willingham*, 393 U.S. at 407).  Additionally, removal under § 1442(a)(1) does not require the consent of codefendants.  *See Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014).

## III.  DISCUSSION

### A.  Timeliness

Avondale's removal was timely.  Under the Federal Officer Removal Statute, a defendant generally has thirty days from service to remove a

matter to federal court. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days by the defendant, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."). But the statute creates an exception when a case "by the initial pleading is not removable." *See* 28 U.S.C. § 1446(b)(3). In those cases, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." *Id.* Put another way, a defendant may remove to federal court thirty days after the "receipt" of an "order or other paper" that indicates, for the first time, that the matter is removable.

Here, Avondale was served with the state-court petition on July 8, 2020,[23] and July 28, 2020.[24] Avondale therefore had thirty days, or until August 27, 2020, to remove this matter under 28 U.S.C. § 1446(b)(1); *see* 28 U.S.C. § 1446(b)(2)(B) (providing that each defendant has "30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal"). Avondale did not remove the case until

---

[23]   *See* R. Doc. 15-25 at 1-2 (Service of Huntington Ingalls, Inc., and Lamorak Insurance Company).

[24]   *See id.* at 3 (Service of Albert Bossier, Jr.).

August 31, 2020.[25]  The Court must therefore determine whether there exists an "order or other paper" that started the removal clock on or after August 1, 2020—thirty days before Avondale removed this matter.

The Court finds that Avondale's receipt of Cortez's deposition transcript on August 12, 2020, rendered removal timely.  The Fifth Circuit's decision in *Morgan v. Huntington Ingalls, Inc.* is instructive.  879 F.3d 602 (2018).  In *Morgan*, the Fifth Circuit considered whether a plaintiff's action against his former employers involving asbestos exposure was properly removed to federal court.  The Fifth Circuit noted that the plaintiff's state-court petition did "not identify any vessels on which [plaintiff] worked" or other details that made the case removable under the Federal Officer Removal Statute.  *Id.* at 605.  But the Fifth Circuit found that the removal clock started when the defendants received a deposition transcript that indicated that the plaintiff had worked on the *USS Huntsville*—a vessel that the defendants constructed under contract for the U.S. Navy.  *Id.* at 605 n.3.

As was the case in *Morgan*, Cortez's deposition provided Avondale with information for the first time suggesting that this matter was removable under the Federal Officer Removal Statute.  It was only after Avondale deposed Cortez that it learned that Cortez worked at Avondale's Westwego

---

[25]    *See* R. Doc. 1.

Yard[26] and that he rode to and from work with Reulet on the labor bus.[27] At that point, Avondale was able to learn that Reulet, and potentially other employees on the bus, worked on the three U.S. Coast Guard Cutters at the Westwego Yard.[28] Cortez also testified that he and Reulet were exposed to "the same products" while at Avondale.[29] Because this information was not apparent on the face of Cortez's state-court pleading, and because this information renders this matter removable as discussed below, the Court finds that Avondale's receipt of Cortez's deposition transcript was an "order or other paper" that started the removal clock on August 12, 2020. 28 U.S.C. § 1446(b)(3); *see also Morgan*, 879 F.3d at 612 (holding that thirty-day removal clock began ticking upon receipt of deposition transcript providing details about plaintiff's exposure to asbestos).

### B.  Federal Officer Removal

To remove an action under the Federal Officer Removal Statute, a defendant must show: (1) it has asserted a colorable federal defense; (2) it is a "person" within the meaning of the statute; (3) it has acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or

---

[26]    *See* R. Doc 1-2 at 25 (Cortez Deposition at 109:9).

[27]    *See id.* at 700 (Cortez Deposition at 784:19)

[28]    *See* R. Doc. 29-1 at 15-16, 22-25, 27, 38 (Reulet Accident Reports).

[29]    *See id.* at 701, 702 (Cortez Deposition at 785:22, 786:9, 24-25)

associated with an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). The Court discusses each of these requirements in turn.

### 1. *Avondale Asserts a Colorable Federal Defense*

With respect to the first factor, the Avondale has asserted a "colorable federal defense." *Latiolais*, 951 F.3d at 296. "To be 'colorable,' the asserted defense need not be 'clearly sustainable.'" *Id.* Rather, "an asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Id.* at 297 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017)). "Certainly, if a defense is plausible, it is colorable." *Id.* When a federal defense requires a defendant to satisfy several factors, the defendant must make a colorable showing as to each factor. *See id.* at 297-98.

Avondale asserts a colorable defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). The *Boyle* defense "extends to federal contractors an immunity enjoyed by the federal government in the performance of discretionary actions." *Latiolais*, 951 F.3d at 297 (citing *Zeringue*, 846 F.3d at 790). The *Boyle* defense requires that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the [contractor] warned the

United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States." *Boyle*, 487 U.S. at 512. Avondale has made a colorable showing on all three of the *Boyle* conditions.

First, Avondale submits evidence suggesting that the United States approved "reasonably precise specifications." All that is required here is a showing that the "government supplied the relevant specifications." *Winters*, 149 F.3d at 400 (citing *Smith v. Xerox Corp.*, 866 F.2d 135, 138 (5th Cir. 1989)). Avondale submits an affidavit from Christopher Herfel, a marine engineer and naval historian.[30] Hefel's affidavit asserts that Avondale constructed the U.S. Coast Guard Cutters under contract with the United States while Cortez worked at Avondale.[31] Herfel avers that those contracts specified the materials that Avondale was required to use in constructing various parts of the Cutters. For example, Herfel contends that the contracts mandated that Avondale use "Johns-Manville Marinite 36," a material containing approximately 40% amosite asbestos, to construct joiner linings in living spaces.[32] He also attests that failure to use the specified materials could result in Avondale's being held in default.[33] In *Latiolais*, the Fifth

---

[30]   *See* R. Doc. 29-2 (Affidavit of Christopher Herfel).
[31]   *See id.* at 4-5 ¶¶ 14-15.
[32]   *See id.* at 5-6 ¶ 16.
[33]   *See id.* at 8 ¶ 26.

Circuit observed that affidavits such as Herfel's satisfy the first *Boyle* factor. 951 F.3d at 297 (writing that "Avondale submitted one affidavit and deposition testimony alleging that the Navy required installation of asbestos" and that those documents made "colorable that the government approved reasonably precise specifications about the installation of asbestos").[34] Accordingly, the Court finds that Avondale has made a "colorable" showing that the Government approved reasonably precise specifications.

Second, Avondale has made a colorable showing that it complied with the United States's instructions. As to this requirement, Herfel's affidavit indicates that the U.S. government regularly inspected Avondale's work to ensure compliance with the contracts.[35] Avondale also includes an affidavit from a fact witness, Edward Blanchard, who worked as a supervisor and became Vice President of Production at Avondale.[36] Blanchard avers that the federal government regularly inspected Avondale's work to ensure that

---

[34] Cortez objects to the use of Herfel's affidavit on the grounds that Herfel's testimony is "nothing but a conclusion unsupported by record facts." *See* R. Doc. 48 at 5. The Court overrules the objection. Herfel's fourteen-page affidavit draws upon his academic and professional background, as well as his research into records pertaining to Avondale Shipyards. R. Doc. 29-2 at 4 ¶ 13. The Fifth Circuit has relied on similar evidence to discern the content of government contracts at the removal stage. *Latiolais*, 951 F.3d at 297 (relying on an affidavit and deposition to determine the content of Avondale's contract with the U.S. Navy).

[35] *See id.* at ¶ 17.

[36] *See* R. Doc. 29-8 at 1 ¶ 1 (Affidavit of Edward Blanchard).

the vessels were made to the U.S. Government's specifications.[37]  Blanchard indicated that the federal government required compliance with the "smallest details," including "the temperature and humidity at which welding rods were stored."[38]  This evidence is sufficient to make a colorable showing that Avondale complied with the federal government's instructions. *See Savoie v. Pennsylvania General Ins.*, No. 15-1220, 2017 WL 2391264, at *7 (E.D. La. June 2, 2017) (holding that Avondale made a colorable showing as to compliance because "[t]he affidavits submitted by [Avondale] clearly state that . . . the government required the use of asbestos-containing materials, the federal government provided oversight, and Avondale would have breached these contracts if it failed to use the asbestos-containing materials").

As to the third and final element of the *Boyle* analysis, "it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know."  *Latiolais*, 951 F.3d at 298.  Here, Herfel's affidavit reasons that the U.S. Government began studying the health effects of asbestos dust on shipyard workers during World War II,[39] and that as a result of those studies and subsequent ones "the United States

---

[37]     *See id.* at 2 ¶ 5.

[38]     *See id.* at 4-5 ¶ 12.

[39]     *See* R. Doc. 29-2 at 12 ¶¶ 43-44 (Affidavit of Christopher Herfel).

Government as a whole . . . developed and acquired state-of-the-art knowledge concerning potential risks or hazards relating to . . . asbestos."[40] In light of the many studies commissioned by the U.S. Government, Herfel concludes that "[i]t is inconceivable that contract shipyards, such as Avondale, would have had the same level of sophisticated knowledge as the U.S. Navy or the U.S. Coast Guard concerning potential asbestos hazards."[41] The Court finds that Avondale has made a colorable showing as to the warning requirement. *See Latiolais*, 951 F.3d at 298 ("Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures."). Having established that Avondale has asserted a colorable federal defense under *Boyle*, the Court proceeds to the remaining factors of the Federal Officer Removal Statute.

### 2.   *Avondale Satisfies the "Person" Requirement*

In addition to asserting a colorable federal defense, a defendant must show that it is "person" to avail itself of the Federal Officer Removal Statute. "[T]he Supreme Court has long recognized that the removal statute also applies to . . . corporate entities 'who lawfully assist the federal officer in the

---

[40]   *See id.* at 13 ¶ 45.
[41]   *Id.*

performance of his official duty'" *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461 (5th Cir. 2016) (quoting *Watson,* 551 U.S. at 151), *overruled on other grounds by Latiolais*, 951 F.3d at 291.  Indeed, the Fifth Circuit has held on multiple occasions that the Avondale parties in this case are "persons" within the meaning of the Federal Officer Removal Statute.  *See, e.g.*, *Latiolais*, 951 F.3d at 291 (holding that Avondale is a person within the meaning of the statute); *Savoie*, 817 F.3d at 462 (holding that Huntington Ingalls, Inc., the successor corporation to Avondale, and its executive officers, constitute "persons" within the meaning of the statute).  The Court finds that Avondale is a "person" within the meaning of the Federal Officer Removal Statute.

> 3.    *Avondale Acted Pursuant to a Federal Officer's Directions*

As to the third factor, the Court finds that Avondale acted "pursuant to a federal officer's directions."  *Latiolais*, 951 F.3d at 296.  This component requires the defendant to show that it was "acting under" an officer of the United States.  *Zeringue* v. 846 F.3d at 792.  The U.S. Supreme Court has made clear that "[t]he words 'acting under' are broad."  *Watson*, 551 U.S. at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).  The "acting under" relationship "'typically involves 'subjection, guidance or control,'" *Zeringue* v. 846 F.3d at 792 (quoting *Watson*, 551 U.S. at 151), "but, at a

minimum, it 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* (quoting *Watson*, 551 U.S. at 152). The Fifth Circuit has held that a corporate entity that builds ships on behalf of the United States satisfies this requirement. *Id.* ("[The contractor's] provision of parts in an effort to assist the Navy's construction of vessels satisfies the 'acting under' requirement."). Here, Avondale acted under color of a federal officer by constructing the three Cutters for the U.S. Coast Guard. *Id.*

Cortez argues that his exposure to asbestos, in and of itself, indicates that Avondale could not have acted pursuant to a federal officer's directions. In support of this argument, Cortez first states that the U.S. Coast Guard no longer mandated the use of asbestos during the time period that Cortez was an Avondale employee.[42]   But Cortez does not submit evidence to support this proposition.  Instead, Cortez points to a U.S. Coast Guard "equipment list," which enumerates both asbestos-containing and non-asbestos-containing materials for use aboard Coast Guard vessels.[43]  This evidence does not suggest that the U.S. Coast Guard no longer mandated the use of asbestos on its vessels, and it does not speak to the content of the contracts

---

[42]    *See* R. Doc. 15-1 at 11.

[43]    *See* R. Doc. 15-23 at 8 (Coast Guard Equipment List at 47).

between Avondale and the U.S. Coast Guard.  To the extent the parties dispute whether the Coast Guard required the use of asbestos on the three Cutters at the Westwego Yard, the Court resolves the dispute in Avondale's favor at this stage.  *See Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992); *see also Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671 (E.D. La. 2007) ("[T]he Court must interpret the [Federal Officer Removal] statute liberally, resolving any factual disputes in favor of federal jurisdiction.")

Next, Cortez asserts that Avondale failed to comply with a federal officer's directions because Avondale violated the Occupational Safety and Health Act (OSHA) of 1970, 29 U.S.C. § 651, *et seq*,[44] and the Walsh-Healey Public Contracts Act, 41 U.S.C. § 6501, *et seq*.[45]  Those statutes, plaintiff contends, required Avondale to mitigate workers' exposure to asbestos.[46] Here too, Avondale has submitted evidence suggesting that it complied with federal law during the years of Cortez's employment.  For example, Herfel's affidavit indicates that Avondale and the U.S. Government incorporated the requirements of the Walsh-Healey Act and OSHA into their contracts,[47] and that U.S. Coast Guard Resident Inspectors continually inspected Avondale to

---

[44]    *See id.* at 12.
[45]    *See id.* at 16.
[46]    *See id.* at 17-18.
[47]    *See id.* at 12 ¶ 42.

16

ensure full compliance.[48]   Blanchard's affidavit likewise indicates that "[f]ederal [i]nspectors would continuously inspect the vessel[s] to ensure that the work . . . met the federal government's regulatory and contractual criteria."[49]   Blanchard specifically notes that "the United States Coast Guard had safety and occupational health inspectors at Avondale that conducted frequent 'walk-throughs' throughout the shipyard facility."[50]   Again, the Court resolves any conflict on this issue in Avondale's favor at this juncture. *See Louisiana*, 978 F.2d at 232.   Accordingly, the Court finds that Avondale acted "pursuant to a federal officer's directions" in constructing the three U.S. Coast Guard Cutters at the Westwego Yard.

### 4.   *The "Connected or Associated With" Requirement*

As to the final requirement, the Avondale has submitted sufficient evidence to show that "the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296. In *Latiolais*, the Fifth Circuit observed that Congress had "broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* at 292 (emphases in original).   It noted that "'[the ordinary meaning of the[] words

---

48   *See id.* at ¶ 17.
49   *See* R. Doc. 29-8 at 2 ¶ 5 (Affidavit of Edward Blanchard).
50   *See id.* at 4 ¶ 4.

['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Id.* at 292 (quoting *Morales v. Trans World Airlines, Inc.*, 503 U.S. 374, 383 (1992)). The Fifth Circuit stated that the "connected or associated with" standard is met when, as here, a plaintiff alleges failure-to-warn or other negligence claims having to do with the installation of asbestos. *Id.* at 296 (noting that plaintiff "alleges that Avondale failed to warn him of the dangers of asbestos and failed to take measures to prevent exposure" and that those allegations were "connected with the installation of asbestos during the refurbishment of the *USS Tappahannock*").

In the wake of *Latiolais*, another district court reasoned that a mail dispatcher's claims against Avondale satisfied the "connected or associated with" requirement, even though the mail dispatcher did not set foot on any U.S. vessels at Avondale. *See Bourgeois v. Huntington Ingalls, Inc.*, No. 20-1002, 2020 WL 2488026, at *6 (E.D. La. May 14, 2020). The *Bourgeois* court noted that the plaintiff mail dispatcher traveled around the Avondale shipyard while Avondale was constructing several ships for the U.S. Government. *Id.* The court noted that the plaintiff was "likely exposed to asbestos used under the direction of a federal officer." *Id.*

Here, Avondale submits sufficient evidence that Cortez's allegations are "connected or associated with" Avondale's shipbuilding on behalf of the U.S. Government.  The evidence indicates that, at the time of Cortez's employment, Avondale was building three U.S. Coast Guard Cutters at the Westwego Yard.[51]  There is also evidence that the federal government required Avondale to construct those vessels using materials that contained asbestos.[52]  Moreover, Avondale's evidence suggests that Cortez rode to and from work every day with other Avondale employees who worked at the Westwego Yard[53] and that at least one of those individuals, "Black" Reulet, worked on those U.S. Coast Guard Cutters.[54]  Plaintiff alleges that he was exposed to asbestos while on the bus.[55]  Considering all of the evidence, and keeping in mind that the Federal Officer Removal Statute must be liberally construed, the Court finds that it must deny Cortez's motion to remand.

---

[51]     *See* R. Doc. 29-1 at 15-16, 22-25, 27, 38 (Reulet Accident Reports); R. Doc. 29-2 at 4-5 ¶¶ 14-15 (Affidavit of Christopher Herfel).

[52]     *See* R. Doc. 29-2 at 5-6 ¶ 16 (Affidavit of Christopher Herfel).

[53]     *See* R. Doc 1-2 at 25 (Cortez Deposition at 109:9).

[54]     *See* R. Doc. 29-1 at 15-16, 22-25, 27, 38 (Reulet Accident Reports); *See* R. Doc. 1-2 at 700 (Cortez Deposition at 784:19).

[55]     *See* R. Doc. 1-1 at 5 ¶ 8.

## IV.   CONCLUSION

For the foregoing reasons, Cortez's motion to remand is DENIED.


New Orleans, Louisiana, this __23rd__ day of November, 2020.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE