UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALLEN J. CORTEZ** | * | **CIVIL ACTION NO.: 2:20-CV-2389** |
| | * | |
| | * | **SECTION R(3)** |
| **VERSUS** | * | |
| | * | **DISTRICT JUDGE:** |
| | * | **SARAH S. VANCE** |
| **LIBERTY MUTUAL INSURANCE** | * | |
| **CO.,** *ET AL* | * | **MAGISTRATE JUDGE:** |
| | * | **JANIS VAN MEERVELD** |

* * * * * * * * * * * * * * * *

### GOODRICH CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT THAT CALLEN CORTEZ HAS MESOTHELIOMA AND THAT ASBESTOS WAS THE CAUSE OF HIS MESOTHELIOMA

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Goodrich Corporation ("Goodrich"), who submits this Opposition to Plaintiff's Motion for Summary Judgment that Callen Cortez has Mesothelioma and that Asbestos was the Cause of his Mesothelioma (Rec. Doc. No. 504), and respectfully requests that Plaintiff's Motion be denied for the following reasons:

**I.   INTRODUCTION**

Plaintiff filed a Motion for Summary Judgment asking this Court to rule that Callen Cortez has mesothelioma and that asbestos is the cause of his mesothelioma. However, the question of causation regarding Mr. Cortez's mesothelioma creates a genuine issue of material fact on its face, justifying denial of Plaintiff's Motion.  Further, Plaintiff's motion is overly broad as to fiber type, as there is a continuing and vigorous debate in the scientific community whether chrysotile can cause mesothelioma at any level of exposure.

Trial of this matter is set to begin on May 2, 2022.

## II. STATEMENT OF MATERIAL FACTS

Defendant respectfully requests that Plaintiffs' Motion be denied as the following creates genuine issues of material facts:

1. Under Louisiana law, causation in tort cases is generally a question of fact that is inappropriate for disposition upon summary judgment.[1]

2. "Cancer" is defined as unregulated cell growth, which can occur spontaneously.[2]

3. Causes of mesothelioma include natural cell mutation, therapeutic radiation, erionite and chronic inflammation.[3]

4. Studies such as Aguilar-Madrid have shown as little as 44% of all mesotheliomas are attributable to asbestos exposure, while other studies show a range of 83-88% attribution to asbestos exposure.[4]

5. In fact, even in cases where individuals were highly exposed to asbestos, 17% of the causes in such instances still could not be attributable to asbestos exposure.[5]

6. Plaintiff's assertion that "asbestos" caused Mr. Cortez's mesothelioma is conclusory and overbroad because it blurs the lines between general and specific causation, and also fails to distinguish between the types of asbestos that may have caused Mr. Cortez's mesothelioma.

7. The term "asbestos" is a commercial-industrial term rather than a mineralogical term[6].

8. There are two basic types of "asbestos" fibers: serpentine (chrysotile) and amphibole (tremolite, actinolite, amosite, crocidolite, and anthophyllite).[7]

---

[1] *Estate of Adams v. Home Health Care of La.,* 2000-2494 (La.12/15/00), 775 So.2d 1064, 1065.

[2] *See*, *Daubert* hearing testimony of Dr. Suresh Moolgavkar, Epidemiologist & Toxicologist, *Robertson v. Doug Ashy*, August 6, 2012, at p. 22-26 & 30-35, attached hereto as "Exhibit A."

[3] *Id.; see also* Deposition testimony of treating physician, Dr. Gerardo Arias, *Brazan v. Lamorak Ins. Co.*, taken on May 4, 2018, at p. 54-55, attached hereto as "Exhibit B"; *see also*, Institute of Medicine (US) Committee on Asbestos: Selected Health Effects, Chapter 5 "Biological Aspects of Asbestos-Related Diseases," Washington DC, National Academics Press, 2006, ISBN-10:0-309-10169-7, attached hereto as "Exhibit C."

[4] *See*, *Daubert* hearing testimony of Dr. Suresh Moolgavkar, Epidemiologist & Toxicologist, *Robertson v. Doug Ashy*, August 6, 2012, at pp. 79 & 81-83, attached hereto as "Exhibit A."

[5] *Id.* at p. 83.

[6] *See,* American Thoracic Society, *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, 170 AM. J. RESPIR. CRIT. CARE MED. 691-715, 692 (2004).

[7] VICTOR L. ROGGLI, ET AL., PATHOLOGY OF ASBESTOS-ASSOCIATED DISEASES 2 (New York, Springer Science+Business Media, Inc., 2d ed. 2004).

9. The two fiber types have important mineralogical and structural differences that substantially influence toxicity[8].

10. Chrysotile is generally accepted and widely considered to be of much lower risk for all asbestos-related disease compared to the other commercial Amosite and Crocidolite amphibole asbestiforms[9].

11. The research regarding the relative potency of Chrysotile as a cause of lung cancer, and its potency, if any, as a cause of mesothelioma continues to be debated and the literature strongly suggests that a "no-effect" cancer exposure level exists for at least the asbestiform of Chrysotile[10].

12. Even among amphiboles there are considerable differences in the potency for various asbestos-related diseases[11].

13. A recent comprehensive review and analysis originally commissioned by the Environmental Protection Agency reports that the epidemiological data are consistent with the conclusion that chrysotile does not increase the risk of mesothelioma.[12]

14. There is a continuing and vigorous debate in the scientific community whether chrysotile can cause mesothelioma at any level of exposure.[13]

---

[8] *See, Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1145 (5th Cir. 1985) ("all asbestos-containing products cannot be lumped together in determining their dangerousness"); *Celotex Corp. v. Copeland,* 471 So. 2d 533, 538 (Fla. 1985) ("Asbestos products . . . have widely divergent toxicities, with some asbestos products presenting a much greater risk of harm than others."); *Case v. Fibreboard Corp.,* 743 P.2d 1062, 1066 (Okla. 1987) ("the degree of risk arising from exposure to asbestos may differ not only depending on the form of the mineral encountered but on the form of the product in which it is encountered").

[9] McDonald, A. and McDonald, J. The Epidemiology of Malignant Mesothelioma. In: Asbestos-Related Malignancy. Antman and Eisner, Editors. Pages 31-55. ISBN 0808918303. Grune & Stratton Inc., 1987; Britton, M. The Epidemiology of Mesothelioma. Seminars in Oncology, Vol 29, 2002, pp 18-25; Yarborough, C.M. Chrysotile as a Cause of Mesothelioma: An Assessment Based on Epidemiology; Hodgson, JT and Darnton, A. The Quantitative Risks of Mesothelioma and Lung Cancer in Relation to Asbestos Exposure. Annals of Occupational Hygiene. 44(8). 2000; Browne, K. Letters to the Editor - The Quantitative Risks of Mesothelioma and Lung Cancer in Relation to Asbestos Exposure. Annals of Occupational Hygiene. 45(4). 2001; *See also*, Kyle Dotson September 16, 2021 Report, attached hereto as Exhibit "D".

[10] Lenters, V., et al. A Meta-Analysis of Asbestos and Lung Cancer: Is Better Quality Exposure Assessment Associated with Steeper Slopes of the Exposure-Response Relationships? Environmental Health Perspectives. June 2011; Pierce, J.S., et al. An Evaluation of Reported No-Effect Chrysotile Asbestos Exposures for Lung Cancer and Mesothelioma. Critical Reviews in Toxicology, 38:3, 191 – 214. 2008; *See*, Affidavit of Kyle Dotson, pg. 5, attached as Exhibit "D".

[11] Karjalainen, A., Meurman, LO and Pukkala, E. Four Cases of Mesothelioma Among Finnish Anthophyllite Miners. Occupational and environmental medicine. 51: 212-15. 1994; Phillips, J.I. and Murray, J. Malignant Mesothelioma in a Patient with Anthophyllite Asbestos Fibres in the Lungs. Annals of Occupational Hygiene. 54(4):412-416. 2010; *See* Affidavit of Kyle Dotson, pp. 5-6, attached as Exhibit "D".

[12] D.W. Berman & C.W. Crump, *Final Draft: Technical Support Document for a Protocol to Assess Asbestos-Related Risk*, EPA (Oct. 2003); D.W. Berman & C.W. Crump, *A Meta-Analysis of Asbestos-Related Cancer Risk that Addresses Fiber Size and Mineral Type*, 38 CRITICAL REVIEWS IN TOXICOLOGY (SUPPLEMENT) 1, 49-73 (2008); D.W. Berman & C.W. Crump, *Update of Potency Factors for Asbestos-Related Lung Cancer and Mesothelioma*, 38 CRITICAL REVIEWS IN TOXICOLOGY (SUPPLEMENT) 2, 1-47 (2008).

[13] *See, Nolan v. Weil-McLain*, 910 N.E.2d 549, 566 (Ill. 2009) (stating that "plaintiff's own experts agreed that there is a scientific debate as to whether chrysotile can cause mesothelioma, and even if it can, they agreed that chrysotile

15. Plaintiff's industrial hygiene expert, Gerard L. Baril, has not performed any dose reconstruction of Mr. Cortez's potential exposures to asbestos, nor has he attempted to quantify Mr. Cortez's total cumulative dose to asbestos or any exposure amount relative to any specific product.[14]

16. A question of fact exists as to Mr. Cortez's total cumulative exposure amount and regarding his alleged exposure relating to each product and Party in this case, which should proceed to the Jury for factual determination.

### III. THE QUESTION OF CAUSATION, IN AND OF ITSELF, IS A MATERIAL ISSUE OF FACT AND LAW

Generally, under Louisiana law, causation in tort cases is a question of fact that is inappropriate for disposition upon summary judgment.[15] The question of causation, in and of itself, is a material issue of fact and law.[16] Causation is a determination rife with factual questions, and it is not the role of the Court at this stage to answer those questions where plaintiffs have failed to sustain their burden.[17] Accordingly, the question of causation involves specific factual analysis and the application of legal causation standards to such facts. Accordingly, a legitimate issue of fact and law exists that should be evaluated and decided by the jury.

### a) At Best Plaintiff's Motion Only Addresses General Causation, Not Specific Causation.

Admittedly, asbestos exposure is the primary most common associated cause of mesothelioma. However, "cancer" is defined as unregulated cell growth, which can occur spontaneously.[18] Causes of mesothelioma include natural cell mutation, therapeutic radiation,

---

is the least carcinogenic of the various asbestos fiber types"). *See also,* Affidavit of Kyle Dotson, attached hereto as "Exhibit D."

[14] January 26, 2002 Deposition of Gerard Baril, attached hereto as "Exhibit E," at pp. 280:16-26, 284: 12-20.
[15] *Estate of Adams v. Home Health Care of La.,* 2000-2494 (La.12/15/00), 775 So.2d 1064, 1064.
[16] *See Moody v. United Nat'l Insurance Company*, 98-287(La. App. 5 Cir. 9/29/1998); 743 So.2d 680, 684; *see also Dussouy v. City of Kenner,* 97-1254 (La. App. 5 Cir. 4/28/98), 710 So.2d 1200; *see also Mayoral v. Middle South Utilities,* 618 So.2d 436 (La. App. 5 Cir.1993); *see also Held v. Avondale Industries, Inc.,* 95-1788 (La. App. 4 Cir. 4/3/96), 672 So.2d 1106.
[17] *Miller, et al. v. Mr. B's Bistro, Inc., et al.*, No. 04-3271 2005 WL 2036780, at *3 (E.D. La. Aug. 3, 2005).
[18] *See*, *Daubert* hearing testimony of Dr. Suresh Moolgavkar, Epidemiologist & Toxicologist, *Robertson v. Doug Ashy*, August 6, 2012, at p. 22-26 & 30-35, attached hereto as "Exhibit A."

erionite, the SV40 virus and chronic inflammation.[19] Studies such as Aguilar-Madrid have shown as little as 44% of all mesotheliomas are attributable to asbestos exposure, while other studies show a range of 83-88% attribution to asbestos exposure.[20] In fact, even in cases where individuals were highly exposed to asbestos, 17% of the causes in such instances still could not be attributable to asbestos exposure.[21] Toxicologist, Dr. Suresh Moolgavkar, emphasized this point:

> The attributable risk of 83.2 percent means among workers who are occupationally exposed, known to be occupationally exposed to meso- -- to asbestos, 83 percent of them -- 83 percent of mesotheliomas are attributable to that absolute exposure. What this is actually saying is that even in these highly -- highly exposed workers in Mexico, close to 17 percent cannot be attributed to asbestos exposure. Just think about that, Mr. George. Even highly exposed workers with mesothelioma, 17 percent of them are not due to asbestos exposure.[22]

The fundamental issue of causation is essential and to be determined by the jury after evaluating the facts and weighing the credibility of experts. Plaintiff's Motion seeks to jump to the causation finish-line and bypass the need to establish the specific exposures allegedly related to each Party which were a substantial cause of disease. Clear questions of fact exist regarding the exposure amounts, intensities, toxicity of the exposures, and the resulting causative effect relating to each particular Party.

### b) Plaintiffs Fail to Distinguish Among the Different Fiber Types and Exposure Intensities.

Plaintiff's motion is fraught with factual issues. Plaintiff's assertion that "asbestos" caused Mr. Cortez's mesothelioma is conclusory and overbroad in that Plaintiffs not only fail to distinguish between general and specific causation, but also fail to distinguish between the types

---

[19] *Id.*; *See also*, Institute of Medicine (US) Committee on Asbestos: Selected Health Effects, Chapter 5 "Biological Aspects of Asbestos-Related Diseases," Washington DC, National Academics Press, 2006, ISBN-10:0-309-10169-7, attached hereto as "Exhibit C."
[20] *See*, *Daubert* hearing testimony of Dr. Suresh Moolgavkar, Epidemiologist & Toxicologist, *Robertson v. Doug Ashy*, August 6, 2012, at p. 79 & 81-83, attached hereto as "Exhibit A."
[21] *Id.* at p. 83.
[22] *Id.*

of asbestos that may have caused Mr. Cortez's mesothelioma. It is well known that certain types of asbestos are far more toxic than others.[23] Thus, an evaluation of exposure intensity is essential for the finder of fact to determine if the particular type of asbestos was a substantial cause of disease.

The term "asbestos" is a commercial-industrial term rather than a mineralogical term[24]. "Asbestos" refers generically to a group of naturally-occurring minerals that are virtually omnipresent in our environment and encompasses a range of geologic minerals with different chemical compositions and disease-causing potential. The term includes several chemically and physically unique silicate minerals in fibrous form, are heat resistant, and are chemically inert[25]. The use of the generic term "asbestos" to encompass different minerals has created confusion:

> The inadequate and incomplete definition of "Asbestos" has resulted, as noted by an IARC Consensus panel, in "taxonomic confusion and lack of standardized operating definitions for fibers." "Asbestos is often inappropriately used as a generic, homogenous rubric, and even when an asbestos fiber type is specified, its source is rarely stated[26].

c) **The Weighing of Conflicting Evidence Has No Place in Summary Judgment Procedure.**

A recent comprehensive review and analysis originally commissioned by the Environmental Protection Agency reports that the epidemiological data are consistent with the conclusion that chrysotile does not increase the risk of mesothelioma[27]. At the very least, the

---

[23] *See* Exhibit D, Affidavit of Kyle Dotson.
[24] See American Thoracic Society, Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos, 170 AM. J. RESPIR. CRIT. CARE MED. 691-715, 692 (2004).
[25] See United States Spectroscopy Lab, World Trade Center Asbestos Primer, http://pubs.usgs.gov/of/2001/ofr-01-0429/asbestos.html (last visited December 4, 2012).
[26] B.W. Case, et al., Applying Definitions of "Asbestos" to Environmental and "Low-Dose Exposure Levels and Health Effects, Particularly Malignant Mesothelioma, 14 JOURNAL OF TOXICOLOGY AND ENVIRONMENTAL HEALTH 1, 4-5 (2011).
[27] D.W. Berman & C.W. Crump, *Final Draft: Technical Support Document for a Protocol to Assess Asbestos-Related Risk*, EPA (Oct. 2003); D.W. Berman & C.W. Crump, *A Meta-Analysis of Asbestos-Related Cancer Risk that Addresses Fiber Size and Mineral Type*, 38 CRITICAL REVIEWS IN TOXICOLOGY (SUPPLEMENT ) 1, 49-73 (2008); D.W. Berman & C.W. Crump, *Update of Potency Factors for Asbestos-Related Lung Cancer and Mesothelioma*, 38 CRITICAL REVIEWS IN TOXICOLOGY (SUPPLEMENT) 2, 1-47 (2008).

epidemiological evidence, discussed and summarized by Hodgson and Darnton[28] and Berman and Crump,[29] demonstrates convincingly that amphibole asbestos is far more potent than chrysotile as a cause of mesothelioma.

In particular, there are no published peer-reviewed epidemiological studies that show either a causal connection between exposure to low levels of chrysotile fibers and mesothelioma or an elevated risk of developing mesothelioma.  In contrast to amphiboles, and despite scores of studies on the human health effects of asbestos exposure, there is a continuing and vigorous debate in the scientific community whether chrysotile can cause mesothelioma at any level of exposure[30]. "Causation is an issue of fact that is generally decided at the trial on the merits."[31]  And, the court must not attempt to evaluate the persuasiveness of competing scientific studies on summary judgment, which is what we have here as it relates to fiber type and causation.[32]

Further, while amphibole exposure is more potent than chrysotile, the question of specific causation remains with regard to each Defendant.  In fact, Plaintiff's own expert, Gerard Baril, has no opinion regarding Mr. Cortez's total exposure dose.[33]  Further, Gerard Baril has no overall cumulative exposure analysis, nor can he quantify Mr. Cortez's total exposure amount relative to any specific product.[34]

---

[28] John T. Hodgson & Andrew Darnton, The Quantitative Risks of Mesothelioma and Lung Cancer in Relation to Asbestos Exposure, 44 ANNUAL OCCUPATIONAL HYGIENE 8, 565-601 (2000) was commissioned by the British Health and Safety Executive, Great Britain's equivalent of the Occupational Safety and Health Administration ("OSHA") or the National Institute for Occupational Safety and Health ("NIOSH") and was published in the Annals of Occupational Hygiene, a peer-reviewed journal.

[29] *See* United States Spectroscopy Lab, World Trade Center Asbestos Primer, http://pubs.usgs.gov/of/2001/ofr-01-0429/asbestos.html (last visited December 4, 2012).

[30] See Nolan v. Weil-McLain, 910 N.E.2d 549, 566 (Ill. 2009) (stating that "plaintiff's own experts agreed that there is a scientific debate as to whether chrysotile can cause mesothelioma, and even if it can, they agreed that chrysotile is the least carcinogenic of the various asbestos fiber types").

[31] *See, Estate of Adams v. Home Health Care of Louisiana,* 775 So.2d 1064, 1065 (La. 2000); *See also, Arceneaux v. State Farm Fire & Cas. Co.,* No. 07-3830, 2009 WL 1393711, at *3 (E.D. La. May 18, 2009) (quoting same).

[32] *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257 at p. 17 (La.2/29/00), 755 So.2d 226, 236

[33] *See*, Exhibit E, Deposition of Gerard Baril at pp. 280:16-25, 284:12-20.

[34] *Id.*

Multiple questions of fact exist with regard to causation – including factual determinations, regarding the credibility of witnesses and the weighing of expert testimony. Plaintiff has not come forward with sufficient proof to definitively establish which exposures caused Mr. Cortez's mesothelioma. Clearly, there is an issue of material fact and conclusion of law as to the specific cause of Mr. Cortez's mesothelioma, justifying the denial of Plaintiff's Motion.

## IV. SUMMARY JUDGMENT STANDARD

In order to rule on a Motion for Summary Judgment, the Court must determine first whether the mover has met its initial burden by showing that no genuine issue of material fact exists and that the mover is entitled to a judgment as a matter of law.[35] As a general matter, factual inferences reasonably drawn from the evidence and affidavits presented must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor.[36] Thus, any doubt must be resolved against granting a summary judgment and in favor of trial on the merits to resolve disputed facts.[37]

Summary judgment is also not appropriate where the trier of fact must weigh conflicting evidence in order to reach a conclusion upon which reasonable men could differ.[38] Further, summary judgment is not an appropriate vehicle for the disposition of a case when the ultimate decision will be based upon opinion evidence or a judicial determinate of subjective facts.[39] Opinion evidence, even if entitled to some weight, cannot be given conclusive weight because

---

[35] *See*, LA. CODE CIV. PROC. art. 966.
[36] *See, Independent Fire Insurance Co. v. Sunbeam Corp.*, 99- 2181, 99-2257 at pp. 16-17 (La.2/29/00), 755 So.2d 226, 236 (noting the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion"); *see also Hebert v. St. Paul Fire and Marine Ins. Co.*, 99-0333 (La. App. 4th Cir.2/23/00), 757 So.2d 814, *cert. denied*, 00-0861 (La.5/5/00), 761 So.2d 550.
[37] *Baker v. Ingram*, 447 So.2d 101 (La. App. 4th Cir.1984).
[38] *See, Brock v. Marathon Ashland Oil Refinery*, 986 So.2d 694, 07-471 (La. App. 5 Cir. 5/13/08) at 699, *citing Hayes v. Western United Ins. Co.,* 96-556 (La. App. 5Cir. 11-14-96), 685 So.2d 228.
[39] *Id. citing Warden v. Richoux,* 06-702 (La. App. 5 Cir. 2/27/07), 952 So.2d 828.

opinions should be subject to cross-examination and credibility evaluation.[40] It cannot be determined with certainty, absent a trial, what exposures, if any, could have been a contributing cause of Mr. Cortez's alleged disease.

## V. JOINDER IN OPPOSITIONS FILED BY OTHER DEFENDANTS

Goodrich adopts, as if copied *in extenso* and attached hereto, the Oppositions and all arguments contained therein filed by other Defendants in response to Plaintiff's Motion for Summary Judgment.

## VI. CONCLUSION

There is a contested issue of material fact as to the specific cause of Mr. Cortez's mesothelioma. Plaintiff has not come forward with sufficient proof to establish which exposures caused Mr. Cortez's mesothelioma. A summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences.[41] The determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.[42]

Furthermore, when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion.[43] Thus, granting Plaintiff's Motion that Mr. Cortez's alleged disease was caused by the overbroad and over inclusive term "asbestos," without taking into consideration the differences in fiber types, chemical composition of the different fiber types and

---

[40] *Roberts v. The Louisiana Coca-Cola Bottling Comp.*, 566 So.2d 163, 167 (La. App. 4th Cir. 1990)(citation omitted).
[41] *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513–14.
[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514.
[43] *Willis v. Medders*, 2000-2507 (La.12/8/00), 775 So.2d 1049.

its role in causing disease, is a highly contested issue, subject to conflicting evidence and expert opinions, and thus cannot support the summary judgment order requested by Plaintiff. Accordingly, Plaintiff' Motion for Summary Judgment should be denied.

                Respectfully submitted:

                **PUGH ACCARDO HAAS**
                **RADECKER & CAREY LLC**

                */s/ Jamie H. Baglio*
                MCGREADY RICHESON   #29398
                THOMAS A. PORTEOUS   #27039
                JAMIE H. BAGLIO          #26326
                1100 Poydras Street, Suite 3300
                New Orleans, Louisiana 70163
                Telephone:  (504) 799-4500
                Facsimile:  (504) 799-4520
                Email:  mricheson@pugh-law.com
                        tporteous@pugh-law.com
                        jbaglio@pugh-law.com
                ***Counsel for Goodrich Corporation***