UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ                                    CIVIL ACTION

VERSUS                                             NO. 20-2389

LAMORAK INSURANCE COMPANY,               SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is defendant Huntington Ingalls, Inc.'s ("Avondale") motion for summary judgment, seeking dismissal of plaintiff's claims against it.[1]  The motion is opposed by defendants General Electric Co., Foster Wheeler LLC, and ViacomCBS, Inc.;[2] Union Carbide Corp. and BayerCropScience, Inc.;[3] and plaintiff Callen Cortez (collectively, the "opposing parties").[4]

For the following reasons, the Court grants the motion in part, and denies the motion in part.

---

[1]     R. Doc. 386.
[2]     R. Doc. 487.
[3]     R. Doc. 531.
[4]     R. Doc. 580.

## I.    BACKGROUND

This is an asbestos exposure case.  Plaintiff Callen Cortez alleges that he contracted mesothelioma as a result of exposure to asbestos during his employment with various companies, including Avondale,[5] as well as take-home exposure resulting from his father's[6] and brothers' work with various companies, including Avondale.[7]

Plaintiff lived in his family home in Kraemer, Louisiana, starting from his birth in 1951, until he married and moved out in May of 1972.[8]  Plaintiff's brother, Daniel Cortez, also lived in the home.  Daniel began working at the Avondale Shipyards on August 29, 1967,[9] and remained living with plaintiff at their family home until Daniel married and moved out in July of 1968.[10] Daniel testified that, during these first ten to eleven months at Avondale, he worked with asbestos cloth and other insulation materials, and that fibers released from cutting and tearing the cloth got onto his work clothes.[11]  He further testified that, after work each day, he would come home, hang up his

---

[5]     R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).

[6]     *Id.* at 7-9 (Complaint ¶¶ 11-16).

[7]     R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

[8]     R. Doc. 580-4 at 2-3 (Discovery Deposition of Callen Cortez at 100:11-101:8).

[9]     R. Doc. 580-5 at 4 (Deposition of Daniel Cortez at 12:3-13).

[10]    *Id.* at 3-4 (Deposition of Daniel Cortez at 11:21-12:2).

[11]    *Id.* at 16 (Deposition of Daniel Cortez at 36:6-13).

clothes, and, with plaintiff's help, beat the fibers off his clothes.[12]  Avondale's expert, Dr. Brent Staggs, opined at his deposition that asbestos taken home on Daniel Cortez's clothes significantly contributed to plaintiff's development of mesothelioma.[13]

On March 6, 1969, plaintiff began working for Avondale.[14]  He worked as a welder and tacker helper, primarily at Avondale's Westwego Yard, until May 31, 1974.[15]  Plaintiff testified that, throughout his employment with Avondale, he used asbestos cloth to protect from burns and hot sparks.[16]

Plaintiff was diagnosed with mesothelioma on June 2, 2020.[17]  On July 1, 2020, plaintiff filed suit in the Civil District Court for the Parish of Orleans against Avondale and approximately thirty-four other defendants, including former employers, manufacturers, and insurance companies.[18]  On August 31, 2020, the case was removed to federal court.[19]

---

[12]     *Id.* at 5-6 (Deposition of Daniel Cortez at 17:16-18:17).
[13]     R. Doc. 580-8 at 9 (Deposition of Dr. Brent Christopher Staggs at 64:8-16).
[14]     R. Doc. 609-3 at 2 (Discovery Deposition of Callen Cortez at 109:1-9).
[15]     *Id.*
[16]     *Id.* at 8-9 (Discovery Deposition of Callen Cortez at 118:19-119:12).
[17]     R. Doc. 1-1 at 10 (Complaint ¶ 17).
[18]     *Id.* at 1-3 ¶¶ 1-2; *id.* at 45-48.
[19]     R. Doc. 1 (Notice of Removal).

On February 9, 2022, Avondale moved for summary judgment.[20] Avondale contends that plaintiff's claims against it should be dismissed because they are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA").  It seeks dismissal of plaintiff's claims arising out of his own employment with Avondale, as well as his claims arising out of alleged exposure to asbestos from clothing that his brother brought home from Avondale.[21]  Avondale also contends that plaintiff's intentional-tort claim must be dismissed, because there is no intentional-tort exception to the LHWCA, and, even if there were, plaintiff has failed to create an issue of material fact on such a claim.[22]

Multiple parties oppose Avondale's motion.  Specifically, co-defendants General Electric Co., Foster Wheeler LLC, ViacomCBS, Inc.,[23] Union Carbide Corp., and BayerCropScience, Inc.[24] oppose the motion. Plaintiff also opposes the motion.[25]

The opposing parties contend that plaintiff's claims against Avondale are not preempted by the LHWCA because his injuries fall within the

---

[20]  R. Doc. 386.
[21]  *Id.*
[22]  *Id.*
[23]  R. Doc. 487.
[24]  R. Doc. 531.
[25]  R. Doc. 580.

"twilight zone" of concurrent federal and state jurisdiction over workers' compensation claims.  They also argue that, even if the LHWCA preempts plaintiff's claims against Avondale arising out of his employment with Avondale, the statute does not preempt his "third party" claims arising out of Daniel Cortez's take-home asbestos.  Finally, the opposing parties contend that the LHWCA has an intentional-tort exception, and that material facts remain in dispute as to such a claim.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or

affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by

6

pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Avondale's motion presents three distinct questions: (1) whether plaintiff's tort claims against Avondale as his employer are preempted by the LHWCA; (2) whether plaintiff's tort claims against Avondale as his brother's employer, *i.e.*, as the alleged source of take-home exposure before plaintiff's work for Avondale, are preempted by the LHWCA; and (3) whether plaintiff may maintain his intentional-tort claim against Avondale.

The first question, whether the LHWCA preempts plaintiff's employee-employer claims, has been answered in the affirmative in multiple cases before this Court and other sections of this Court. *See Barrosse v. Huntington Ingalls, Inc.*, No. 20-2042, 2021 WL 4355415 (E.D. La. Sept. 24, 2021); *Krutz v. Huntingon Ingalls, Inc.*, No. 20-1722, 2021 WL 5893981 (E.D. La. Apr. 22, 2021); *Hulin v Huntington Ingalls, Inc.*, No. 20-924, 2020 WL 6059645 (E.D. La. Oct. 14, 2020); *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 5071115 (E.D. La. Aug. 26, 2020); *Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-2131, 1997 WL 159491 (E.D. La. Mar. 27, 1997). The Court therefore addresses this question first, and, in so doing, largely reiterates its prior analyses on this issue. The Court then proceeds to the second and third issues, which have not been addressed as extensively.

## A.   Preemption of Plaintiff's Claims Against Avondale Arising out of His Employment

The LHWCA is a federal workers' compensation statute providing covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020) (citation and internal quotation marks omitted). Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)."

*Id.* (citing 33 U.S.C. § 903(a) (pre-1972)).  But, in 1972, Congress amended the Act and "extend[ed] the LHWCA landward."   *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719 (1980).

### 1.   *Applicable Version of the LHWCA*

Plaintiff argues that the pre-1972 version of the law applies to this dispute,[26] while Avondale contends that the post-1972 Act applies.[27] Specifically, Avondale argues that the Court must apply the Act as it existed when Cortez's disease manifested, *i.e.*, in 2020, to determine whether the alleged injuries are covered. [28]   Plaintiff argues that the date of his exposure governs which version applies.[29]

Courts use the "date of injury" to determine which version of the LHWCA applies.  *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985).  In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit in *Castorina* held that manifestation, not exposure, determines the date of injury.  *Id.* at 1031.  There, plaintiff's disease, asbestosis, manifested in 1979.  *Id.* at 1028.  His exposures occurred between 1965 and 1972.  *Id.* at 1027.  The Fifth Circuit looked to judicial

---

[26]   R. Doc. 580 at 23-25.
[27]   R. Doc. 386-1 at 5-6.
[28]   *Id.*
[29]   R. Doc. 580 at 23-25.

authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself." *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir.), *cert. denied*, 308 U.S. 570 (1939)).   It also inferred Congress's intent from Congress's express adoption of the manifestation rule in 1984.  *Id.* (citing Pub. L. No. 98–426, § 28(g)(1), 98 Stat. 1639 (1984)). In the 1984 amendments to the LHWCA, Congress provided a specific definition of "injury" for occupational diseases:

> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . . .

Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984).  Under *Castorina* and the 1984 amendments, Cortez's injury is deemed to arise on the date it manifested.  Because Cortez's disease manifested in 2020, the Court applies the LHWCA as it existed in 2020, the date of his injury.[30]

Plaintiff disputes this legal conclusion by pointing to dicta in a footnote in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 466 n.6 (5th Cir. 2016),[31] in which the Fifth Circuit stated:

---

[30]   R. Doc. 1-1 at 10 (Complaint ¶ 17).
[31]   R. Doc. 580 at 23-25.

> Defendant's preemption defense is governed by the law *at the time* [*plaintiff*] *was exposed to asbestos*, which occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act. *See* La. Rev. Stat. 23:1035.2 (providing that "[n]o compensation shall be payable in respect to the disability or death of any employee covered by . . . the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions . . .").

*Id.* (emphasis added).  The Court does not find that this footnote has the import plaintiff attributes to it.

In the *Savoie* opinion, the court makes clear that it is discussing the applicable version of state law.  For example, in the footnote upon which plaintiffs rely, the Fifth Circuit noted that the plaintiff's exposure "occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act." *Id.* (citing La. Rev. Stat. § 23:1035.2).  If the court were not referring to the appropriate version of state law, there would have been no need to discuss the elimination of concurrent state-federal workers' compensation coverage.  The references to state law in the same footnote and throughout the opinion support the Court's conclusion that the Fifth Circuit was referring to the applicable state law, not which version of the LHWCA applies.  *See id.* at 464 ("[Wrongful death] claims are governed by the [state] law in effect at the time the

decedent passes away," but "survival claims based on asbestos exposure are governed by the [state] law in effect when the exposure occurred." (first citing *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1072 (La. 2009), and then citing *Landry v. Avondale Indus., Inc.*, 877 So.2d 970, 972 (La. 2004)). Further, the Fifth Circuit expressly stated that it did not decide whether defendant had a colorable federal preemption defense. *Id.* at 466. One Fifth Circuit panel cannot overrule another without an intervening change in the law, *see United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003), and in the event of a conflict, the earlier case controls. *Texaco Inc. v. La. Land & Expl. Co.*, 995 F.2d 43, 44 (5th Cir. 1993). But in any event, the Court does not find that the Fifth Circuit intended to overrule its earlier, reasoned decision in *Castorina* by way of dicta in a footnote.

Because *Castorina*'s manifestation rule controls, the Court applies the LHWCA as it existed in 2020, when Cortez's mesothelioma manifested.[32]

2.   *Applicability of the Post-1972 LHWCA to Cortez's Injuries*

Since the 1972 amendments, the LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements. *See New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013). Plaintiff easily meets these criteria.

---

[32]   R. Doc. 1-1 at 10 (Complaint ¶ 17).

The "status" requirement limits application of the LHWCA to "traditional maritime occupations." *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker" (emphasis added)).  The status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).

Plaintiff worked as a tacker helper and welder on vessels at Avondale's Westwego Yard.  This type of work satisfies the status test because it is an "essential step of the shipbuilding process." *Id.* (holding that a worker who died when a steel plate he was cleaning fell on him satisfied the status test because the "cleaning task was an essential step of the shipbuilding process"); *see also McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters"); 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.) (stating that the LHWCA specifically includes "any harborworker," which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers,

cargo talleyers, port watchmen, electricians, painters, mechanics, etc.").
Thus, the Court finds that the LHWCA's status test is satisfied.

The "situs" test, extended by Congress in 1972, requires that the injury
occur on the "navigable waters of the United States" and "any adjoining pier,
wharf, dry dock, terminal, building way, marine railway, or other adjoining
area customarily used by an employer in loading, unloading, repairing,
dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship*, 447
U.S. at 719 ("In 1972, Congress . . . extend[ed] the LHWCA landward beyond
the shoreline of the navigable waters of the United States."). There is no
dispute that Cortez's exposure to asbestos occurred in a covered situs—
Avondale Shipyards. *See Pitre v. Huntington Ingalls, Inc.*, No. 17-7029,
2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) ("Avondale's vessel
construction and repair activities occurred on the west bank of the
Mississippi River adjacent to navigable waters.").

Cortez's status falls within the coverage of the LHWCA, and his injuries
occurred on a covered situs. Therefore, the Court finds that plaintiff could
have brought his claims under the LHWCA.

###### 3. *LHWCA Preemption of Tort Claims Against Employers*

Avondale contends that the LHWCA immunizes it from tort liability.
Section 905(a) of the LHWCA, the employer immunity provision, states:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a).  Based on this provision, Avondale argues that plaintiff's state-law tort claims conflict with the LHWCA, and are therefore preempted. The opposing parties contend that a state may constitutionally provide for state-law tort remedies concurrently with the LHWCA, and that, therefore, the LHWCA does not preempt plaintiff's claims.

Federal law applies to questions of preemption.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995).  Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3) conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress.  *Id.*  The U.S. Supreme Court has set out "two cornerstones" of preemption jurisprudence.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  First, the "ultimate touchstone" is "the purpose of Congress."  *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  Second, the Court must "start with the assumption that the historic

police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," especially when the case involves a "field which the states have traditionally occupied." *Id.* (quoting *Lohr*, 518 U.S. at 485) (quotation marks omitted).

Because tort law is a field traditionally occupied by the States, the Court starts with the assumption that Congress did not intend to supersede state law when it enacted the LHWCA. But this assumption does not stand in face of the text of the LHWCA, the purpose behind the statute, and the weight of judicial authority.

Section 905(a) of the LHWCA provides that compensation under the LHWCA is exclusive of all other employer liability, including for actions to recover damages at law. 33 U.S.C. § 905(a). The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statutes." *Cobb*, 1997 WL 159491, at *7 (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages. *Id.* The Supreme Court recognized this exchange when it explained:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance

16

> between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983). Allowing state-law tort claims against employers would contradict the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*.

Indeed, several courts have recognized as much. The Fifth Circuit held in *Rosetti v. Avondale Shipyards, Inc.*, that the LHWCA bars a "state law negligence claim," because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer." 821 F.2d 1083, 1085 (5th Cir. 1987). Further, in *Hetzel v. Bethlehem Steel Corp.*, the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA." 50 F.3d at 366-67 (5th Cir. 1995). In *Hetzel*, the court reasoned that "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory." *Id.* Similarly, the Third Circuit in *Peter v. Hess Oil Virgin Islands Corp.*, concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered

17

employer.]" 903 F.3d at 953. The *Peter* court specifically noted that Congress "intended that compensation, not tort damages, [was] to be the primary source of relief for workplace injuries for longshoremen against their employers." *Id.* at 952.

Moreover, this Court has held, in three separate cases, that the LHWCA preempts a state tort claim. *See Krutz*, 2021 WL 5893981, at *7; *Hulin*, 2020 WL 6059645, at *7; *Cobb*, 1997 WL 159491, at *8 ([A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA."). Other sections of this Court have held the same. *See Barrosse*, 2021 WL 4355415, at *10-11; *Dempster*, 2020 WL 5071115, at *7.

Because permitting plaintiff's state tort claims against Avondale as his employer would obstruct the purposes of the LHWCA, the Court finds that these claims are preempted and must be dismissed.

The opposing parties' arguments to the contrary are without merit. First, they dedicate much of their briefing to the contention that Cortez's injuries occurred in the so-called "twilight zone" of concurrent state-federal jurisdiction, and that his state claims are therefore permissible. Consistent with prior district-court opinions, the Court rejects this argument.

18

The Supreme Court has long held that there are areas where a state may legislate concurrently with the LHWCA. In *Sun Ship, Inc. v. Pennsylvania*, the Supreme Court addressed the "single question" of "whether a State may apply its *workers' compensation scheme* to land-based injuries that fall within the coverage of the [LHWCA], as amended in 1972." 447 U.S. at 716 (emphasis added). Extending its prior "twilight zone" jurisprudence, the Court unanimously held that it may, *i.e.*, that the LHWCA does not preempt concurrent state workers' compensation remedies in these areas. *Id.* The Court reasoned that, in the 1972 amendments to the Act, Congress intended to "upgrade the benefits" available under inadequate state compensation regimes, by guaranteeing the option of federal compensation available under the LHWCA. *Id.* at 723. *Sun Ship* and other "twilight zone" cases make clear that a state is not entirely precluded from providing workers' compensation remedies to workers covered by the LHWCA. Similarly, in *Hahn v. Ross Island Sand & Gravel Co.*, the U.S. Supreme Court found that the LHWCA did not preclude a plaintiff's negligence claim brought pursuant to Oregon's *workers' compensation statute*. 358 U.S. 272, 273 (1959). The plaintiff in *Hahn* sought benefits through Oregon's compensation regime, but his employer "elected to reject them." *Id.* In these circumstances, Oregon's Workmen's Compensation Act

allowed the employee to bring a negligence action for damages.  The Court expressly stated that the LHWCA "gave an injured waterfront employee an election to recover compensation under *either* the [LHWCA] or *the Workmen's Compensation law of the State* in which the injury occurred." *Id.* (emphasis added).  *Hahn* does not, as the opposing parties contend, hold that the LHWCA permits ordinary tort claims.  Rather, like *Sun Ship*, it holds that a plaintiff may elect between federal compensation under the LHWCA or state workers' compensation.

Unlike in *Sun Ship* and *Hahn*, plaintiff here has not brought his claims pursuant to a state workers' compensation regime.  Instead, plaintiff asserts freestanding state tort claims against his employer.  For the reasons already given, the LHWCA preempts these claims against Avondale.

Second, the opposing parties argue that preemption does not apply because plaintiff is not seeking benefits under the LHWCA.  This Court has rejected this argument before, and it rejects it again.  *See Krutz*, 2021 WL 5893981, at *8 (rejecting plaintiff's contention that his claims are not preempted because he was not seeking LHWCA benefits); *Hulin*, 2020 WL 6059645, at *7 (same).  The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy against an employer lies in workers' compensation.  *Rosetti*, 821 F.2d at 1085.  That plaintiff has not

elected to pursue those benefits does not affect the preemptive power of the Act.   Permitting the tort claim merely because plaintiff has foregone the LHWCA avenue would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted.

Third and finally, the opposing parties passingly contend that a dismissal of plaintiff's claims against Avondale as his employer would violate due process by divesting them of a right in their accrued claims.[33]   They assert that such a result amounts to a denial of due process.   Consistent with prior rulings, this Court finds that neither the retroactive nor preemptive effects of the LHWCA raise due-process concerns.   *See, e.g.*, *Krutz*, 2021 WL 5893981, at *11-12 (rejecting arguments that LHWCA preemption divested a worker of his negligence claim in violation of due process). The opposing parties have given the Court no reason to reach a different result in this case, and have thus failed to carry their burden of establishing a due-process violation.

For these reasons, the Court finds that the LHWCA preempts plaintiff's state-law negligence claims against Avondale, in its capacity as plaintiff's employer.   The Court grants Avondale's motion for summary judgment as to these claims.

---

[33]   R. Doc. 531 at 17-19; R. Doc. 580 at 7.

### B.   Preemption of Plaintiff's Claims Against Avondale Arising out of His Brother's Employment

Cortez does not sue Avondale only in its capacity as his employer.  He also brings tort claims arising out of his alleged exposure to asbestos that his brother brought home from Avondale.[34]  Specifically, plaintiff asserts that his brother, Daniel, worked for Avondale when plaintiff was a teenager, and that during this period, Daniel brought asbestos home on his clothes. Avondale's expert, Dr. Staggs, testified that this exposure significantly contributed to plaintiff's development of mesothelioma.[35]  And Joseph Holtshouser, a defense-side industrial hygiene expert, states in his expert report that "the occupational health literature suggests that the earlier exposures to airborne asbestos contribute more to the risk of developing mesothelioma than do later exposures."[36]

The parties dispute whether plaintiff's tort claims against Avondale in its capacity as Daniel Cortez's employer are preempted by the LHWCA.  The Court begins with the language of the statute.   The LHWCA covers

---

[34]   *See* R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

[35]   R. Doc. 580-8 at 9 (Deposition of Dr. Brent Christopher Staggs at 64:8-16).

[36]   R. Doc. 580-36 at 2 (Expert Report of Joseph L. Houtshouser, CIH, CSP) (Feb. 3, 2022).

"accidental injury or death *arising out of and in the course of employment*, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." 33 U.S.C. § 902(2) (emphasis added). Similarly, the exclusivity provision of the LHWCA provides that the "liability *of an employer* prescribed in . . . this title shall be exclusive and in place of all other liability of such *employer* to the *employee*." 33 U.S.C. § 905(a) (emphasis added); *see also Rosetti*, 821 F.2d at 1085 ("Under the LHWCA, workers['] compensation is the exclusive remedy for an injured *employee* against his *employer*." (emphasis added)).

Plaintiff's claims based on his take-home exposure via Daniel do not arise out of, and did not occur in the course of, plaintiff's employment with Avondale. On the contrary, this exposure predated and is unrelated to plaintiff's eventual work for Avondale. In this sense, plaintiff seeks not to impose on Avondale any "liability [as] an employer . . . to [its] employee," 33 U.S.C. § 905(a), but instead, liability as a non-employer tortfeasor to a then-unrelated third party. As such, plaintiff's claim against Avondale in its capacity as his brother Daniel's employer is materially indistinguishable from plaintiff's claims against his father's employers for whom plaintiff

himself never worked.[37]  The Court finds that plaintiff is not deprived of a tort claim for non-employment injuries suffered via his brother in the home, merely because he *later* became an Avondale employee.

Another Louisiana district court reached the same result in an analogous case, *Greene v. Owens-Corning Fiberglas Corp.*, 682 F. Supp. 304, 306 (M.D. La. 1988).  In *Greene*, plaintiff had worked as an insulator for defendant Owens-Corning.  *Id.* at 305.  Plaintiff contracted asbestosis and related lung disease, and filed suit against Owens-Corning and others, seeking, *inter alia*, tort damages for alleged asbestos exposure from products manufactured by defendant Owens-Corning while plaintiff was employed by other companies.  *Id.*  The court considered whether the exclusivity provision of the Louisiana Worker's Compensation Act barred the products-liability claim against Owens-Corning, and found that it did not.  The court explained that "plaintiff's allegations of asbestos injury due to exposure from defendant's products while employed by others, do not arise out of the employee-employer relationship of plaintiff and defendant; Owens-Corning under these circumstances is essentially a third party manufacturer outside of the plaintiff's employment relationship with another company."  *Id.* at

---

[37]  *See* R. Doc. 1-1 at 7-8 ¶ 11-14 (alleging take-home exposure attributable to four of plaintiff's father's former employers).

306.   The court rejected defendant's "suggest[ion] that it should escape liability for the separate, non-employment connected wrong because of its possible worker's compensation liability." *Id.* In conclusion, the court wrote:

> This court sees nothing inconsistent in holding Owens-Corning liable for worker's compensation because of harm done to plaintiff during the employment and holding it liable for delictual damages for torts committed following termination. Such a result advances the purposes of both bodies of law—worker's compensation and tort—and does no violence to either. Plaintiff claims that Owens-Corning committed torts which caused him harm after his employment was terminated; if plaintiff can prove that allegation, the Louisiana Worker's Compensation Act should not prevent plaintiff's recovery of damages under tort law.

> *Id.* at 307.

Similarly, in considering the exclusivity provisions of Pennsylvania's worker's compensation law, the U.S. Court of Appeals for the Third Circuit declined to bar plaintiffs' tort claims arising out of "community" exposure to asbestos that was attributable to a defendant-employer but occurred away from the workplace. *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 96 (3d Cir. 1986). The court held that, "to the extent plaintiffs alleged exposure away from the workplace, they alleged violations that were *entirely unrelated* to their employment," which "affected them as members of the general public, simply living in the neighborhood." *Id.* at 99.

This Court recognizes that both *Greene* and *Shelly* apply state worker's compensation law, rather than the LHWCA, and deal with tort allegations

that do not exactly mirror plaintiff's take-home allegations in this case. Nonetheless, *Greene* and *Shelly* illustrate the principle that the exclusive liability of an employer to an employee under a worker's compensation regime does not shield a covered employer from tort liability for *non-employment* harms merely because the employer previously employed, or would eventually employ, the tort claimant.  That principle aids this Court in its resolution of Avondale's motion.

Having reviewed this persuasive caselaw, the Court reiterates that the LHWCA provides that the "liability *of an employer* prescribed in . . . this title shall be exclusive and in place of all other liability of such *employer* to the *employee*."  33 U.S.C. § 905(a) (emphasis added).  Here, it is plain that plaintiff's allegations of take-home exposure through his brother, Daniel, "stand entirely apart from plaintiff['s] employment" with Avondale, and that the take-home exposure "would have occurred exactly as it did even if plaintiff[] had never worked for [Avondale]." *Id.* at 99.  This Court finds that extending the preemptive effect of the LHWCA to bar plaintiff's take-home claim would run afoul of the statutory text and caselaw, which pertain exclusively to claims by employees against employers, for employment-related injuries.  Accordingly, the Court finds that permitting plaintiff's take-home claim does not conflict with LHWCA's text (which addresses the

26

liability of *employers*), nor would it undermine the Act's *quid pro quo*, which directs benefits to employers and their employees, not to an employee's teenage brother living at home.

Moreover, the Fifth Circuit has expressly recognized that "[t]he difference between the capacities in which an employer may act is extremely important." *Levene v. Pintail Enters., Inc.*, 943 F.2d 528, 531 (5th Cir. 1991). For instance, courts recognize a "dual capacity" exception to the LHWCA, permitting an injured employee to bring a negligence claim against his employer in the employer's capacity as a vessel owner. *See id.* As the Fifth Circuit has explained, while "[t]he LHWCA absolutely bars suit for all other acts taken *in the capacity as the employer of the injured worker*," *id.* (emphasis added), it does not bar suits against the employer in its capacity as a vessel owner. This exception, while narrow, illustrates that a defendant may act as an employer at one time, and as a non-employer, with different consequences, at other times.

Avondale's arguments to the contrary are without merit. First, Avondale attempts to group plaintiff's alleged exposure from Daniel's work at Avondale with plaintiff's allegations regarding his continued exposure off Avondale's premises during his own employment, such as on his bus ride to

27

and from work.[38]  Avondale argues that, because any such exposure "to his brothers' and co-workers' clothing" originated on Avondale's premises, those claims "arose out of and in the course of" plaintiff's employment, and are covered by the LHWCA.[39]  This argument is meritless.  Quite plainly, plaintiff's exposure to his *own* clothes, and his *own* coworkers' clothes, on his *own* ride to and from work, during his *own* employment with Avondale, is covered by the LHWCA.  The same is not true for the exposure he suffered when his brother came home from work at Avondale, when plaintiff was a teenager and had not worked a single day for Avondale.  The Court rejects this argument.

Second, Avondale argues that the LHWCA's "non-apportionment rule" requires preemption of the claims arising out of plaintiff's exposure from Daniel.[40]  This rule, as articulated by the Benefits Review Board ("BRB"), prohibits apportionment of LHWCA benefits across jurisdictions when a claimant's employment-related injuries occurred both within and outside the LHWCA's coverage.  As the BRB explained, "[t]he amount of time spent over navigable waters during exposure to harmful stimuli causing or aggravating an occupational disease is unimportant and will not lend itself

---

[38]  *See* R. Doc. 386-1 at 11-14.

[39]  *Id.* at 13-14.

[40]  *Id.* at 14-17.

to apportionment between jurisdictions as long as the exposure over navigable waters was sufficient to have at least aggravated the condition." *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1010 (5th Cir. 1981) (quoting *McCabe v. Sun Shipbuilding & Dry Dock Co.*, BRB No. 74-193, 1 BRBS 509, 515, (June 4, 1975), *rev'd on other grounds*, 593 F.2d 234 (3d Cir. 1979)).  In other words, "even if the injurious stimuli were encountered during employment both on navigable waters and in an area not covered by the Act, the entire disability [is] nevertheless compensable" under the LHWCA.  *Id.* at 1012; *see also Arbogast v. Georgia-Pac. LLC*, No. 14-4049, 2017 WL 1468883, at *2 (D. Md. Apr. 25, 2017) (declining to apportion an employer's LHWCA liability between covered injuries and nonmaritime, non-covered injuries).

But this rule has no application to the Court's preemption analysis of plaintiff's non-employee claims against Avondale.  The rule as articulated by the BRB, and cited with approval by the Fifth Circuit in *Fulks*, contemplates scenarios in which *employees*, during the course of their employment, cross the boundary between coverage and non-coverage under the LHWCA.  The rule precludes any attempts to sort an employer's liability into those two buckets.  It does not facially speak to claims arising out *non-employment* relationships, and Avondale cites no case in which the rule was applied to

preempt claims arising out of non-employment injuries. The Court finds that the "non-apportionment" rule has no application to its preemption analysis of plaintiff's claims pertaining to take-home asbestos from his brother, Daniel.

Third and finally, Avondale contends that plaintiff has a "single, compensable disease, mesothelioma," which allegedly arose at least in part from his employment at Avondale.[41] Because individual *exposures* are not individual *injuries*—the argument goes—all claims arising out of individual exposures, but *contributing* to the ultimate, indivisible injury, are preempted.[42] The cases that Avondale cites for this "single injury" proposition discuss the claimants' LHWCA compensation awards, and note the general rule that, if a workplace condition has aggravated or contributed to the worker's injury, then the entire resulting injury is compensable under the LHWCA. *See, e.g.*, *Ceres Marine Terminal v. Hinton*, 243 F.3d 222, 226 (5th Cir. 2001) ("Under the Act's aggravation rule, if an employment injury aggravates, accelerates, exacerbates, contributes to, or combines with, a previous infirmity, disease or underlying condition, the employer is liable for compensation for, not just the disability resulting from the employment

---

[41]   R. Doc. 622 at 15.
[42]   *Id.* at 15, 18.

injury, but the employee's total resulting disability."); *Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517-18 (5th Cir. 1986) (same).   This principle recognizes that "[a]ggravation of a preexisting condition can be an 'injury' under the Act," *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1049 (5th Cir. 1983), and that, therefore, a preexisting condition, accelerated or otherwise worsened by a workplace condition, does not deprive a LHWCA claimant of full recovery for the resulting injury within the Act's compensation system.

But Avondale provides no authority that, once the LHWCA covers an injury, the Act preempts recovery from all other sources contributing to the injury.   Most obviously, the potential scope of an LHWCA award does not affect plaintiff's ability to sue manufacturers of asbestos-containing products, or, as discussed above, his father's employers who are allegedly responsible for take-home exposure.   Because Avondale has acted in at least two capacities as to this plaintiff—as an employer, and as a non-employer third party—and because the LHWCA is concerned with only the former, plaintiff's non-employment claims against Avondale are not preempted by the LHWCA.

For all of these reasons, the Court finds that Avondale is not entitled to summary judgment on plaintiff's claims brought against Avondale in its

capacity as Daniel Cortez's employer, arising out of exposure before plaintiff began his employment with Avondale.

### C.    Intentional Tort Claim

The Court further finds that plaintiff's intentional-tort claims against Avondale must be dismissed.  The parties dispute whether the LHWCA recognizes an intentional-tort exception, but the Court need not reach this issue, because even if such an exception existed, plaintiff has failed to point to evidence sufficient to meet his burden under Louisiana law.

To prove an intentional tort, plaintiff must show that Avondale either consciously desired that plaintiff contract mesothelioma, or knew that the result was "substantially certain to follow from [its] conduct." *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005), *cert. denied*, 925 So. 2d 538 (2006) (internal citations omitted).  Substantial certainty "requires more than a reasonable probability that an injury will occur," and plaintiff must prove that his contracting mesothelioma was "inevitable or incapable of failing."  *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999) (internal citations omitted).  It is not sufficient for plaintiff to show that Avondale had knowledge that its practices were dangerous and created a high probability that someone would eventually be injured.  *Id.*  Indeed, a

defendant's "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts." *Id.* at 214.

Another section of this Court recently considered an intentional-tort claim against Avondale arising out of asbestos exposure. There, plaintiffs argued that Avondale was "aware of the risks associated with asbestos and with the unsafe working conditions at Avondale," and that it "failed to remedy those conditions despite [its] knowledge of the risks." *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164, at *3 (E.D. La. Mar. 7, 2014). Judge Carl Barbier dismissed the claim on summary judgment. He found that, "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [decedent] would contract mesothelioma," plaintiffs had not submitted evidence permitting a reasonable jury to "conclude that [decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from Defendants' conduct." *Id.*

Here, plaintiff contends that there are disputed issues of fact regarding Avondale's "motive and intent" as to plaintiff's asbestos exposure.[43]  But his evidence falls far short of what is necessary to raise a material issue for an intentional-tort claim.  Plaintiff generally asserts that Avondale "knew that asbestos was a health hazard," that it "caused fatal lung disease," and that it "had problems with it."[44]  Plaintiff also points to Avondale's attempts to clean up the yard before inspectors arrived, and its instructions to its employees that they should not work with insulation while inspectors were in the yard.[45]  But a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."  *Reeves*, 731 So. 2d at 213 (citations omitted).  Plaintiff has not submitted any evidence suggesting that Avondale intended to harm him, or that his mesothelioma was "inevitable or incapable of failing."  *Id.*  In fact, as other courts have recognized, "it is [not] common human experience . . . that mesothelioma is known certainly or inevitably to follow from asbestos exposure."  *Vedros*, 2014 WL 906164, at *3 (quoting *Zimko*, 905 So. 2d at 479).  Accordingly, plaintiff's claim against Avondale "lies in the realm of negligence, not in the realm of intentional tort."  *Id.*

---

[43]    R. Doc. 580 at 43-46.

[44]    *Id.* at 44-45.

[45]    *Id.* at 45.

For these reasons, Avondale is entitled to summary judgment dismissing plaintiff's intentional-tort claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Avondale's motion for summary judgment.[46]

The Court grants the motion as to plaintiff's tort claims against Avondale in its capacity as plaintiff's employer, as well as his intentional-tort claims against Avondale.  The Court denies the motion as to plaintiff's claims against Avondale in its capacity as his brother Daniel's employer.

The Court thus DISMISSES all of plaintiff's claims against Avondale, except his take-home-exposure claims brought against Avondale in its capacity as Daniel Cortez's employer.

New Orleans, Louisiana, this ___4th___ day of April, 2022.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[46]   R. Doc. 386.