UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ                                    CIVIL ACTION

VERSUS                                             NO. 20-2389

LAMORAK INSURANCE COMPANY,                SECTION "R" (1)
ET AL.


## **OMNIBUS ORDER AND REASONS**

Before the Court are seven motions for summary judgment, filed respectively by Entergy Louisiana, LLC ("Entergy"),[1] First State Insurance Company ("First State"),[2] United States Fidelity & Guaranty Company ("USF&G"),[3] Berkshire Hathaway Specialty Insurance Company ("Berkshire"),[4] General Electric Company ("GE"),[5] Foster Wheeler, LLC ("Foster Wheeler"),[6] and Insulations, LLC.[7] Each movant contends that plaintiff has not produced evidence sufficient to sustain his burden to show that he was exposed to asbestos attributable to them or their insureds. Defendants Huntington Ingalls, Inc. ("Avondale") and Continental

---

[1]   R. Doc. 389.
[2]   R. Doc. 410.
[3]   R. Doc. 445.
[4]   R. Doc. 416.
[5]   R. Doc. 496.
[6]   R. Doc. 497.
[7]   R. Doc. 523.

Insurance Company ("Continental") oppose GE's and Foster Wheeler's motions.[8]  Plaintiff opposes every motion, except that of Insulations, LLC.[9]

Also before the Court, and germane to Entergy's summary-judgment motion, is defendant Louisiana Insurance Guaranty Association's ("LIGA") motion *in limine*, seeking to exclude certain testimony as inadmissible hearsay.[10]  Plaintiff opposes this motion.[11]

The Court addresses each motion in turn below.


## I.     BACKGROUND

This is an asbestos exposure case.  Plaintiff Callen Cortez alleges that he contracted mesothelioma as a result of exposure to asbestos over the course of his career,[12] as well as take-home exposure resulting from his father's[13] and brothers' work when the family shared a home.[14]

Plaintiff was diagnosed with mesothelioma on June 2, 2020.[15]  On July 1, 2020, plaintiff filed suit in the Civil District Court for the Parish of Orleans

---

[8]     R. Docs. 640, 641, 665 & 701.
[9]     R. Docs. 520, 645, 646, 647, 650 & 683.
[10]    R. Doc. 525.
[11]    R. Doc. 694.
[12]    R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).
[13]    *Id.* at 7-9 (Complaint ¶¶ 11-16).
[14]    R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).
[15]    R. Doc. 1-1 at 10 (Complaint ¶ 17).

against Avondale and approximately thirty-four other defendants, including former employers, manufacturers, and insurance companies.[16]  On August 31, 2020, the case was removed to federal court.[17]

Multiple defendants now move for summary judgment on the grounds that plaintiff has not produced evidence sufficient to show that he was exposed to asbestos from products for which they are liable.  The Court addresses each motion below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are

---

[16]    *Id.* at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.
[17]    R. Doc. 1 (Notice of Removal).

3

drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4

Cir. 1998)).   The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004).

As the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091).   To defeat an asbestos defendant's motion for summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)).

The Court addresses each motion in turn.

**A.    Entergy's Motion for Summary Judgment and LIGA's Related Motion *in Limine***

Defendant Entergy Louisiana, LLC moves for summary judgment, seeking the dismissal of plaintiff's claims against it.[18]   Plaintiff opposes the

---

[18]    R. Doc. 389.

motion.[19]   Entergy contends that plaintiff is unable to carry his burden to show that he was exposed to asbestos from Entergy's Nine Mile Point plant, because plaintiff's only evidence that his father, Calise Cortez, worked at the plant is inadmissible hearsay.[20]   The Court notes that it previously denied summary judgment to LIGA based on evidence of Calise Cortez's exposure from work for Gabler Insulations, Inc. ("Gabler") at Nine Mile Point.[21] However, LIGA, as the summary-judgment movant, did not object to the admissibility of plaintiff's evidence that his father worked at Nine Mile Point, so the Court did not consider the issue.   Now that Entergy has raised the objection in its motion for summary judgment, the Court must address the question.

Relatedly, LIGA has filed a motion *in limine* seeking to exclude Calise Cortez's alleged statements that he worked at Nine Mile Point, on the grounds that they are inadmissible hearsay.[22]   Entergy and Anco Insulations, Inc. ("Anco") have joined in LIGA's motion *in limine*.[23]   The parties' briefing on the motion *in limine* is substantively identical to the pertinent portions of the briefing on Entergy's summary-judgment motion.   The Court thus

---

[19]   R. Doc. 520.
[20]   R. Doc. 389-1 at 2-6.
[21]   R. Doc. 379.
[22]   R. Doc. 525.
[23]   R. Docs. 598 & 601.

considers the motion *in limine* and Entergy's summary-judgment motion in tandem. Accordingly, the Court proceeds to determine whether plaintiff's evidence that his father worked at Nine Mile Point is inadmissible hearsay, and, in turn, whether such a finding warrants the entry of summary judgment in favor of Entergy.

The motion *in limine* contends that plaintiff's father's statements about his work at Nine Mile Point constitute inadmissible hearsay.[24] The Federal Rules of Evidence define hearsay as a statement (1) that the declarant makes outside of court, and (2) that a party offers to prove the truth of the matter asserted. Fed. R. Evid. 801(c). At plaintiff's deposition, he testified that his father worked at Nine Mile Point. But plaintiff testified that he never went to Nine Mile Point himself, that he never saw his father working at Nine Mile Point, and that he knew his father worked there only because his father "would tell [the family] where he was working at."[25] Plaintiff further testified that he could not identify any of his father's coworkers from Nine Mile Point, and that he did not know who supervised his father at Nine Mile Point.[26] And while plaintiff testified that he recalls seeing his father's hard hats, labeled

---

24    R. Doc. 525-1 at 1-4; *see also* R. Doc. 389-1 at 2-6.

25    *See* R. Doc. 389-3 at 14-16 (Discovery Deposition of Callen Cortez at 833:3-835:23).

26    *Id.* at 17-18 (Discovery Deposition of Callen Cortez at 838:15-839:1).

with logos for Anco and Gabler, he conceded that the hard hats did not refer to Nine Mile Point.[27]   And social-security records confirming that Calise Cortez worked for Anco and Gabler do not mention Nine Mile Point.[28]

Plaintiff contends that the testimony that Calise Cortez worked at Nine Mile Point is not hearsay and is instead based on plaintiff's personal knowledge.  To this end, plaintiff cites various pieces of testimony regarding the dust on his father's clothes when he came home from work.[29]   But plaintiff has introduced no foundation for his asserted knowledge that his father worked at Nine Mile Point, other than his father's own statements.  As Entergy and LIGA point out, plaintiff's only basis for this testimony is that his father "mentioned the employment," though when asked when his father told him this, plaintiff said, "I really can't answer that.  I don't know . . . at what point he told me."[30]   Because plaintiff's father, the declarant, made the alleged statements out of court (decades ago), and because plaintiff now seeks to introduce them to prove the truth of the alleged statements, the evidence qualifies as hearsay.

---

[27]   *Id.* at 18-20 (Discovery Deposition of Callen Cortez at 839:25-841:3).
[28]   *See* R. Doc. 389-4 at 5 (Calise Cortez Social Security Records).
[29]   *See* R. Doc. 520 at 3-6.
[30]   R. Doc. 520-4 at 18-19 (Discovery Deposition of Callen Cortez at 835:10-836:2).

Hearsay is not admissible unless provided by federal statute, a rule prescribed by the Supreme Court, or other Rules of Evidence. *See* Fed. R. Evid. 802.   Plaintiff argues that, even if his father's statements that he worked at Nine Mile Point constitute hearsay, they are nonetheless admissible as an exception for unavailable declarants under Rule 804(b)(4) of the Federal Rules of Evidence.[31]   Rule 804 provides that, if a declarant is unavailable to testify, certain statements by the declarant are not subject to the rule against hearsay.  At issue here is Rule 804(b)(4), which allows a court to admit "[a] statement about . . . the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact." Fed. R. Evid. 804(b)(4).  Plaintiff asserts that Calise Cortez's statements about where he worked are admissible under this exception.

The Court finds that the statements do not qualify for the exception. Rule 804(b)(4) contemplates familial facts related to birth, marriage, and the like.  As the U.S. Court of Appeals for the Second Circuit has explained, the family-history exception is "premised on the view that certain categories of statements are 'free enough from the risk of inaccuracy and

---

[31]      R. Doc. 520 at 7-11.

untrustworthiness' such that 'the test of cross-examination would be of marginal utility.'" *Porter v. Quarantillo*, 722 F.3d 94, 98 (2d Cir. 2013) (quoting *Idaho v. Wright*, 497 U.S. 805, 819-20 (1990)).  In this sense, "Rule 804(b)(4) assumes that statements of family history 'are likely to be informed by knowledge shared in common among family members on the basis of customs and understandings that are likely to be true.'" *Id.* (quoting 5 Mueller & Kirkpatrick, Federal Evidence § 8:133, at 224 (3d ed. 2007)).

As to Calise Cortez's statements in this case, the Court notes that the Rule does not list a declarant's employment information as one of the permissible subjects of the out-of-court statement.  This leaves only the Rule's catch-all category for "similar facts of personal or family history."  Fed. R. Evid. 804(b)(4).  But even this general category is limited by the word "*similar*."  The specific items in the list—birth, adoption, marriage, and so on—all pertain to ancestry and family relationships.  Employment history is not "similar" to these familial facts.  The text of the rule thus suggests that employment does not fit within the scope of the exception.

Moreover, the location of a declarant's worksite is *unlike* facts of birth or marriage in that it is not so "free . . . from the risk of inaccuracy and untrustworthiness" that cross-examination would be futile.  *Porter*, 722 F.3d 94 at 98.  Indeed, plaintiff has been unable to produce any other evidence

that his father ever worked at Nine Mile Point.  Calise Cortez's alleged statements about his worksite lack the indicia of reliability characteristic of statements of pedigree.  For these reasons, the Court finds that the location of the declarant's employment does not qualify for the family-history exception, and Calise Cortez's alleged statements that he worked at Nine Mile Point are therefore not admissible under Rule 804(b)(4).

Other federal courts have found that the scope of this exception is limited.  For example, the U.S. District Court for the Central District of California has explained that Rule 804(b)(4)(A) "encompasses statements that relate only to matters of pedigree, such as the dates of a birth, marriage, or death, and the fact and degree of family relationships," and that, therefore, a deceased declarant's "statements concerning his time and work in the United States do not constitute 'personal or family history' within the meaning of th[e] exception."  *Vega-Alvarado v. Holder*, No. 09-5591, 2011 WL 333101, at *4 (C.D. Cal. Jan. 28, 2011).  Similarly, a U.S. Magistrate Judge in the Southern District of Texas found that an unavailable declarant's statements regarding the dates and locations of his sister's physical presence in the United States did not satisfy the 804(b)(4) family-history exception. *Fernandez Cardona v. Garland*, No. 19-02, 2021 WL 3148868, at *8-9 (S.D. Tex. June 22, 2021), *report and recommendation adopted sub nom.*

*Fernandez Cardona v. Barr*, 2021 WL 3144540 (S.D. Tex. July 26, 2021). And the Eastern District of New York found that a declarant's "estimate of her age at the time she moved to St. Vincent" did not qualify for the exception. *Porter v. Quarantillo*, No. 12-590, 2012 WL 6102875, at *6 (E.D.N.Y. Dec. 7, 2012), *aff'd*, 722 F.3d 94 (2d Cir. 2013). Based on the text of the rule, the policy rationale beneath it, and the case law interpreting its scope, the Court finds that Calise Cortez's statements regarding his work at Nine Mile Point do not constitute personal or family history, and therefore do not satisfy the exception permitting their admission into evidence.

Plaintiff cites no case in which a court admitted hearsay regarding employment under this exception. Only one of plaintiff's cited cases refers to Rule 804, and in that case, the court noted that the contested statement—the decedent's mother's testimony that her son "went to work as a painter"—was not always objected to at trial, and that there were only some "instances where a hearsay objection was made." *See Gagliardi v. Flint*, 564 F.2d 112, 116 (3d Cir. 1977). The court then stated that, in those instances, the trial court correctly overruled the objection because the witness was present at the relevant incident, meaning that the statement was not hearsay. *Id.* The court then wrote that, "[i]f there were any errors in determining whether given questions sought hearsay evidence, the evidence was otherwise

admissible under an exception since the declarant was unavailable." *Id.* The court then cited Rule 804, and not one of the enumerated exceptions in 804(b). It then stated that "any . . . error was harmless." *Id.* Accordingly, the *Gaglardi* case is not a reasoned decision indicating that statements about employment satisfy the 804(b)(4) family-history exception.

The other cases cited by plaintiff rely on the hearsay exception not for statements of personal or family history, but for present-sense impressions. This exception permits admission of "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991). The Court finds that Calise Cortez's statements regarding his employment are not present-sense impressions. The record contains no indication of the timing or context in which the alleged statements were made. When asked when his father told him about his work at Nine Mile Point, plaintiff responded, "I really can't answer that. I don't know . . . at what point he told me."[32] Plaintiff's father's

---

[32]   R. Doc. 520-4 at 18-19 (Discovery Deposition of Callen Cortez at 835:10-836:2).

statements that he worked at Nine Mile Point, made at unknown times, in unknown contexts, cannot qualify as present-sense impressions. *Cf. First State Bank of Denton v. Md. Cas. Co.*, 918 F.2d 38, 42 (5th Cir. 1990) (finding the present-sense-impression exception satisfied when a police dispatcher asked the declarant over the phone whether the homeowner was home, and the declarant "left the telephone," returned, and "immediately reported that [he] was not home").

For these reasons, the Court finds that Calise Cortez's out-of-court statements that he worked at Nine Mile Point constitute hearsay that is not admissible under any exception in the Federal Rules of Evidence. The motion *in limine* to exclude this testimony[33] is granted.

As to Entergy's motion for summary judgment, plaintiff has provided no evidence, aside from this inadmissible hearsay, that Calise Cortez worked at Nine Mile Point. As the Fifth Circuit has explained, "[h]earsay cannot create a genuine issue of material fact." *Porter v. Lear*, 751 F. App'x 422, 430 (5th Cir. 2018) (citations omitted); *see also* Fed. R. Civ. P. 56(c)(2). And while the court "may consider hearsay at the summary judgment stage if the hearsay could be reduced to a form admissible at trial," *Heller v. Shahroodi*, No. 17-2554, 2019 WL 1556315, at *3 (S.D. Tex. Feb. 20, 2019) (citing *Arora*

---

[33]     R. Doc. 525.

*v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 161 (5th Cir. 2008) (per curiam)), here, plaintiff has not articulated any means by which he could present this testimony in admissible form.  His father has died and cannot be called as a witness at trial.  Accordingly, the Court may not rely on plaintiff's father's statements regarding his work to create an issue of fact sufficient to defeat summary judgment.

Because this is the only evidence that plaintiff submits to create an issue of fact that his father worked at Nine Mile Point, and because there is no form in which this evidence would be admissible at trial, Entergy is entitled to summary judgment dismissing plaintiff's claims arising out of his father's alleged work at the Nine Mile Point plant.  Entergy's motion for summary judgment[34] is granted.

### B.    First State's Motion for Summary Judgment

First State Insurance Company moves for summary judgment, seeking dismissal of all claims against it.[35]  First State is sued in its capacity as an insurer of Eagle, Inc.  First State held an excess-liability insurance policy with Eagle from August 12, 1977 to November 1, 1979.[36]  First State contends that

---

[34]    R. Doc. 389.

[35]    R. Doc. 410.

[36]    R. Doc. 410-4 at 2 (Declaration of Benjamin P. Figueroa, Jr. ¶ 7).

plaintiff has not produced any evidence that he was exposed to asbestos from Eagle's products during this policy period, and that, therefore, all claims against First State must be dismissed.[37]  Plaintiff opposes the motion.[38]

An insurer is liable only for harmful exposures that occurred during the insurer's policy period with the alleged tortfeasor.  *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992).  It is undisputed that, during First State's policy period with Eagle, plaintiff worked only at the Hooker Chemical plant and the Wyandotte Chemical plant.[39]  The Court must therefore determine whether plaintiff has produced evidence that he was exposed to Eagle's asbestos-containing products at these two plants.

As to Hooker, plaintiff points to his deposition testimony that he removed old insulation at the plant.[40]  Plaintiff does not cite any evidence that he saw or worked with Eagle products at the plant.  Instead, he cites a 1990 deposition in a state-court case, in which Eagle's former president testified that, beginning in 1952, Eagle "had an exclusive arrangement" with Pabco, under which Eagle would provide Pabco products to companies that

---

[37]   R. Doc. 410-3 at 2.

[38]   R. Doc. 650.

[39]   *See* R. Doc. 650-1 at 1 (Plaintiff's Response to Statement of Undisputed Material Facts) ("It is admitted that during the time period encompassed by First State's policies, Callen Cortez worked at the Hooker Chemical plant and Wyandotte Chemical plant.").

[40]   *See* R. Doc. 650 at 3.

wanted to purchase them.[41]   Plaintiff then cites a 1993 deposition from another case, in which the corporate representative of Pabco's pipe-covering manufacturer testified that Pabco pipe covering contained asbestos until September of 1971.[42]   Next, plaintiff cites the 1990 deposition of a former insulator, who testified that, when he worked a job at Hooker in 1967, he worked with Pabco pipe covering.[43]   Based on these cited depositions, plaintiff contends that the insulation that he removed at Hooker in the late 1970s was asbestos-containing Pabco pipe supplied by Eagle.[44]

Defendant First State raises evidentiary objections to the deposition testimony that plaintiff cites,[45] but the Court need not decide those issues. Even if the testimony were admissible for summary-judgment purposes, plaintiff's woven-together series of inferences does not create an issue of fact as to his exposure to asbestos attributable to Eagle while at Hooker.   While this evidence indicates that Pabco pipe covering contained asbestos, it does

---

[41]   R. Doc. 650-7 at 3-6 (Deposition of Fred Joseph Schuber, Jr. at 129:1-132:24, *LaNassa v. Celotex Corp.*, No. 88-18048 (La. Civ. Dist. Ct. Parish of Orleans, May 31, 1990)).

[42]   R. Doc. 650-6 at 4 (Deposition of Thomas F. Flauherty at 17:6-13, *Holmes v. Avondale Indus., Inc.*, No. 432-979 (La. Jud. Dist. Ct. Parish of Jefferson, Nov. 3, 1993)).

[43]   R. Doc. 650-5 at 4-6 (Deposition of Ralph Manguno at 69:11-13, 124:7-125:9, *Manguno v. AC&S, Inc.*, No. 82-1570 (E.D. La. Jan. 29, 1990)).

[44]   R. Doc. 650 at 4.

[45]   R. Doc. 794 at 1-3.

not place plaintiff around that asbestos-containing material.  That Eagle sold Pabco materials to certain companies, and that one insulator worked with Pabco materials at Hooker in 1967, does not make it "more likely than not that [plaintiff] inhaled [Eagle's] asbestos fibers" at Hooker when he removed insulation at the plant ten years later, in 1977.  *Williams*, 23 F.4th at 512 (citing *Held*, 672 So. 2d at 1109).  No party has pointed to evidence indicating how much of the pipe covering used at Hooker was Pabco covering supplied by Eagle, and thus whether it is reasonable to infer that it was Pabco pipe covering that plaintiff removed in 1977.  Moreover, even if plaintiff *were* removing Pabco pipe covering, there is no evidence of when that Pabco pipe covering had been installed.  This is significant because Pabco's pipe covering did not contain asbestos after 1971.  Too much speculation is required for a reasonable jury to conclude that, if plaintiff removed insulation from pipes at Hooker, it was more likely than not Pabco pipe covering, and the pipe covering contained asbestos.  After drawing all reasonable inferences in favor of the plaintiff, the Court finds that plaintiff's work at Hooker does not create an issue of fact as to First State's liability as Eagle's insurer.

Plaintiff also worked at the Wyandotte Chemical plant during the period of First State's policy with Eagle.  First State asserts that plaintiff's only evidence of exposure to Eagle products at Wyandotte is his recollection

of seeing boxes labeled "Eagle" in Wyandotte's warehouse.[46]  First State also cites the deposition of plaintiff's industrial-hygiene expert, Gerard Baril, who testified that he could not identify who supplied the insulation materials to Wyandotte, or how the materials got there.[47]  Specifically, Baril was asked: "Can you point to any evidence about how any of the materials you reference . . . got to Wyandotte Chemical or who supplied them?"[48]  Baril, having reviewed plaintiff's deposition testimony, responded, "Basically, it would be the insulators.  But how it got there, no idea."[49]  Baril was then asked, "You don't have any specific evidence about who the insulators were or who they were working for during the time period that you were talking about in this portion of your report; right?"[50]  Baril replied, "That's correct. We don't have the identity of those subcontractors."[51]

        In response, plaintiff submits various segments of testimony from two of his depositions.  But the cited testimony is insufficient to create an issue of fact regarding plaintiff's exposure to Eagle-supplied asbestos products at Wyandotte.  First, plaintiff cites testimony in which he states that he worked

---

[46]    R. Doc. 410-3 at 3-4.

[47]    *Id.* at 4; *see also* R. Doc. 410-7 at 2 (Deposition of Gerard L. Baril at 217:5-16).

[48]    R. Doc. 410-7 at 2 (Deposition of Gerard L. Baril at 217:11-14).

[49]    *Id.* (Deposition of Gerard L. Baril at 217:15-16).

[50]    *Id.* (Deposition of Gerard L. Baril at 217:22-25).

[51]     *Id.* at 3 (Deposition of Gerard L. Baril at 218:1-2).

around Eagle employees who were doing insulation work, and that dust from their work got onto plaintiff's clothes.[52]   But the preceding portion of this deposition, which plaintiff omits in his opposition, makes clear that the cited questions and answers do not pertain to Wyandotte.   Instead, counsel asks plaintiff about his work at the Shell refinery,[53] the Vulcan plant,[54] the Goodrich plant,[55] a Georgia Gulf facility,[56] and a Triad facility.[57]   After proceeding through facts about each of these facilities, counsel asks plaintiff if he "remember[s] ever seeing employees of a company called Eagle Asbestos in *any of those facilities*."[58]   Plaintiff's cited testimony about exposure then ensues.   Accordingly, this deposition testimony does not pertain to plaintiff's work at Wyandotte, and does not create an issue of fact regarding his exposure to Eagle products while working there.

Second, plaintiff cites a statement from the same portion of his deposition, when he says, regarding Eagle employees, "That was just about all of the facilities I worked on in my career."[59]   But this nonspecific,

---

[52]   *See* R. Doc. 650 at 4-5.
[53]   R. Doc. 794-1 at 2 (Discovery Deposition of Callen Cortez at 189:2-23).
[54]   *Id.* at 5 (Discovery Deposition of Callen Cortez at 192:21-25).
[55]   *Id.* at 8 (Discovery Deposition of Callen Cortez at 195:16-22).
[56]   *Id.* at 11 (Discovery Deposition of Callen Cortez at 198:18-23).
[57]   *Id.* at 12-13 (Discovery Deposition of Callen Cortez at 199:12-200:23).
[58]   *Id.* at 16 (Discovery Deposition of Callen Cortez at 203:9-12) (emphasis added).
[59]   *Id.* (Discovery Deposition of Callen Cortez at 203:17-19).

sweeping statement about "just about all of the facilities" where plaintiff worked is insufficient to defeat summary judgment as to Eagle's products. Critically, plaintiff does not specify which facilities are included or excluded from this set of facilities, nor does he explain the extent or nature of his interaction with Eagle employees, or proximity to Eagle's asbestos-containing products, at the facilities where Eagle assertedly had a presence. The Court finds that this broad statement does not create an issue of fact regarding plaintiff's exposure to Eagle-supplied products at Wyandotte.

Third, plaintiff cites deposition testimony regarding his work at Wyandotte. But none of this testimony places plaintiff around Eagle's asbestos-containing products. Specifically, plaintiff testified about his exposure to a Benjamin Foster 81-27 asbestos-containing adhesive, explaining that it got on plaintiff's clothes and dripped on the floor, and that plaintiff walked on it.[60] But there is no indication that this adhesive was supplied by Eagle. The only mention of Eagle in the context of plaintiff's work at Wyandotte is his testimony that he saw boxes with "Eagle" written on them in Wyandotte's warehouse.[61] Plaintiff was not asked about the

---

[60]   R. Doc. 650 at 6-7.

[61]   R. Doc. 650-4 at 15 (Discovery Deposition of Callen Cortez at 498:11-19).

contents of those Eagle boxes at Wyandotte until later in the deposition, when the following exchange occurred between plaintiff and his counsel:

> **Q.** Now, you were asked several questions by Eagle's [c]ounsel, McCarty's [c]ounsel, and Taylor-Seidenbach, and you said in the boxes, in addition to half-rounds they also had elbows and 90s and T's, I guess—
>
> **A.** Yes.
>
> **Q.** —is for the joints?
>
> **A.** Yes.
>
> **Q.** The elbows and the T's that were in the boxes from McCarty, Eagle, and Taylor-Seidenbach, did that look like the same type of pipe covering material?
>
> **A.** Yes.
>
> **Q.** Did they all match?
>
> . . .
>
> **A.** They all matched, yeah.[62]

Plaintiff does not explain the import of this testimony. Even construing the boxes at issue to be the Eagle-labeled boxes in Wyandotte's warehouse, this vague testimony about their contents does not create an issue of fact regarding plaintiff's exposure to Eagle's asbestos-containing products. For starters, plaintiff does say that he opened these boxes or was present when they were opened or handled. Nor does he explain what is meant by his statements that the elbows and Ts "look[ed] like the same type of pipe covering material," or that "[t]hey all matched." And in any case,

---

[62]    *Id.* at 18-19 (Discovery Deposition of Callen Cortez at 808:23-809:15).

plaintiff does not submit any evidence indicating that the boxes' contents contained asbestos.  Reasonable inferences cannot transform this testimony into evidence that plaintiff was exposed at Wyandotte to asbestos-containing products from Eagle.  For these reasons, the Court finds that plaintiff has failed to create an issue of fact on this issue.  *Cf. Lucas v. Hopeman Bros.*, 60 So. 3d 690, 702 (La. App. 4 Cir. 2011) (affirming summary judgment for defendant when the deponent "testified regarding the decedent installing insulation, or blankets, while at Avondale," but "could not state who manufactured the blankets nor does [his] testimony establish that the blankets actually contained asbestos.").

Accordingly, the Court finds that there is no dispute of material fact regarding plaintiff's exposure to asbestos from Eagle during First State's policy period with Eagle.  First State's motion for summary judgment[63] is granted.

### C.    USF&G's Motion for Partial Summary Judgment

United States Fidelity & Guaranty Company moves for partial summary judgment, on the same basis as First State.[64]  Specifically, USF&G

---

[63]    R. Doc. 410.
[64]    R. Doc. 445.

issued general liability insurance policies to Eagle, Inc. from 1977 to 1981.[65]
On the grounds argued in First State's motion for summary judgment,
USF&G seeks dismissal of all claims against it as the alleged insurer of Eagle
for the period of August 12, 1977 to November 1, 1979.[66]  Plaintiff opposes
the motion, and submits the same evidence in opposition as he submits in
opposition to First State's motion.[67]

Because the Court has found that plaintiff has not submitted evidence
sufficient to meet his burden to show that he was exposed to products
attributable to Eagle during his work at the Hooker or Wyandotte facilities
from 1977 to 1979, USF&G is entitled to summary judgment as to claims
arising out of that period.  USF&G does not seek, and the Court does not
grant, summary judgment regarding any claims arising from plaintiff's
alleged exposure to asbestos from Eagle during USF&G and Eagle's policy
periods from 1979 to 1981.  USF&G's motion for partial summary judgment[68]
is granted.

---

[65]   R. Doc. 445-2 at 2 (Affidavit of Kenneth Kupec ¶ 5).
[66]   R. Doc. 445-1 at 3.
[67]   R. Doc. 683.
[68]   R. Doc. 445.

### D.    Berkshire Hathaway's Motion for Summary Judgment

Berkshire Hathaway Specialty Insurance Company moves for summary judgment, seeking dismissal of all claims against it.[69]  Berkshire held a liability insurance policy with Eagle, Inc. for two distinct policy periods: first, from August 12, 1974 to August 12, 1975,[70] and, second, from August 12, 1976 to August 12, 1977.[71]  Berkshire contends that plaintiff has not produced any evidence that he was exposed to asbestos from Eagle's products during either of these policy periods, and that, therefore, all claims against Berkshire must be dismissed.[72]  Plaintiff opposes the motion.[73]

As stated above, an insurer is liable only for harmful exposures that occurred during the insurer's policy period with the alleged tortfeasor.  *Cole*, 599 So. 2d at 1076.  The parties agree that Berkshire's liability coverage of Eagle corresponds to plaintiff's work at five distinct facilities: Halter Marine, Inc.,[74] Service Marine & Shipbuilding Corp. ("Service Marine"),[75] the

---

[69]    R. Doc. 416.

[70]    R. Doc. 416-2 (Stonewall Insurance Company Policy) (1974-1975).

[71]    R. Doc. 416-3 (Stonewall Insurance Company Policy) (1976-1977).

[72]    R. Doc. 416-1 at 1.

[73]    R. Doc. 646.

[74]    R. Doc. 646-3 at 3 (Callen Cortez Social Security Records).

[75]    *Id.*

Monsanto petrochemical plant,[76] the Hooker Chemical plant,[77] and the Wyandotte Chemical plant.[78]

As to Hooker and Wyandotte, the Court has already addressed, in granting First State's motion for summary judgment, plaintiff's evidence of his alleged exposure to Eagle's asbestos-containing products at these two facilities.[79]  In his opposition to Berkshire's motion, plaintiff offers the same evidence he presents as to First State's motion, regarding his exposure to Eagle-supplied asbestos products at Hooker and Wyandotte.  Plaintiff does not offer any additional evidence or otherwise show that a different outcome is warranted as to Berkshire's coverage of Eagle.  Accordingly, for the reasons already given, the Court finds that plaintiff's evidence of asbestos exposure attributable to Eagle at Hooker and Wyandotte does not create an issue of fact sufficient to defeat summary judgment.

As to his work at Service Marine and Monsanto, plaintiff cites his testimony that (i) he worked around Eagle employees, and that (ii) Eagle had a presence at "just about all of the facilities [he] worked on in [his] career."[80]

---

[76]   R. Doc. 416-4 at 5 (Discovery Deposition of Callen Cortez at 174:10-16).
[77]   R. Doc. 646-3 at 3 (Callen Cortez Social Security Records).
[78]   *Id.* at 4.
[79]   *See supra* Section III.B (granting First State's motion for summary judgment).
[80]   R. Doc. 646 at 4.

For the reasons already given regarding First State's motion, this testimony does not create an issue of fact regarding plaintiff's exposure to asbestos attributable to Eagle.   With respect to plaintiff's work around Eagle employees, the Court again notes that, despite plaintiff's repeated attempts to cloud the context of this testimony, this portion of the deposition pertained to a specific set of facilities.[81]   Service Marine and Monsanto are not among those facilities.   Moreover, as explained above,[82] the Court again finds that plaintiff's statement regarding Eagle's presence at "just about all the facilities" where he worked is insufficient to defeat summary judgment. Plaintiff's evidence regarding his work at Service Marine and Monsanto does not create an issue of material fact for the purposes of Berkshire's liability as Eagle's insurer.

The Court thus proceeds to address plaintiff's work at Halter Marine, the only remaining facility pertinent to Berkshire's motion.   Plaintiff testified that, while at Halter Marine, he worked near personnel from Hopeman Brothers, Inc. ("Hopeman"), who worked on piping and in the living quarters on vessels.[83]   He testified that their work sent dust flying into the air, and

---

[81]   *See supra* Section III.B (granting First State's motion for summary judgment).

[82]   *See id.*

[83]   R. Doc. 646-4 at 4-9 (Discovery Deposition of Callen Cortez at 155:21-162:10).

that he it got on his clothes, and he breathed it in.[84]  Plaintiff then attempts

to connect the Hopeman workers to Eagle, by citing the following exchange

from his deposition:

> **Q.** And do you know the brand or manufacturer of any of the materials that Hopeman Brothers used at Halter Marine during the time that you worked there?
>
> **A.** Eagle and McCarty and Taylor-Seidenbach were everywhere.[85]

Plaintiff contends that, in light of this testimony, there exists an issue of fact

as to whether he was exposed to Eagle's products at Halter Marine.  But the

ensuing testimony makes clear that plaintiff had no basis to support this

inference.  In response to plaintiff's answer that these three companies'

products "were everywhere," counsel said: "Okay.  I am not asking you about

those companies right now.  What I am asking you about is Hopeman

Brothers.  And do you remember Hopeman Brothers working at Halter

Marine when you worked there?"[86]  Plaintiff replied that he remembers

Hopeman personnel working there, and that the Hopeman employees did

the same work at Halter Marine as they did at Avondale.[87]  Plaintiff's excerpt

of this portion of the deposition stops there.  But in reply, Berkshire has

---

[84]   *Id.* at 7 (Discovery Deposition of Callen Cortez at 159:3-25).

[85]   *Id.* at 28 (Discovery Deposition of Callen Cortez at 314:2-7).

[86]   *Id.* (Discovery Deposition of Callen Cortez at 314:8-12).

[87]   *Id.* (Discovery Deposition of Callen Cortez at 314:13-23).

provided the next page of the transcript, which contains the following

exchange:

> **Q.**  Okay.  And do you know the brand or manufacturer of any of the materials that Hopeman Brothers used when you worked at Halter Marine?
>
> **A.**  No.
>
> **Q.**  And did you see the specifications for any of the work that Hopeman Brothers was to have done on any of the vessels at Halter Marine?
>
> **A.**  No.
>
> **Q.**  And are you able to provide any more description of the material that Hopeman Brothers was using on the vessels at Halter Marine other than what you have already given me?
>
> **A.**  No.[88]

This testimony, taken in context, makes clear that plaintiff is unable to

sustain his burden to show that he was exposed to Eagle's products from the

work of the Hopeman personnel at Halter Marine.  And plaintiff's other

arguments regarding his work at Halter Marine do not address Eagle at all,[89]

and therefore do not create an issue of fact as to Berkshire's liability arising

from his work at Halter Marine.

---

[88]  R. Doc. 834-1 at 7 (Discovery Deposition of Callen Cortez at 315:66-21).

[89]  *See* R. Doc. 646 at 3-4 (quoting plaintiff's deposition testimony regarding asbestos exposure from insulation work at Halter Marine, with no mention of Eagle or its products).

For these reasons, the Court finds that plaintiff has not produced evidence sufficient to meet his burden to show that he was exposed to Eagle-supplied asbestos products at any of the facilities where he worked during the periods of Berkshire's liability policies with Eagle. Berkshire is therefore entitled to summary judgment and dismissal of all claims against it.

### E.   GE's Motion for Summary Judgment

Defendant General Electric Company moves for summary judgment, seeking dismissal of all claims against it.[90]   Plaintiff, Avondale, and Continental Insurance Company oppose the motion.[91]  GE first contends that plaintiff has not produced evidence that he worked near GE personnel or products.[92]  But contrary to GE's assertion, the record reflects that plaintiff worked around GE turbines during his time at Avondale, and that he saw people conducting work on the turbines, including installing insulation.[93] Plaintiff testified that the brands of turbines were GE and Westinghouse.[94] He then testified that, when he was around the GE turbines, the work on the

---

[90]   R. Doc. 496.

[91]   R. Docs. 640, 647 & 701.

[92]   R. Doc. 496-1 at 6.

[93]   R. Doc. 640-2 at 7-8 (Perpetuation Deposition of Callen Cortez at 146:6-147:20).

[94]   *Id.* at 8 (Perpetuation Deposition of Callen Cortez at 147:6-10).

turbines produced dust, and he breathed in the dust.[95]  Moreover, plaintiff has submitted evidence that he was exposed to asbestos in the home, from the dust taken home from his brothers' and father's work in the 1960s. Relevant to GE's motion is that plaintiff's brother, Daniel Cortez, testified that he insulated turbines aboard certain vessels while at Avondale.[96]  Daniel Cortez specifically testified that he worked on a Genevieve Lykes vessel, as well as the Montana and the Colorado.[97] GE's corporate representative, David Skinner, named all of these vessels as ships for which GE provided turbines.[98]  This evidence is sufficient to create an issue of fact as to whether plaintiff was exposed to products used in connection with GE's turbines.

GE further contends that, even if plaintiff worked around, or was exposed at home to, asbestos associated with GE's turbines, GE is not legally responsible for those harms because it "did not manufacture, sell, supply[,] or install" the insulation for the turbines.[99]  An assessment of this argument

---

[95]    *Id. (*Perpetuation Deposition of Callen Cortez at 147:11-20).

[96]    R. Doc. 640-3 at 6 (Deposition of Daniel Cortez at 28:14-25).

[97]    *Id.* at 8 (Deposition of Daniel Cortez at 31:5-16).

[98]    R. Doc. 647-11 at 2 (Deposition of David R. Skinner at 20:10-20, *Comardelle v. Pennsylvania Gen. Ins. Co.*, No. 12-6555 (E.D. La. Nov. 3, 2014)).  GE did not object to the opposing parties' reliance on Skinner's testimony.

[99]    R. Doc. 496-1 at 7.

requires a brief discussion of the products-liability theories available to the plaintiff.

The substantive law that governs plaintiff's claims is the law in effect when the exposure occurred. *Rando*, 16 So. 3d at 1072. Relevant here is Louisiana products-liability law, which, prior to the enactment of the Louisiana Products Liability Act ("LPLA") in 1987, was summarized by the Louisiana Supreme Court in *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986). *See Cole v. Ashland Chem., Inc.*, No. 09-6584, 2010 WL 5141248, at *1 n.2 (E.D. La. Dec. 10, 2010) ("*Halphen*, like many older products liability cases, has been legislatively overruled by the Louisiana Products Liability Act. The exposures at issue in this case occurred prior to the enactment of the Act so the pre-Act principles espoused in *Halphen* apply.").

In *Halphen*, the Louisiana Supreme Court explained that, "[i]n order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control." 484 So. 2d at 113. At issue here is whether GE's product was "unreasonably dangerous," under any of the recognized theories of liability: (1) unreasonably dangerous

in construction or composition, (2) unreasonably dangerous per se, (3) unreasonably dangerous in design, or (4) unreasonably dangerous for failure to warn. *See id.* at 113-15. Only the latter three are relevant here; plaintiff does not allege that GE's turbines were defective in construction or composition.

The Louisiana Supreme Court defined these three products-liability theories as follows. First, a product is "unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product." *Id.* at 114 (collecting cases). A product may be defective in design (1) if it is unreasonably dangerous per se, (2) if "alternative products were available to serve the same needs or desires with less risk of harm," or (3) if "there was a feasible way to design the product with less harmful consequences." *Id.* at 115. As to warnings, a product is "unreasonably dangerous . . . if the manufacturer fails to adequately warn about a danger related to the way the product is designed." *Id.* at 114-15. Further, "[a] manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." *Id.* at 115.

1.   *Asbestos Gaskets*

Here, GE's corporate representative, David Skinner, testified in 2014 that GE manufactured and sold turbines for installation on vessels at Avondale, and that GE's specifications for the turbines included asbestos-containing gaskets.[100]  Specifically, plaintiff submits the following testimony from Skinner's deposition:

> **Q.**   Now sir, in connection with these commercial vessels for which General Electric supplied its turbines, component parts of those turbines would have included asbestos gaskets; is that correct?
>
> **A.**   I would have assumed there would be some asbestos gaskets in them, yes.
>
> **Q.**   Have you seen specifications by General Electric with regard to sheet asbestos gaskets?
>
> **A.**   I have seen some, yes.[101]

Skinner reviewed some such specifications at his deposition:

> **Q.**   And is this a General Electric sheet gasket specification?
>
> **A.**   Yes, it is.  It's dated 1998.
>
> **Q.**   Actually, look at that date again?
>
> **A.**   1988.
>
> . . .
>
> **Q.**   [S]o, this is actually [dated] December 19, 1988. General Electric was still specifying asbestos sheet gasket material?

---

[100]   R. Doc. 640-5 at 6, 10-12 (Deposition of David R. Skinner at 34:4-14; 120:9-122:16, *Comardelle v. Pennsylvania Gen. Ins. Co.*, No. 12-6555 (E.D. La. Nov. 3, 2014)).

[101]   *Id.* at 6 (Deposition of David R. Skinner at 34:4-14).

**A.**    They had it in their system. . . . .

**Q.**    And so, if you look—if something on the drawing says—if you could look at the second page, A50AF004A, that would be the specification for asbestos sheet gasket material; is that correct?

**A.**    That's correct.  There is also a specification B on there, which is a non-asbestos.

**Q.**    I understand, but then the drawing would have a B instead of an A; is that correct?

**A.**    The drawing would have a B involved in it, yes.

**Q.**    Okay.  So . . . [b]ottom line, though, in December of 1988, General Electric was still specifying asbestos gaskets?

**A.**    They had an asbestos gasket option still available in the system . . . .[102]

Skinner also testified that GE did not issue warnings about asbestos in connection with its products.[103]

The Court notes that Skinner does not, at least in the excerpts provided, explicitly connect Avondale to these asbestos gaskets.  But the testimony does indicate that GE supplied or specified the gaskets in connection with "vessels for which [GE] supplied its turbines," which included the Lykes vessels, and Colorado and Montana vessels.  And as noted above, Daniel Cortez testified that, at Avondale, he insulated turbines on the Genevieve Lykes, the Colorado, and the Montana.  Moreover, GE did not rebut plaintiff's suggestion, based on this testimony, that the asbestos

---

[102]    *Id.* at 8-9 (Deposition of David R. Skinner at 36:4-37:15).

[103]    *Id.* at 13 (Deposition of David R. Skinner at 183:1-9).

gaskets were supplied or specified for GE turbines to be installed on vessels at Avondale.

Accordingly, the Court finds that this testimony raises an issue of fact as to whether GE supplied or specified asbestos-containing gaskets in connection with the turbines that it provided to Avondale.  If GE directly supplied asbestos gaskets to Avondale, GE may be held liable for supplying a product that is unreasonably dangerous per se.  *See Halphen v. Johns-Manville Sales Corp.*, 788 F.2d 274, 275 (5th Cir. 1986) (noting that "the Supreme Court of Louisiana places asbestos in that category" of products that are unreasonably dangerous per se).  Under this theory, "what [GE] knew or could have known about the inherent danger of asbestos [i]s irrelevant to the question of its liability for proximately-caused injury."  *Id.*  There also remains an issue of fact regarding whether GE issued warnings in connection with the use of asbestos gaskets.  Accordingly, even if GE did not itself supply the gaskets, and instead specified that asbestos gaskets be used in connection with its turbines, a reasonable jury may nonetheless find GE liable for failure to warn about a "danger related to the way the product is designed."  *Halphen*, 484 So. 2d at 114-15.

GE cites no *Halphen*-era Louisiana cases rejecting a duty to warn based on facts like these.  It is true that GE cites Louisiana cases that state that "a

manufacturer or seller cannot be liable in a products liability action where it proves that it did not manufacture, install, or sell the component part alleged to be defective." *Home Ins. Co. of Illinois v. Nat'l Tea Co.*, 577 So. 2d 65, 74 (La. App. 1 Cir. 1990) (citing *Newman v. Gen. Motors Corp.*, 524 So. 2d 207, 209 (La. App. 4 Cir. 1988).[104] But this rule, as stated and applied in *Home Insurance* and *Newman*, does not answer the question presented by the facts of this case. In *Home Insurance*, the Louisiana First Circuit affirmed the trial court's finding that an oven manufacturer and seller were not liable for a fire, because the wiring defect at issue was created by another party's installation of the wiring. *Id.* And in *Newman*, the Louisiana Fourth Circuit affirmed the trial court's finding that the vehicle manufacturer, GMC, was not liable for the plaintiff's injuries because it did not design, manufacture, or assemble the defective trailer ratchet. 524 So. 2d at 209. In both cases, the manufacturer/seller had no relationship to the defect. The defendants had not supplied, specified, or even recommended the use of the defective product. Indeed, the *Newman* court recognized as much when it noted that the case was "not a case where GMC as the manufacturer incorporated another's product into its vehicle or held the vehicle out to be its own, *together with component parts manufactured by another*." *Id.* (emphasis

---

[104]   R. Doc. 496-1 at 7.

added).  Here, plaintiff has submitted evidence creating an issue of fact as to whether GE supplied or specified asbestos gaskets as a "component part[]" of its turbines.  The disconnect between manufacturer and defect that characterizes *Home Insurance* and *Newman* is not present in this case. These cases, and the other factually similar Louisiana cases that GE and the *Newman* court cite,[105] do not warrant summary judgment in favor of GE, insofar as plaintiff's claims arise out of the use of asbestos gaskets on GE's turbines.  *See, e.g.*, *Duhon v. Petroleum Helicopters, Inc.*, 554 So. 2d 1270, 1278 (La. App. 3 Cir. 1989) (finding an aircraft manufacturer not liable because the aircraft accidents at issue resulted from the malfunction of an engine that "was not the engine in the aircraft at the time of its manufacture or its sale"); *Landry v. E.A. Caldwell, Inc.*, 280 So. 2d 231, 235 (La. App. 1 Cir. 1973) (finding a motor-scooter manufacturer not liable because the throttle mechanism that caused the accident was "a completely foreign device")); *St. Pierre v. Gabriel*, 351 So. 2d 821, 824 (La. App. 1 Cir. 1977) (finding an electric-saw manufacturer not liable because the defect was caused by a substituted spring that did not come on the saw, and was not the manufacturer's spring).  And the only other products-liability cases that GE cites are from other jurisdictions, and apply either maritime law or out-of-

---

[105]    *Id.* at 8, 10.

state jurisprudence.[106]  These cases are not controlling on or persuasive for this Court.

For these reasons, the Court denies summary judgment as to the use of asbestos gaskets on GE's turbines.

### 2.  *Insulation*

David Skinner also testified that GE's steam turbines had to be insulated to keep exterior temperatures sufficiently low.[107]  He said that if the turbines were not insulated, which was "extremely unlikely," the turbines risk being damaged.[108]  Skinner also testified that the insulation may have included asbestos.  His deposition proceeded as follows:

> **Q.** In the mid-1960s, what type of insulation was being used on marine turbines to get it down in that neighborhood [of a temperature of 125 degrees]?
>
> **A.** I would not be surprised to find out that it was asbestos-containing insulation.  However, other options did exist at that time.
>
> **Q.** Okay. But General Electric certainly knew that was one of the options that would be used on these turbines, was asbestos-containing insulation?
>
> **A.** I'm sure they did, yes.[109]

---

[106]   R. Doc. 496-1 at 9-14.

[107]   R. Doc. 640-5 at 14-16 (Deposition of David R. Skinner at 188:20-190:21).

[108]   *Id.* at 18-19 (Deposition of David R. Skinner at 196:10-197:1).

[109]   *Id.* at 16-17 (Deposition of David R. Skinner at 190:22-191:8).

The Court must determine whether this record regarding insulation creates an issue of fact supporting a products-liability claim against GE under any of the theories enumerated in *Halphen*.  First, while asbestos-containing insulation may be unreasonably dangerous per se, *see Halphen*, 788 F.2d at 275, plaintiff has submitted no evidence that GE manufactured or supplied asbestos-containing insulation.   Accordingly, to survive summary judgment on GE's liability for the subsequent insulation of its turbines, plaintiff must point to material facts going to either defective design or failure to warn.  Plaintiff argues both of these theories in his memorandum opposing GE's motion for summary judgment.[110]  The Court addresses each theory in turn.

The Court finds that plaintiff's design-defect claim fails.  As noted above, if not unreasonably dangerous per se, a product may nonetheless be unreasonably dangerous in design if (1) "alternative products were available to serve the same needs or desires with less risk of harm," or if (2) "there was a feasible way to design the product with less harmful consequences." *Halphen*, 484 So. 2d at 115.  Plaintiff contends that "GE's own corporate representative confirmed that it designed its marine turbines to be insulated

---

[110]    R. Doc. 647 at 17-19.

with asbestos and that it knew asbestos was to be used."[111]  But this assertion overstates the substance of record, which merely establishes that GE knew that its turbines required *insulation*, and that, at the time, asbestos insulation was an option.  There is no evidence that GE's design of its turbines required that they be insulated with asbestos.  With no showing that the turbine's "design" included an asbestos requirement or even recommendation, the Court finds that plaintiff is unable to meet his burden on a design-defect claim against GE based on the insulation of its turbines.

This leaves the question of plaintiff's failure-to-warn claim.  The Court finds that this claim must also fail.  As an initial matter, *Halphen* did not address whether a manufacturer has a duty to warn of dangers inherent in third-party products that may be used in connection with defendant's products.  On the contrary, *Halphen* and the cases it cites deal only with a duty to warn stemming from dangers inherent in the manufacturer's own product.  They do not establish a duty to warn against dangers inherent in others' products that may be used with the manufacturer's product.  *See id.* at 115 (citing *Winterrowd v. Travelers Indem. Co.*, 462 So. 2d 639 (La. 1985); *Hebert v. Brazzel*, 403 So. 2d 1242 (La. 1981); and *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926 (La. 1978)).  For instance, *Winterrowd*

---

[111]     *Id.* at 17.

involved the manufacturer's duty to warn that its punch press might make an "uninitiated double stroke" and crush the operator's fingers. 462 So. 2d at 641-42. *Hebert* discussed whether a valve manufacturer had a duty to warn of "the danger of breaking the valve['s] stem with a large wrench due to excessive torque." 403 So. 2d at 1245. And *Chappuis* involved a hammer retailer's duty to warn that the hammer should be discarded if it becomes chipped. 358 So. 2d at 930. The *Halphen* court did not cite any cases discussing a manufacturer's failure to warn of "danger[s] inherent in the use of" *others'* products that may later be used with the manufacturer's own product.

And beyond the *Halphen* opinion itself, plaintiff has not cited, and this Court has not found, any *Halphen*-era Louisiana cases in which a manufacturer was held liable for failure to warn of a product's dangers when the manufacturer did not manufacture, sell, design, install, specify, require, or recommend the product alleged to be dangerous. And while the cases of *Newman*, 524 So. 2d at 209, and *Home Insurance*, 577 So. 2d at 74, discussed above, do not entitle to GE to summary judgment as to the asbestos gaskets, those cases support this Court's conclusion that GE had no duty to warn of dangers related to the possible use of asbestos insulation on its turbines. *See id.* ("[A] manufacturer or seller cannot be liable in a products

liability action where it proves that it did not manufacture, install, or sell the component part alleged to be defective.").  In the absence of any authority indicating that a manufacturer in GE's position has a duty to warn of the dangers of a third party's product, the Court finds that plaintiff's failure-to-warn theory is meritless.  Accordingly, GE is entitled to summary judgment as to plaintiff's failure-to-warn claims arising out of third-party use of asbestos-containing insulation on its turbines.

Plaintiff's arguments in opposition are unavailing.  First, plaintiff points to Skinner's testimony that he "would not be surprised" if others installed asbestos-containing insulation on GE's turbines, in that this type of insulation was one option among others.  But this evidence does not establish that GE knew that asbestos insulation would be used.  It only establishes that GE knew that it was an "option" for insulation of its turbines.  More critically, even if GE foresaw that asbestos insulation could be used on its turbines, plaintiff has submitted no legal authority indicating that some degree of foreseeability alone is sufficient to generate a duty to warn of the dangers of another manufacturer's product.  On the contrary, as discussed above, *Halphen* and the cases it cites contemplate dangers inherent in the manufacturer's own product. *See Winterrowd*, 462 So. 2d at 641-42; *Hebert*, 403 So. 2d at 1245; and *Chappuis*, 358 So. 2d at 930.

Second, plaintiff cites two Louisiana cases in support of his argument that GE had a duty to warn,[112] but neither is apposite here.  In neither case did the asbestos defendants argue that their products did not contain, or were not accompanied by, asbestos.  Instead, they argued that the plaintiffs had not shown that they worked around their products.  The court rejected the argument and found issues of fact in both cases.  *See Danos v. Avondale Industries, Inc.*, 989 So. 2d 160, 163 (La. App. 4 Cir. 2008) (finding an issue of fact as to whether the manufacturer's boilers were present on the destroyer escorts where decedent worked); *Berthelot v. Avondale Industries, Inc.*, 841 So. 2d 91, 93-94 (La. App. 4 Cir. 2003) (finding that summary judgment was precluded because plaintiff's testimony contradicted the manufacturer's testimony regarding whether plaintiff worked around the manufacturer's boilers).  Accordingly, neither *Danos* nor *Berthelot* supports plaintiff's position that GE may be held liable for failure to warn for dangers caused by a third party's product that GE did not manufacture, sell, design, install, specify, recommend, or require.

Accordingly, GE is entitled to summary judgment as to plaintiff's products-liability claims arising out of insulation of its turbines.

---

[112]   R. Doc. 647 at 15.

For the foregoing reasons, GE's motion for summary judgment[113] is granted in part, and denied in part. The Court grants the motion as to plaintiff's claims regarding the use of asbestos-containing insulation on GE's turbines. The Court denies the motion as to plaintiff's claims regarding asbestos gaskets supplied or specified by GE.

### F.     Foster Wheeler's Motion for Summary Judgment

Defendant General Foster Wheeler, LLC moves for summary judgment, seeking dismissal of all claims against it.[114] Plaintiff, Avondale, and Continental Insurance Company oppose the motion.[115] Foster Wheeler contends that plaintiff has not produced evidence that he was exposed to asbestos from its products. This argument fails. Plaintiff testified that, while working at Avondale, he worked near people who insulated Foster Wheeler boilers.[116] He further testified that the insulators' work generated dust, which he breathed in.[117] Plaintiff also recalled seeing Foster Wheeler personnel onsite at Avondale, overseeing the work on the company's

---

[113]   R. Doc. 496.

[114]   R. Doc. 497.

[115]   R. Docs. 641, 645 & 665.

[116]   R. Doc. 641-2 at 8-9 (Perpetuation Deposition of Callen Cortez at 141:19-142:6).

[117]   *Id.* at 9-11 (Perpetuation Deposition of Callen Cortez at 142:7-144:5).

boilers.[118]    Furthermore, the opposing parties submit the testimony of Thomas Schroppe, Foster Wheeler's corporate representative, who testified at a 2014 deposition that Foster Wheeler supplied various types of asbestos-containing materials to Avondale in connection with its boilers.[119]  Based on this record, the Court finds that "a reasonable jury could conclude that it is more likely than not" that plaintiff inhaled asbestos attributable to Foster Wheeler.  *Williams*, 23 F.4th at 512.  Foster Wheeler's assertion to the contrary is without merit, and does not warrant entry of summary judgment in its favor.

Foster Wheeler further contends that, even if plaintiff worked around asbestos associated with its products, Foster Wheeler is not legally responsible for those harms because it "did not manufacture, sell, supply[,] or install" the insulation on its boilers.[120]  But there remain issues of fact as to whether Foster Wheeler supplied Avondale with asbestos-containing products to which plaintiff was exposed.  For instance, at his deposition, Schroppe reviewed purchase orders indicating that Foster Wheeler

---

[118]    *Id.* at 11-12 (Perpetuation Deposition of Callen Cortez at 144:13-145:4).

[119]    *See, e.g.*, R. Doc. 641-5 at 9, 13-14 (Deposition of Thomas Schroppe at 39:11-16, 56:3-57:13, *Comardelle v. Pennsylvania Gen. Ins. Co.*, No. 12-6555 (E.D. La. Nov. 12, 2014)).  Foster Wheeler did not object to the opposing parties' reliance on Schroppe's testimony.

[120]    R. Doc. 496-1 at 7.

purchased asbestos cloth and asbestos rope to be shipped to Avondale.[121] Schroppe also reviewed a bill of lading for "insulation material, . . . asbestos, calcium, and silicate combined for use" on certain vessels, and stated that this insulation material was purchased by Foster Wheeler for use at Avondale.[122] Elsewhere in his deposition, Schroppe stated that "[i]f [he] had to bet, [he] would bet that" one-eighth inch asbestos cloth was supplied by Foster Wheeler.[123] Schroppe also testified that he did not recall any warnings issued in connection with the boilers.[124] Accordingly, there remain issues of fact regarding whether Foster Wheeler may be held liable for supplying asbestos products that were unreasonably dangerous per se, *see Halphen*, 788 F.2d at 275, or, for failing to warn of the asbestos-related dangers associated with the design of its boilers. *Halphen*, 484 So. 2d at 115.

Material facts thus remain in dispute as to Foster Wheeler's liability for plaintiff's injuries. Foster Wheeler's motion for summary judgment[125] is denied.

---

[121]   R. Doc. 641-5 at 13-14 (Deposition of Thomas Schroppe at 56:24-56:17).

[122]   *Id.* at 13 (Deposition of Thomas Schroppe at 56:11-23).

[123]   *Id.* at 9 (Deposition of Thomas Schroppe at 39:11-16).

[124]   *Id.* at 23 (Deposition of Thomas Schroppe at 76:4-19).

[125]   R. Doc. 497.

### G.    Insulations, LLC's Motion for Summary Judgment

Third party defendant Insulations, LLC moves for summary judgment.[126]  Insulations, LLC contends that the record contains no evidence indicating that plaintiff was exposed to asbestos attributable to Insulations, LLC, and that all claims against it should be dismissed.[127]  Movant points to the deposition testimony of plaintiff and his two brothers.  Plaintiff and his brother, Mitchell, testified that they were not familiar with the company and could not offer any testimony about it.[128]  Plaintiff's brother, Daniel, testified that he worked for the company for one weekend, and was not exposed to asbestos during that job.[129]  No party opposes the motion, so no evidence has been submitted to create an issue of fact or otherwise defeat summary judgment.  *See Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  (quoting *Celotex*, 477 U.S. at 322)).

---

[126]    R. Doc. 523.

[127]    R. Doc. 523-3 at 3.

[128]    R. Doc. 523-6 at 37-38 (Deposition of Callen Cortez at 37:6-38:1); R. Doc. 523-8 at 92-93 (Deposition of Mitchell Cortez at 95:20-96:3).

[129]    R. Doc. 523-7 at 116-18 (Deposition of Daniel Cortez at 118:2-120:8).

Because there are no issues of material fact regarding the liability of Insulations, LLC for plaintiff's injuries, movant is entitled to summary judgment and dismissal of all claims against it. The Court grants Insulations, LLC's unopposed motion for summary judgment.[130]

## IV.    CONCLUSION

For the foregoing reasons,

The Court GRANTS LIGA's motion *in limine* to exclude hearsay regarding Calise Cortez's work at Nine Mile Point,[131] and GRANTS Entergy's motion for summary judgment.[132] The Court GRANTS First State's motion for summary judgment,[133] GRANTS USF&G's motion for partial summary judgment,[134] GRANTS Berkshire's motion for summary judgment,[135] and GRANTS Insulations, LLC's motion for summary judgment.[136]

The Court GRANTS IN PART and DENIES IN PART GE's motion for summary judgment.[137]

---

[130]    R. Doc. 523.
[131]    R. Doc. 525.
[132]    R. Doc. 389.
[133]    R. Doc. 410.
[134]    R. Doc. 445.
[135]    R. Doc. 416.
[136]    R. Doc. 523.
[137]    R. Doc. 496.

The Court DENIES Foster Wheeler's motion for summary judgment.[138]


New Orleans, Louisiana, this __3rd__ day of May, 2022.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[138]    R. Doc. 497.

51