UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ                                        CIVIL ACTION

VERSUS                                                        NO. 20-2389

LAMORAK INSURANCE COMPANY,                    SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is defendant Continental Insurance Company's ("Continental") motion for summary judgment, seeking dismissal of plaintiff's claims against it on the grounds of preemption under the Longshore and Harbor Workers' Compensation Act ("LHWCA").[1] Continental is sued in its capacity as the insurer of Halter Marine Services, Inc. ("Halter Marine").  Plaintiff Callen Cortez opposes the motion.[2]

Also before the Court are two other summary-judgment motions filed by Continental, based on (i) certain policy exclusions,[3] and (ii) the liability of Halter Marine's executive officers.[4]  Plaintiff opposes both of these motions.[5]

---

[1]     R. Doc. 405.
[2]     R. Doc. 582.
[3]     R. Doc. 538.
[4]     R. Doc. 554.
[5]     R. Docs. 649 & 651.

Because plaintiff's claims arising out of his employment with Halter Marine are preempted by the LHWCA, the Court grants Continental's motion for summary judgment on preemption,[6] and dismisses all of plaintiff's claims against Continental.   Having dismissed all of plaintiff's claims against Continental, the Court in turn dismisses Continental's other motions for summary judgment[7] as moot.

## I.   BACKGROUND

This is an asbestos exposure case.   Plaintiff Callen Cortez alleges that he contracted mesothelioma as a result of exposure to asbestos during his employment with various companies, including Halter Marine, where he worked from 1974 through 1975.[8]   Plaintiff was diagnosed with mesothelioma on June 2, 2020.[9]   On July 1, 2020, plaintiff filed suit in the Civil District Court for the Parish of Orleans against approximately thirty-five defendants, including former employers, manufacturers, premises owners, and insurance companies.[10]   Among the defendants is Continental,

---

[6]   R. Doc. 405.

[7]   R. Docs. 538 & 554.

[8]   R. Doc. 1-1 at 5-6 (Complaint ¶¶ 7-8); *see also* R. Doc. 582-3 at 3 (Social Security Statement of Callen J. Cortez).

[9]   *Id.* at 10 (Complaint ¶ 17).

[10]   *Id.* at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.

sued in its capacity as the alleged insurer of Halter Marine and its executive officers.[11]  On August 31, 2020, the case was removed to federal court.[12]

On February 22, 2022, Continental moved for summary judgment.[13] Continental contends that plaintiff's claims against it, which arise out of plaintiff's employment with Halter Marine, should be dismissed because they are preempted by the exclusivity provisions of the LHWCA.[14]  Plaintiff opposes the motion, contending that (i) Continental has failed to show that Halter Marine secured insurance coverage for LHWCA claims;[15] (ii) plaintiff's injuries fall within the "twilight zone" of concurrent federal and state jurisdiction over workers' compensation claims;[16] (iii) his claims based on at-home exposure from his work at Halter Marine are not covered, and thus not preempted, by the LHWCA;[17] and (iv) material facts remain in dispute as to plaintiff's intentional-tort claims, for which the LHWCA has an exception.[18]

The Court considers the parties' arguments below.

---

[11]    R. Doc. 1-1 at 5 (Complaint ¶ 7).
[12]    R. Doc. 1 (Notice of Removal).
[13]    R. Doc. 405.
[14]    R. Doc. 405-1 at 3-9.
[15]    R. Doc. 582 at 2-4.
[16]    *Id.* at 4-21.
[17]    *Id.* at 21-23.
[18]    *Id.* at 23-28.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion,

5

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A.    Preemption of State-Law Claims

Continental argues that the LHWCA preempts plaintiff's claims against it.  This Court and other sections of the Court have held in similar cases that the LHWCA preempts a plaintiff's occupational-exposure claims against his employer and his employer's insurers.  *See Morales v. Anco Insulations Inc.*, No. 20-996, 2022 WL 1405133  (E.D. La. May 4, 2022); *Sentilles v. Huntington Ingalls Inc.*, No. 21-958, 2022 WL 1211429 (E.D. La. Apr. 25, 2022); *Barrosse v. Huntington Ingalls, Inc.*, No. 20-2042, 2021 WL 4355415 (E.D. La. Sept. 24, 2021); *Krutz v. Huntingon Ingalls, Inc.*, No. 20-1722, 2021 WL 5893981 (E.D. La. Apr. 22, 2021); *Hulin v Huntington Ingalls, Inc.*, No. 20-924, 2020 WL 6059645 (E.D. La. Oct. 14, 2020); *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 5071115 (E.D. La. Aug. 26, 2020); *Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-2131, 1997 WL 159491 (E.D. La. Mar. 27, 1997).  Accordingly, in addressing this question, the Court largely reiterates its prior analyses on this issue.

The LHWCA is a federal workers' compensation statute providing covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Off. of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020) (citation and internal quotation marks omitted). Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)." *Id.* (citing 33 U.S.C. § 903(a) (pre-1972)). But, in 1972, Congress amended the Act and "extend[ed] the LHWCA landward." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719 (1980).

1. *Applicable Version of the LHWCA*

Courts use the "date of injury" to determine which version of the LHWCA applies. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985). In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit in *Castorina* held that manifestation of the disease, not the timing of exposure, determines the date of injury. *Id.* at 1031. There, plaintiff's disease, asbestosis, manifested in 1979. *Id.* at 1028. His exposures occurred between 1965 and 1972. *Id.* at 1027. The Fifth Circuit looked to judicial authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself." *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464

(2d Cir.), *cert. denied*, 308 U.S. 570 (1939)).  It also inferred Congress's intent from Congress's express adoption of the manifestation rule in 1984. *Id.* (citing Pub. L. No. 98–426, § 28(g)(1), 98 Stat. 1639 (1984)). In the 1984 amendments to the LHWCA, Congress provided a specific definition of "injury" for occupational diseases:

> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . . .

Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984).  Under *Castorina* and the 1984 amendments, Cortez's injury is deemed to arise on the date it manifested.  Because Cortez's disease manifested in 2020, the Court applies the LHWCA as it existed in 2020, the date of his injury.[19]

Plaintiff disputes this legal conclusion, instead asserting that Cortez's injury arose on the date of his exposure to asbestos.  In support of this argument, plaintiff points to dicta in a footnote in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 466 n.6 (5th Cir. 2016),[20] in which the Fifth Circuit stated:

> Defendant's preemption defense is governed by the law *at the time* [*plaintiff*] *was exposed to asbestos*, which occurred before

---

[19]   R. Doc. 1-1 at 10 (Complaint ¶ 17).

[20]   R. Doc. 582 at 5-7.

the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act. *See* La. Rev. Stat. 23:1035.2 (providing that "[n]o compensation shall be payable in respect to the disability or death of any employee covered by . . . the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions . . .").

*Id.* (emphasis added).

The Court finds that this footnote does not have the import that plaintiff attributes to it.  In the *Savoie* opinion, the court makes clear that it is discussing the applicable version of *state* law.  For example, in the cited footnote, the Fifth Circuit notes that the plaintiff's exposure "occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act."  *Id.* (citing La. Rev. Stat. § 23:1035.2). If the court were not referring to the appropriate version of state law, there would have been no need to discuss the elimination of concurrent state-federal workers' compensation coverage.  The references to state law in the same footnote—and throughout the opinion—support the Court's conclusion that the Fifth Circuit was referring to the applicable state law, not the applicable version of the LHWCA.  *See also id.* at 464 ("[Wrongful death] claims are governed by the [state] law in effect at the time the decedent passes away," but "survival claims based on asbestos exposure are governed

by the [state] law in effect when the exposure occurred." (first citing *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1072 (La. 2009), and then citing *Landry v. Avondale Indus., Inc.*, 877 So. 2d 970, 972 (La. 2004)).  The Court does not find that the Fifth Circuit in *Savoie* intended to overrule its earlier, reasoned decision in *Castorina* by way of dicta in a footnote.  And even if it did, one Fifth Circuit panel cannot overrule another without an intervening change in the law.  *See United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003).  And in the event of a conflict, the earlier case controls.  *Texaco Inc. v. La. Land & Expl. Co.*, 995 F.2d 43, 44 (5th Cir. 1993).

Because *Castorina*'s manifestation rule controls, the Court applies the LHWCA as it existed in 2020, when Cortez's mesothelioma manifested.[21]

> 2. *Applicability of the Post-1972 LHWCA to Cortez's Injuries*

Since the 1972 amendments, the LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements.  *See New Orleans Depot Servs. v. Dir., Off. of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013).  Plaintiff easily meets these criteria.

The "status" requirement limits application of the LHWCA to "traditional maritime occupations."  *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any

---

[21]    R. Doc. 1-1 at 10 (Complaint ¶ 17).

longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker"). The status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).

Cortez worked as a welder on new vessels being constructed at Halter Marine's Lockport Yard.[22]  This work satisfies the status test because it is an "essential step of the shipbuilding process." *Id.* (holding that a worker who died when a steel plate he was cleaning fell on him satisfied the status test because the task he was performing "was an essential step of the shipbuilding process"); *see also McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters"); 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.) (stating that the LHWCA specifically covers "any harborworker," which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers,

---

[22]     R. Doc. 405-4 at 3, 6-8 (Discovery Deposition of Callen Cortez at 154:2-17, 581:4-12, 591:4-25, 593:2-23).

cargo talleyers, port watchmen, electricians, painters, mechanics, etc.").
Accordingly, the Court finds that the LHWCA's status test is satisfied.

The "situs" test, extended by Congress in 1972, requires that the injury occur on the "navigable waters of the United States" or "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship*, 447 U.S. at 719 ("In 1972, Congress . . . extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States."). Here, Cortez's injuries occurred at Halter Marine's Lockport Yard, situated adjacent to Bayou Lafourche, south of Thibodaux, Louisiana.[23]  The segment of Bayou Lafourche extending south of Thibodaux is a navigable waterway.  *See* 33 U.S.C. § 59e (declaring that Bayou Lafourche between Thibodaux at the southern end and Donaldsonville at the northern end is nonnavigable). Plaintiff does not dispute that Halter Marine's facility is adjacent to a navigable waterway.  Cortez thus satisfies the situs test.

Accordingly, Cortez's status falls within the coverage of the LHWCA, and his injuries occurred on a covered situs.  Therefore, the Court finds that plaintiff could have brought his claims under the LHWCA.

---

[23]    *Id.* at 7 (Discovery Deposition of Callen Cortez at 591:4-11).

3.    *LHWCA Preemption of Tort Claims Against Employers*

Continental contends that the LHWCA immunizes it from tort liability.

Section 905(a) of the LHWCA, the employer immunity provision, states:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a).

The Act also provides the exclusive remedy for injuries caused by the negligence or wrongful act of an officer or employee of the employer.  33 U.S.C. § 933(i).  Further, the Fifth Circuit has "held that the LHWCA impliedly grants the employer's insurance carrier, and the insurance carrier of co-employees, the same immunity which it grants the employer and co-employees." *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 811 (5th Cir. 1988) (citing *Johnson v. Am. Mut. Liab. Ins. Co.*, 559 F.2d 382 (5th Cir. 1977)).  While the LHWCA does not specifically immunize insurers, *see* 33 U.S.C. §§ 905(a), 933(i), the Fifth Circuit has explained that "numerous provisions of the Act and the spirit of the Act as a whole, [which] equat[e] the insurer with the employer, negate any intent to hold the insurer liable to suit for damages as a third person." *Johnson*, 559 F.2d at 388 & n.10 (citing 33 U.S.C. §§ 905(a), 917(a), 928, 932(a), 933, 935, 936 and 941).  Plaintiff's

13

claims against Halter Marine and its executive officers, as well as his claims against Continental in its capacity as Halter Marine's insurer, are covered by these provisions.    Accordingly, the Court must determine whether the LHWCA preempts plaintiff's state-law tort claims against Continental.

Federal law applies to questions of preemption.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995).  Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3) conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress.  *Id.*  The U.S. Supreme Court has set out "two cornerstones" of preemption jurisprudence.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  First, the "ultimate touchstone" is "the purpose of Congress."  *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  Second, the Court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," especially when the case involves a "field which the states have traditionally occupied."  *Id.* (quoting *Lohr*, 518 U.S. at 485) (quotation marks omitted).

Because tort law is a field traditionally occupied by the States, the Court starts with the assumption that Congress did not intend to supersede state law when it enacted the LHWCA. But this assumption does not stand in face of the text of the LHWCA, the purpose behind the statute, and the weight of judicial authority.

Section 905(a) of the LHWCA provides that compensation under the LHWCA is exclusive of all other employer liability, including for actions to recover damages at law. 33 U.S.C. § 905(a). The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statutes." *Cobb*, 1997 WL 159491, at *7 (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages. *Id.* The Supreme Court recognized this exchange when it explained:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983).

Allowing state-law tort claims against employers would contradict the text of

the statute and would frustrate the Act's purpose by undermining the *quid*

*pro quo*.

Indeed, several courts have recognized as much.  The Fifth Circuit held

in *Rosetti v. Avondale Shipyards, Inc.*, that the LHWCA bars a "state law

negligence claim," because "[u]nder the LHWCA, workers compensation is

the exclusive remedy for an injured employee against his employer."  821

F.2d 1083, 1085 (5th Cir. 1987).  Further, in *Hetzel v. Bethlehem Steel Corp.*,

the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to

avoid frustration of the policies and purpose behind the LHWCA."  50 F.3d

at 366-67 (5th Cir. 1995).  In *Hetzel*, the court reasoned that "[c]ongressional

policy would be frustrated if an injured worker were allowed to collect

benefits under the Act, and then sue his employer under a state statutory tort

theory."  *Id.*  Similarly, the Third Circuit in *Peter v. Hess Oil Virgin Islands*

*Corp.*, concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause

bar the Virgin Islands from imposing negligence liability on [a covered

employer]."  903 F.3d at 953.  The *Peter* court specifically noted that

Congress "intended that compensation, not tort damages, [was] to be the

16

primary source of relief for workplace injuries for longshoremen against their employers." *Id.* at 952.

Moreover, this Court has already held, in this case and in four other cases, that the LHWCA preempts state tort claims against an employer. *See Cortez*, 2022 WL 1001445, at *14-18; *see also Morales*, 2022 WL 1405133, at *7; *Krutz*, 2021 WL 5893981, at *7; *Hulin*, 2020 WL 6059645, at *7; *Cobb*, 1997 WL 159491, at *8 ([A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA."). Other sections of this Court have held the same. *See Barrosse*, 2021 WL 4355415, at *10-11; *Dempster*, 2020 WL 5071115, at *7.

Because permitting plaintiff's state tort claims against Continental as his employer's insurer would obstruct the purposes of the LHWCA, the Court finds that these claims are preempted and must be dismissed.

Plaintiff's arguments to the contrary are without merit. First, plaintiff argues that Continental's insurance policy with Halter Marine does not provide coverage for LHWCA claims. Specifically, plaintiff contends that Continental's Workmen's Compensation and Employer Liability ("WC/EL") policy is illegible.[24]  He further asserts that the LHWCA endorsement

---

[24]    R. Doc. 582 at 3.

attached to the WC/EL policy contemplates a premium to be paid for LHWCA coverage, but that Continental's corporate representative testified that there was no indication that Halter Marine ever paid such a premium.[25]

But the WC/EL policy belies this argument.  The page that plaintiff disregards as illegible is legible when viewed digitally.  This page includes a section titled "Insuring Agreements," which provides that, "in consideration of the payment of the premium," the insurance company agrees "[t]o pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law."[26]  On the same page, the "Definitions" section, as amended by Endorsement number 9, provides that "[t]he unqualified term 'workmen's compensation law' means the workmen's compensation law and any occupational disease law of a state designated in . . . the declarations,"[27] and "*includes the United States Longshoremen's and Harbor Workers' Compensation Act.*"[28]  By its plain terms, then, Continental's WC/EL expressly covers payment of LHWCA claims.

The endorsement that plaintiff cites does not undermine this plain language in the policy.  The endorsement states:

---

[25]   *Id.* at 3-4.
[26]   R. Doc. 405-3 at 23.
[27]   *Id.*
[28]   *Id.* at 45 (emphasis added).

> It is agreed that if any employee of the insured is engaged on behalf of the insured during the policy period in operations falling within the scope of the [LHWCA], the insured will keep a separate record of the renumeration paid in connection with such operations and the insured shall pay [a] premium thereon computed at the applicable rate increased by the percentage listed below.[29]

The endorsement then lists a "percentage of increase" based on the state where the operations occurred, *i.e.*, Louisiana, Mississippi, or Texas.[30] Continental's corporate representative explained that this means that Halter Marine paid a premium upon inception of the policy, but that the premium could have been adjusted at a later date "based on actual remuneration" of its employees.[31]   Accordingly, while the premium may have later been adjusted based on actual remuneration of Halter Marine employees engaged in LHWCA-covered operations, the existence of such an adjustment does not alter or undermine the policy's plain language providing coverage for LHWCA claims.  The Court finds no merit in plaintiff's argument that Halter Marine did not secure LHWCA insurance coverage with Continental.

Second, plaintiff argues that, even if the LHWCA preempts his claims arising out of injuries incurred while at Halter Marine, it does not preempt

---

[29]   *Id.* at 47.

[30]   *Id.*

[31]   R. Doc. 582-16 at 2-3 (Corporate Deposition of Continental Insurance Company, through Thomas Robert Barriball, at 24:4-25:3).

his claims arising from continued asbestos exposure from his work clothes while at home, off Halter Marine's premises.[32]   This argument also lacks merit.  The LHWCA covers all "accidental injury or death *arising out of and in the course of employment*, and such occupational disease or infection *as arises naturally out of such employment* or as naturally or unavoidably results from such accidental injury."  33 U.S.C. § 902(2) (emphasis added).  Plaintiff's at-home asbestos exposure from his work clothes clearly "arises . . . out of [his] employment" with Halter Marine.  *Id.*  And as already discussed, "[u]nder the LHWCA, workers['] compensation is the exclusive remedy for an injured employee against his employer."  *Rosetti*, 821 F.2d at 1085.  That the asbestos plaintiff got on his clothes at work may have continued to injure him when he carried that asbestos home on his clothes after work does not take his claim outside the reach of LHWCA preemption.  Consistent with this notion, other courts have rejected attempts to maintain tort claims based on take-home exposure after the claimant left work.  *See, e.g.*, *Dempster*, 2020 WL 5071115, at *7 (rejecting plaintiffs' argument that the LHWCA did not preempt their claims for continued asbestos exposure after leaving work, because, "[u]nder Plaintiffs' theory of the case, the exposure began at work and then Decedent carried some of the asbestos

---

[32]   R. Doc. 582 at 21-23.

material home," and that, "[t]herefore, the alleged injury arose out of and in the course of Decedent's employment"); *Barrosse*, 2021 WL 4355415, at *8 ("[Decedent] would not have had asbestos dust to inhale, whether in his car or at home, had it not arisen out of his employment at Avondale Shipyard. Accordingly, the Court finds that [decedent]'s off-site exposures to asbestos arose out of and in the course of his employment at Avondale Shipyard, and [are] therefore covered by the LHWCA."); *Sentilles*, 2022 WL 1211429, at *9 (finding that plaintiff's "take-home or off-site exposures to asbestos arose out of and in the course of his employment at Avondale and are therefore covered by the LHWCA," because plaintiff "could have been exposed to asbestos through his interactions with coworkers, including his own brother," and that, therefore, "any exposure to [his brother]'s clothing was incidental to [plaintiff]'s own employment at Avondale").

Third, plaintiff contends that, because his injuries occurred in the "twilight zone" of concurrent state-federal jurisdiction, he may maintain his state tort claims.[33]  Consistent with prior district-court opinions, the Court rejects this argument.

The Supreme Court has long held that there are areas where a state may legislate concurrently with the LHWCA.   In *Sun Ship, Inc. v.*

---

[33]    *Id*. at 8-21.

*Pennsylvania*, the Supreme Court addressed the "single question" of "whether a State may apply its *workers' compensation scheme* to land-based injuries that fall within the coverage of the [LHWCA], as amended in 1972." 447 U.S. at 716 (emphasis added).   Extending its prior "twilight zone" jurisprudence, the Court unanimously held that it may, *i.e.*, that the LHWCA does not preempt concurrent state workers' compensation remedies in these areas. *Id*.   The Court reasoned that, in the 1972 amendments to the Act, Congress intended to "upgrade the benefits" available under inadequate state compensation regimes, by guaranteeing the option of federal compensation available under the LHWCA.   *Id*. at 723.   *Sun Ship* and other "twilight zone" cases make clear that a state is not entirely precluded from providing workers' compensation remedies to workers covered by the LHWCA.   Similarly, in *Hahn v. Ross Island Sand & Gravel Co.*, the U.S. Supreme Court found that the LHWCA did not preclude a plaintiff's negligence claim brought pursuant to Oregon's *workers' compensation statute*.   358 U.S. 272, 273 (1959).   The plaintiff in *Hahn* sought benefits through Oregon's compensation regime, but his employer "elected to reject them."   *Id*.   In these circumstances, Oregon's Workmen's Compensation Act allowed the employee to bring a negligence action for damages.   The Court expressly stated that the LHWCA "gave an injured waterfront employee an

election to recover compensation under *either* the [LHWCA] or *the Workmen's Compensation law of the State* in which the injury occurred." *Id.* (emphasis added).  *Hahn* does not, as plaintiff contends, hold that the LHWCA permits ordinary tort claims.  Rather, like *Sun Ship*, it holds that a plaintiff may elect between federal compensation under the LHWCA or state workers' compensation.

Unlike in *Sun Ship* and *Hahn*, plaintiff here has not brought his claims pursuant to a state workers' compensation regime.  Instead, plaintiff asserts freestanding state tort claims against his employer's insurer.  For the reasons already given, the LHWCA preempts these claims against Continental.

Fourth and finally, plaintiff argues that preemption does not apply because he is not seeking benefits under the LHWCA.[34]  This Court has rejected this argument before, and it rejects it again.  *See Krutz*, 2021 WL 5893981, at *8 (rejecting plaintiff's contention that his claims are not preempted because he was not seeking LHWCA benefits); *Hulin*, 2020 WL 6059645, at *7 (same).  The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy against an employer lies in workers' compensation.  *Rosetti*, 821 F.2d at 1085.  That plaintiff has not elected to pursue those benefits does not affect the preemptive power of the

---

[34]    *Id.* at 18-19.

Act.  Permitting the tort claim merely because plaintiff has foregone the LHWCA avenue would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted.

For all of these reasons, the Court finds that the LHWCA preempts plaintiff's state-law claims against Continental.   The Court grants Continental's motion for summary judgment as to these claims.

### B.    Intentional-Tort Claims

The Court further finds that plaintiff's intentional-tort claims against Continental must be dismissed.  The parties dispute whether the LHWCA recognizes an intentional-tort exception, but the Court need not reach this issue, because even if such an exception existed, plaintiff has failed to point to evidence sufficient to meet his burden under Louisiana law.

To prove an intentional tort, plaintiff must show that Continental's insured, Halter Marine, either consciously desired that plaintiff contract mesothelioma, or knew that the result was "substantially certain to follow from [its] conduct." *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005), *cert. denied*, 925 So. 2d 538 (2006) (internal citations omitted). Substantial certainty "requires more than a reasonable probability that an injury will occur," and plaintiff must prove that his contracting

mesothelioma was "inevitable or incapable of failing." *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999) (internal citations omitted). It is not sufficient for plaintiff to show that Halter Marine had knowledge that its practices were dangerous and created a high probability that someone would eventually be injured. *Id.* Indeed, a defendant's "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts." *Id.* at 214.

Another section of this Court recently considered an intentional-tort claim arising out of asbestos exposure. There, plaintiffs argued that Avondale was "aware of the risks associated with asbestos and with the unsafe working conditions at Avondale," and that it "failed to remedy those conditions despite [its] knowledge of the risks." *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164, at *3 (E.D. La. Mar. 7, 2014). Judge Carl Barbier dismissed the claim on summary judgment. He found that, "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [decedent] would contract mesothelioma," plaintiffs had not submitted evidence permitting a reasonable jury to "conclude that [decedent's] contracting mesothelioma was

'inevitable or incapable of failing' and was thus substantially certain to result from Defendants' conduct." *Id.*

Here, plaintiff contends that there are disputed issues of fact regarding Halter Marine's "motive and intent" as to plaintiff's asbestos exposure.[35]  But his evidence falls far short of what is necessary to raise a material issue for an intentional-tort claim.  Plaintiff generally asserts that "Halter Marine and its executive officers knew that asbestos was hazardous," based on government regulations addressing the dangers of asbestos, promulgated before plaintiff began working at Halter Marine.[36]  But a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Reeves*, 731 So. 2d at 213 (citations omitted).  Plaintiff has not submitted any evidence suggesting that Halter Marine intended to harm him, or that his mesothelioma was "inevitable or incapable of failing." *Id.*  In fact, as other courts have recognized, "it is [not] common human experience . . . that mesothelioma is known certainly or inevitably to follow from asbestos exposure." *Vedros*, 2014 WL 906164, at *3 (quoting *Zimko*, 905 So. 2d at 479).  Accordingly, plaintiff's claim against Continental as

---

35      *Id.* at 27-28.
36      *Id.* at 28.

Halter Marine's insurer "lies in the realm of negligence, not in the realm of intentional tort." *Id.*

For these reasons, Continental is entitled to summary judgment dismissing plaintiff's intentional-tort claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Continental's motion for summary judgment,[37] and DISMISSES all of plaintiff's claims against Continental.

Having so ordered, the Court DISMISSES as MOOT Continental's motions regarding policy exclusions[38] and executive-officer liability.[39]

New Orleans, Louisiana, this   19th   day of May, 2022.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[37]   R. Doc. 405.
[38]   R. Doc. 538.
[39]   R. Doc. 554.