UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ, ET AL.                                    CIVIL ACTION

VERSUS                                                              NO. 20-2389

LAMORAK INSURANCE COMPANY,                      SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is defendant ViacomCBS, Inc.'s ("Westinghouse")
motion for partial summary judgment as to the claims of Callie Cortez Billiot,
Kelsey J. Cortez, and Mona Hotard Cortez arising from decedent Callen
Cortez's alleged exposure to Westinghouse's asbestos-containing Fire
Retardant Decorative Micarta ("FRDM").[1] Plaintiffs, Continental Insurance
Company ("Continental"), Hopeman Brothers, Inc. ("Hopeman"), and
Huntington Ingalls, Inc. ("Avondale") oppose the motion.[2]

For the following reasons, the Court grants defendant's motion in part,
and denies the motion in part.

---

[1]     R. Doc. 500.
[2]     R. Docs. 644, 687, 715 & 724.

## I.    BACKGROUND

This is an asbestos exposure case.  Plaintiffs allege that Callen Cortez contracted mesothelioma as a result of exposure to asbestos over the course of his career,[3] as well as take-home exposure resulting from his father's[4] and brothers' work when the family shared a home.[5]  Callen Cortez lived in his family home in Kraemer, Louisiana, starting from his birth in 1951, until he married and moved out in May of 1972.[6]  Decedent's brother, Daniel Cortez, also lived in the home.  Daniel began working at the Avondale Shipyards on August 29, 1967,[7] and lived with Callen Cortez until Daniel moved out in July of 1968.[8]  Daniel testified that he was exposed to asbestos at Avondale, when he  worked around Hopeman Brothers employees while they were cutting wallboards.[9]  He further testified that fibers released from the wallboards likely got onto his work clothes.[10]  He also testified that, after work each day,

---

[3]    R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).

[4]    *Id.* at 7-9 (Complaint ¶¶ 11-16).

[5]    R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

[6]    R. Doc. 499-4 at 17-18 (Discovery Deposition of Callen Cortez at 100:11- 101:8).

[7]    R. Doc. 499-6 at 13 (Deposition of Daniel Cortez at 12:3-13).

[8]    *Id.* at 12-13 (Deposition of Daniel Cortez at 11:21-12:2).

[9]    *Id.* at 58-63 (Deposition of Daniel Cortez at 57:23-62:18).

[10]    *Id.* at 37 (Deposition of Daniel Cortez at 36:6-13).

he would come home, hang up his clothes, and, with Callen Cortez's help, beat the fibers off his clothes.[11]

From March 6, 1969 until May 31, 1974, Callen Cortez worked for Avondale as a welder and tacker helper, primarily at Avondale's Westwego Yard.[12] Cortez testified that when he worked at Avondale, he was exposed to asbestos dust generated by Hopeman Brothers employees while they were cutting wallboards in his vicinity.[13] After his stint at Avondale, Callen Cortez went to work as a welder at Halter Marine's Lockport shipyard in mid-1974, and continued his employment there until 1975.[14] Cortez likewise testified that he was exposed to asbestos dust from Hopeman's wallboards when he worked at Halter Marine.[15]

Callen Cortez was diagnosed with mesothelioma on June 2, 2020.[16] On July 1, 2020, he filed suit in the Civil District Court for the Parish of Orleans against Westinghouse and approximately thirty-four other defendants, including former employers, manufacturers, and insurance companies.[17] In his complaint, plaintiff brought various products liability, negligence, and

---

[11]    *Id.* at 18-19 (Deposition of Daniel Cortez at 17:16-18:17).
[12]    *Id.* at 26-27 (Discovery Deposition of Callen Cortez at 108:25-109:9).
[13]    *Id.* at 44-45 (Discovery Deposition of Callen Cortez at 43:18-44:8).
[14]    *Id.* at 493 (Discovery Deposition of Callen Cortez at 576:16-24).
[15]    *Id.* at 74-76 (Discovery Deposition of Callen Cortez at 157:22-159:25).
[16]    R. Doc. 1-1 at 10 (Complaint ¶ 17).
[17]    *Id.* at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.

intentional tort claims.[18]   On August 31, 2020, the case was removed to federal court.[19]   Callen Cortez passed away on May 26, 2022.[20]   Cortez's surviving spouse and children filed an amended complaint on June 6, 2022,[21] substituting themselves as plaintiffs in a survival action and seeking additional damages arising from Cortez's wrongful death.[22]

Relevant to the present motion, plaintiffs seek to hold Westinghouse liable for Cortez's alleged exposure to asbestos from FRDM manufactured by Westinghouse.[23]   Westinghouse moves for partial summary judgment, seeking dismissal of plaintiffs' claims arising from Cortez's alleged exposure to Westinghouse's FRDM.[24]  Westinghouse contends that plaintiffs have not produced adequate evidence to create a material factual dispute over whether decedent was exposed to Westinghouse's FRDM at Halter Marine's Lockport shipyard, or whether the FRDM was a "substantial factor" in bringing about his mesothelioma.[25]  Additionally, Westinghouse asserts that any duty to warn it may have had was discharged because Hopeman was a

---

[18]   R. Doc. 1-1.
[19]   R. Doc. 1 (Notice of Removal).
[20]   R. Doc. 1026 at 2 (Fourth Amended Complaint ¶ 111).
[21]   *Id.*
[22]   *Id.* at 2-3 (Fourth Amended Complaint ¶¶ 111-114).
[23]   R. Doc. 1-1 at 3-6 (Complaint ¶¶ 8, 32-45).
[24]   R. Doc. 500.
[25]   R. Doc. 500-1.

sophisticated user and purchaser.[26]  Plaintiffs, Continental, Hopeman, and Avondale oppose the motion.[27]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[26]     *Id.* at 14.
[27]     R. Docs. 644, 687, 715 & 724.

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Westinghouse raises three arguments in support of its motion for summary judgment, each of which the Court addresses below.

### A.    Halter Marine Exposures

Westinghouse first asserts that it is impossible for Callen Cortez to have been exposed to its FRDM at the Halter Marine shipyard in Lockport,

Louisiana.[28]   Westinghouse therefore seeks summary judgment as to its liability from the decedent's alleged exposure at Halter Marine.[29]

Plaintiffs point to the testimony of Cortez and Bertram Hopeman to link Westinghouse to Cortez's alleged exposures at Halter Marine.  Plaintiffs first cite Cortez's testimony that while he worked at Halter Marine's Lockport shipyard in the mid-1970s, he was, at times, in the immediate vicinity of Hopeman employees who were working with asbestos-containing bulkhead panels.[30]  He also testified that Hopeman's work with the bulkhead panels created dust, which he inhaled.[31]  Specifically, Cortez testified as follows:

> **Q.**   Did you see Hopeman Brothers working in the living quarters at Halter Marine?
>
> **A.**   Yes.  Alongside with the Halter Marine insulators.
>
> **Q.**   All right.  What were the Hopeman Brothers workers doing at Halter Marine?
>
> **A.**   The same thing they were doing at Avondale.  They were putting blocks on the wall.
>
> **Q.**   You call it a block.  Do you mean --
>
> **A.**   A board or whatever it is. . . . I always did call it a block.
>
> . . .
>
> **Q.**   So the work you saw Hopeman Brothers doing, that was the same kind of wallboard work you saw them doing at Avondale; right?

---

[28]   R. Doc. 500-1 at 8.

[29]   *Id.*

[30]   R. Doc. 687-4 at 7-8 (Discovery Deposition of Callen Cortez at  156:10-159:25).

[31]   *Id.*

**A.**    Yes.

. . .

**Q.**    What conditions were created by Hopeman Brothers workers?

**A.**    There was dust flying in the air.

**Q.**    At Halter Marine?

**A.**    Dust flying in the air inside the living quarters.

. . .

**Q.**    Did you breathe the Hopeman Brothers dust?

**A.**    Yes.[32]

Plaintiffs also point to the testimony of Bertram Hopeman, who began working with Hopeman Brothers in 1964, and testified that the firm used FRDM as a component in the wallboards it installed on vessels.[33]  Further, Hopeman testified that Hopeman Brothers purchased its FRDM from Westinghouse.[34]

Westinghouse does not dispute that its FRDM was a component of Hopeman's bulkhead panels at Avondale.[35]  Rather, Westinghouse contends that Hopeman did not begin to work at Halter Marine's Lockport shipyard

---

[32]    *Id.*

[33]    R. Doc. 687-25 at 5 (Deposition of Bertram Cornelius Hopeman at 56:3-8, *Comardelle v. Pennsylvania Gen. Ins. Co.*, No. 12-6555 (E.D. La. Sept. 22, 2014)).

[34]    *Id.* at 6 (Deposition of Bertram Cornelius Hopeman at 100:2-7, *Comardelle v. Pennsylvania Gen. Ins. Co.*, No. 12-6555 (E.D. La. Sept. 22, 2014)).

[35]    R. Doc. 500-1 at 4.

until the 1990s, long after Cortez claimed he was exposed to Westinghouse's FRDM.[36]  To support this assertion, Westinghouse points to the affidavit of Barbara Ramsey, who was a records custodian for Hopeman Brothers.[37] Ramsey attested that Hopeman did not begin operations at Lockport until the 1990s, and that it never utilized asbestos-containing products at Halter Marine's Lockport shipyard.[38]

Here, the testimony plaintiffs cite is sufficient evidence to create a genuine issue of material fact as to whether Hopeman worked at the Halter Marine shipyard at the same time as the decedent.  Accordingly, the Court denies summary judgment on the issue of whether Callen Cortez was exposed to Westinghouse FRDM at Halter Marine.

### B.    Chrysotile Asbestos

Westinghouse also moves to dismiss plaintiffs' claims stemming from decedent's alleged exposure to FRDM, arguing that the type of asbestos used in FRDM—chrysotile asbestos—cannot have been a "substantial" factor in bringing about Cortez's mesothelioma.[39]  Defendant points to the report of

---

[36]   *Id.* at 8.
[37]   R. Doc. 500-5 at 2 (Affidavit of Barbara D. Ramsey).
[38]   *Id.*
[39]   R. Doc. 500-1 at 8-11.

its expert, Dr. Thomas Howard, to support this contention.  Dr. Howard's report asserts that chrysotile asbestos is less dangerous than other types of asbestos.[40]   His report includes: (1) a brief history of scientific medical knowledge regarding asbestos,[41] (2) an opinion that any measures Westinghouse could have taken to warn end-users likely would have been fruitless,[42] (3) references to a few studies finding or suggesting that mechanics who worked with automotive parts containing chrysotile asbestos were not at increased risk of adverse health effects,[43] and (4) a brief history of regulatory action regarding asbestos.[44]   Notably, the report does not include an opinion from Dr. Howard corroborating Westinghouse's assertion that "the current weight of scientific and medical evidence supports the conclusion that . . . pure chrysotile asbestos ***cannot cause mesothelioma***."[45]  Instead, Dr. Howard takes the more nuanced position that chrysotile asbestos, compared to other types of asbestos, "is much less likely, if at all, to cause mesothelioma."[46]

---

[40]    R. Doc. 500-10 at 10 (Report of Thomas P. Howard, M.D.).

[41]    *Id.* at 3-9.

[42]    *Id.* at 3.

[43]    *Id.* at 10.

[44]    *Id.* at 10-13.

[45]    R. Doc. 500-1 at 5.

[46]    R. Doc. 500-10 at 10 (Report of Dr. Thomas Howard, M.D.).

In an asbestos exposure case, a Louisiana claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)). The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004).

But the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)).

Plaintiffs have produced sufficient evidence of harmful exposure to Westinghouse asbestos to create a material fact issue. Cortez testified that

he worked in the immediate vicinity of Hopeman employees while they cut asbestos-containing wallboards,[47] and that he inhaled asbestos dust that was generated by the cutting of Hopeman's wallboards.[48] Dr. Stephen Kraus, one of plaintiffs' medical experts, testified that exposure to asbestos fibers from FRDM was a significant contributing factor to decedent's mesothelioma.[49] As mentioned above, Bertram Hopeman stated in his deposition that FRDM manufactured by Westinghouse was used as a component in Hopeman Brothers' bulkhead panels.[50]  Further, Gary Jenkins, who worked at Avondale Shipyards from 1967 until 2004, testified (among other former Avondale workers) that Hopeman Brothers' staff cut and installed FRDM-containing wallboards aboard ships at Avondale Shipyards.[51]  Mr. Jenkins added that Hopeman's cutting of wallboards was a "dusty process," meaning that the labor generated significant asbestos dust.[52]  Westinghouse even

---

[47]   R. Doc. 687-3 at 2-3 (Perpetuation Deposition of Callen Cortez at 34:1-35:24).

[48]   R. Doc. 687-4 at 9 (Discovery Deposition of Callen Cortez at  159:12-159:19).

[49]   R. Doc. 687-13 at 4-5 (Deposition of Dr. Stephen Kraus at 40:11-41:8).

[50]   R. Doc. 687-25 at 5-6 (Deposition of Bertram Cornelius Hopeman at 56:3-8, 100:2-7, *Comardelle v. Pa. Gen. Ins. Co.*, No. 12-6555 (E.D. La. Sept. 22, 2014)).

[51]   R. Doc. 687-27 at 2, 4, 5 (Deposition of Gary Jenkins at 13:18-20, 32:3-13, 34:6-10, *Wayne Joseph St. Pierre v. Northrup Grumman Shipbuilding, Inc., et al.*, No. 09-12001 (La. Civ. D. Ct. Aug. 10, 2011)).

[52]   *Id.* at 5 (Deposition of Gary Jenkins at 34:6-10).

concedes that its FRDM was a component used by Hopeman Brothers to fabricate its composite bulkhead panels.[53]   Based on this evidence of a material dispute of fact, summary judgment must be denied.

Further, even if the defendant's asbestos were less potent than other defendants' asbestos products, that does not compel the conclusion that exposure to FRDM was not a "substantial factor" in causing decedent's mesothelioma.  *Cf. Williams*, 23 F.4th at 512 ("Even if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" (quoting *Rando*, 16 So. 3d at 1091)).  Indeed, Westinghouse does not cite a single Louisiana case in which a court determined that exposure to chrysotile asbestos was not actionable as a matter of law because of the supposedly reduced danger that chrysotile presents.  This is because Westinghouse's argument is intrinsically factual, and involves disputed issues for the trier of fact.  *See, e.g.*, *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 14-0143, 2014 WL 7277836, at *11 (La. App. 1 Cir. Dec. 23, 2014), *writ denied*, 169 So. 3d 365 (La. 2015) (observing that "the issue of the potency difference between the two types of asbestos fibers was a factual issue matter for the jury to

---

[53]    R. Doc. 500-1 at 4.

consider in determining whether . . . there was sufficient exposure to chrysotile asbestos to substantially contribute to [plaintiff's] mesothelioma"); *Cimino v. Raymark Indus., Inc.*, No. 86-456, 1989 WL 253889, at *8 (E.D. Tex. Sept. 23, 1989) (explaining that the "chrysotile defense" is the argument that plaintiff's disease "cannot be caused by a certain type of asbestos" and that this defense can be considered by the jury when determining causation); *Michel v. Ford Motor Co.*, No. 18-4738, 2019 WL 118008, at *8 (E.D. La. Jan. 7, 2019) (noting that defendants' "core defense" is that chrysotile asbestos is less harmful and admitting an expert opinion that addressed "both types of asbestos and the possible differences between them"). Indeed, summary judgment was denied by this Court in *Michel v. Ford Motor Co.*, when the defendants' "core defense" was that chrysotile is less harmful. 2019 WL 118007, at *3. Accordingly, Dr. Howard's opinion is merely a consideration for the jury to take into account. Summary judgment is not warranted on whether FRDM was a substantial factor in bringing about Cortez's mesothelioma.

## C.   The Sophisticated Purchaser Defense

Lastly, Westinghouse contends that summary judgment is warranted as to whether it had a duty to warn Cortez of the dangers of FRDM.[54]

---

[54]   R. Doc. 500-1 at 14.

Plaintiffs, in their complaint, assert that Westinghouse is liable for failing to warn end-users of the dangers of its asbestos-containing products.[55] Westinghouse contends that because Hopeman Brothers was a "sophisticated purchaser" of its product, Westinghouse was discharged of its duty to warn end-users of the dangers of FRDM.[56]

Under the applicable *Halphen*-era Louisiana tort law, "[a] manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 115 (La. 1986). Yet "a manufacturer has no duty to warn a sophisticated user." *Davis v. Avondale Indus., Inc.*, 975 F.2d 169, 172 (5th Cir. 1992). "Similarly, a manufacturer has no duty to warn a sophisticated purchaser." *Id.*

A sophisticated user is one who is "familiar with the product," *Hines v. Remington Arms Co., Inc.*, 648 So. 2d 331, 337 (La. 1994), and thus "possesses more than a general knowledge of the product and how it is used," *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 955 (La. App. 4 Cir. 1998). "As a result of their familiarity with a product, sophisticated users are presumed

---

[55]   R. Doc. 1-1 at 13-14 (Complaint ¶¶ 32-33).
[56]   *Id.* at 14-18.

to know the dangers presented by the product; hence, there is no duty to warn them." *Bates v. E.D. Bullard Co.*, 76 So. 3d 111, 114 (La. App. 3 Cir. 2011). The "threshold burden is on the manufacturer to prove that the purchaser-intermediary knew or reasonably should have been expected to know of the dangerous characteristic of the product that caused the damage." *Swope v. Columbian Chems. Co.*, 281 F.3d 185, 206 (5th Cir. 2002). Accordingly, "[t]he 'sophisticated user' issue is, by its nature, one of actual or expected knowledge on the part of the purchaser/user." *Osborne v. Vulcan Foundry, Inc.*, 675 So. 2d 837, 841 (La. App. 4 Cir. 1996).

Here, Westinghouse asserts that because Hopeman routinely utilized FRDM as a component in its bulkhead panels and was aware of the risks created by asbestos dust, the firm is a sophisticated purchaser.[57] It is undisputed that Hopeman routinely purchased FRDM from Westinghouse, which it used as a component in its bulkhead panels. Likewise, it is uncontested that Hopeman was *actually aware* of risks associated with asbestos dust from its wallboards; and that the danger posed by Westinghouse's FRDM is the very same danger posed by Hopeman's final product—inhalation of asbestos dust. Westinghouse points to several pieces of evidence to support a finding that Hopeman was aware of risks posed by

---

[57]     *Id.* at 16-18.

asbestos dust.  Most critically, Westinghouse points to a November 11, 1968
internal memorandum from former Hopeman executive, Bertram Hopeman,
in which he states that shipyards where Hopeman employees were working
had started to take precautions—utilization of "skill saws" and "dust bags"—
because workers "should not breath asbestos dust."[58]  Hopeman goes on to
list further precautions that are to be taken prospectively to mitigate the risk
of inhaling asbestos dust, including an instruction that the cutting of
wallboards "must be isolated to the greatest possible from other people
working on the ship."[59]

To be sure, "[w]hether a user is sophisticated is ordinarily a question
of fact for the jury to decide."  *Mozeke v. Int'l Paper Co.*, 933 F.2d 1293, 1297
(5th Cir. 1991).  But in this case, dismissal of the failure to warn claims is
proper, as Westinghouse has pointed to uncontroverted summary judgment
evidence that shows Hopeman possessed much "more than a general
knowledge of [FRDM] and how it is used."  *Bordelon, Inc.*, 726 So.2d at 955.

Plaintiffs contend that the actual end-user, as opposed to the
purchaser, must be "sophisticated" for this defense to apply.[60]  But the
applicable law does not support that assertion.  In *Davis v. Avondale*

---

[58]   R. Doc. 500-14 at 2.
[59]   *Id.*
[60]   R. Doc. 678 at 15.

*Industries, Inc.*, the Fifth Circuit, applying Louisiana law, and making an *Erie* guess, held that a manufacturer had no duty to warn the employee of a sophisticated purchaser if: (1) the manufacturer warned the purchaser of the risks, or (2) the purchaser had knowledge of the product's inherent dangers. 975 F.2d 169, 172 (5th Cir. 1992). *Cf. West v. Hydro-Test, Inc.*, 196 So. 2d 598, 606 (La. App. 1 Cir. 1967) ("Therefore, if the manufacturer warns the purchaser, or if the purchaser has knowledge of the danger, the manufacturer is not liable to third persons who may be subjected to the danger."). Subsequent Fifth Circuit decisions have followed *Davis*'s line of reasoning. *See Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) ("[W]e think it clear that [the manufacturer] owed no duty to provide [the sophisticated purchaser's] employees an adequate warning."); *Jones v. Flowserve FCD Corp.*, 73 F. App'x 706, 713 (5th Cir. 2003) ("[T]he 'sophisticated user' defense, if applicable, protects manufacturers from claims made by the user's employees.").

Moreover, no Louisiana court has directly contradicted *Davis*. To the contrary, Louisiana intermediate appellate courts have held that in certain circumstances, sand suppliers do not owe a duty to warn a sophisticated purchaser's employee of the dangers of silica sand. *See Bates v. E.D. Bullard Co.*, 76 So. 3d 111, 114 (La. App. 3 Cir. 2011) (holding that sand suppliers "did

not have a duty to warn [plaintiff's employer] or [plaintiff] of the danger sand presents when used for sandblasting"); *Damond v. Avondale Indus., Inc.*, 718 So. 2d 551, 553 (La. App. 4 Cir. 1998), *writ denied*, 735 So. 2d 637  (La. 1999) (holding that a sand supplier did not have a duty to warn a sophisticated purchaser's employee); *Cowart v. Avondale Indus., Inc.*, 792 So. 2d 73, 77 (La. App. 4 Cir. 2001), *writ denied*, 805 So. 2d 211 (La. 2002) ("Once having found Avondale to be a sophisticated user, the trial court should have granted Unimin's motion for summary judgment and dismissed plaintiff's claims against it.").  To be sure, in reaching the conclusion that certain manufacturers need not warn end-users, Louisiana courts have taken other considerations into account, such as that the supplier had adequately warned the purchaser, the supplier's lack of control over how the purchaser would use the product, or the impracticality of warning the end-user.  *See Damond*, 718 So. 2d at 552-553.  But consideration of other factors does not vitiate the *Davis* holding.

Although one Louisiana intermediate appellate court held a manufacturer liable for harm to an employee of a sophisticated purchaser, there the exposures occurred on the manufacturer's premises, and the plaintiff regularly interacted with the employees of the seller while on the seller's premises, making a warning feasible.  *See Warren v. Sabine Towing*

& *Transp. Co.*, 831 So. 2d 517, 531 (La. App. 3 Cir. 2002), *writ denied sub nom.*, 836 So. 2d 116 (La. 2003) ("Because of the direct contact between [plaintiffs] and the defendants and because the defendants maintained some control over aspects of the operations, we find that they had a duty to directly warn Mr. Warren.").  *Warren* is inapposite here, where the exposures took place at Avondale and Halter Marine, and nothing on the record here suggests it would have been feasible for Westinghouse to warn end-users who worked with FRDM, let alone bystanders.  With no Louisiana case law that clearly contradicts *Davis*, this Court follows the Fifth Circuit's guidance. *See F.D.I.C. v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998) (holding that the precedential weight of *Erie* guesses is not "alleviated by intervening decisions of intermediate state appellate courts unless such 'subsequent state court decisions are clearly contrary to a previous decision of this court.'" (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991))).

While plaintiffs cite several pre-*Davis* cases that reiterate the general rule that end-users must be warned, these decisions do not address what happens when a manufacturer sells to a sophisticated purchaser and a non-sophisticated user is later injured.  *See Davis*, 975 F.2d at 173 (noting that "no Louisiana case has clearly addressed the issue" of whether a "product

manufacturer owes [a] duty to the employee[s] of a purchaser . . . [that] has knowledge of those dangers").

Horne v. Liberty Furniture Co., 452 So. 2d 204 (La. App. 5 Cir. 1981), cited by plaintiffs, mentions only that defendant invoked the defense. The court did not determine whether the intermediary purchaser was sophisticated. See id. at 209. Fincher v. Surrette, 365 So. 2d 860 (La. App. 4 Cir. 1978), also cited by plaintiffs, is inapposite because the court explicitly rejected the contention that the purchaser was sophisticated. See id. at 863. And while plaintiffs cite Mozeke v. International Paper Co., 933 F.2d 1293 (5th Cir. 1991) to support their assertion that a manufacturer must always warn an end-user, Davis made clear that Mozeke was no obstacle to its conclusion that no duty exists in the sophisticated purchaser context. The Fifth Circuit specifically noted that Mozeke did not hold that it was an error to instruct a jury that there is no duty to warn employees of sophisticated purchasers. See Davis, 975 F.2d at 174 n.7 ("In Mozeke . . . the plaintiff on appeal contended that the charge eliminated the defendant's duty to warn the employee if the employer were found to be a sophisticated purchaser. We held that the charge did not have that effect . . . . We hence did not reach the issue of whether the charge would have been correct if it had the effect plaintiff claimed."). Accordingly, the Court rejects plaintiffs' contention that

22

the sophisticated user defense is applicable only if the end-user is sophisticated.

Likewise, plaintiffs' argument that the sophisticated user defense is inapplicable because the doctrine did not exist during the *Halpen* era is incorrect. This rule predates the Louisiana Products Liability Act. *See, e.g., Ducote v. Liberty Mut. Ins. Co.*, 451 So. 2d 1211, 1213 (La. App. 4 Cir. 1984), *writ denied*, 457 So. 2d 15 (La. 1984) ("It follows that the manufacturer is under no duty to warn a 'sophisticated user' of those dangers which he may be presumed to know through his familiarity with the product."); *see also* La. Rev. Stat. § 9:2800.51, *et seq.* (indicating an effective date of September 1, 1988).

Hopeman Brothers argues that the sophisticated purchaser defense is inapplicable because it was aware of only a general risk of asbestos inhalation. It contends that a sophisticated purchaser must have known that asbestos causes mesothelioma specifically.[61] This contention is incorrect. First, a sophisticated purchaser need not actually know the risk posed by a product. As mentioned above, because a sophisticated purchaser is familiar with a product and has a higher level of knowledge than an ordinary user, the purchaser is "*presumed* to know the dangers presented by the product."

---

[61]    R. Doc. 724 at 6.

*Bates*, 76 So. 3d at 114 (emphasis added).  Indeed, the question is whether Hopeman "knew *or* reasonably should have known of the dangerous characteristic." *Swope v. Columbian Chems. Co.*, 281 F.3d 185, 206 (5th Cir. 2002) (emphasis added).  That Hopeman was actually aware of risks posed by asbestos only bolsters the finding that it was a sophisticated purchaser; but it is not a necessary condition for such a finding.

Further, Hopeman incorrectly relies on *Swope v. Columbian Chemicals Co.* for the assertion that it must have been aware that asbestos inhalation can cause mesothelioma.  The *Swope* court stated that the question is whether the purchaser knew or should have known of the "specific dangerous *propensity* of the [product]."  *Id.* at 209 (emphasis added).  The decision said nothing as to whether the purchaser must be aware of the specific diseases caused by a product's dangerous propensity. Here, the dangerous propensity of the product was that it would generate respirable dust that could cause serious, adverse health effects if inhaled. Westinghouse's uncontroverted evidence shows that Hopeman was aware of significant risks posed by asbestos.[62]  Bertram Hopeman went so far as to say that individuals should not breathe asbestos dust.[63]  Indeed, Hopeman even

---

[62]    R. Doc. 500-14 at 2 (Bertram Hopeman 1968 Memo).

[63]    *Id.*

concedes in its opposition that it knew that asbestos dust posed a general health risk.[64]   That Hopeman Brothers did not have the epidemiological expertise to know precisely which diseases could be caused by inhalation of its asbestos dust does not equate to being unaware that the product posed health risks when inhaled.

Thus, the arguments to the contrary notwithstanding, the Court finds there is no material factual dispute as to whether Hopeman Brothers "knew or reasonably should have been expected to know" of FRDM's dangerous propensities. *Swope*, 281 F.3d at 209.  For all of the reasons cited here, the Court grants summary judgment on plaintiffs' failure to warn claims against Westinghouse arising from Callen Cortez's exposure to Westinghouse's FRDM.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Westinghouse's motion for partial summary judgment.[65]   The Court grants the motion as to the failure to warn claims against Westinghouse.  The Court denies the motion as to the issues of (1) decedent's

---

[64]   *Id.*
[65]   R. Doc. 500.

alleged exposure at Halter Marine, and (2) the assertion that FRDM could

not have been a substantial factor causing Cortez's mesothelioma.



New Orleans, Louisiana, this __13th__ day of July, 2022.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE