UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALLEN J. CORTEZ, ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-2389 |
| LAMORAK INSURANCE COMPANY, ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants ViacomCBS Inc. ("Westinghouse"), General Electric Company ("General Electric"), and Foster Wheeler, LLC's ("Foster Wheeler") motion for partial summary judgment, seeking to dismiss plaintiffs' intentional-tort, fraud, and punitive-damages claims.[1] Plaintiffs oppose the motion.[2] For the following reasons, the Court grants the motion as to plaintiffs' intentional-tort and fraud claims, and dismisses the motion as to plaintiffs' punitive-damages claims as moot.

## I.   BACKGROUND

This is an asbestos exposure case.  Plaintiffs allege that Callen Cortez contracted mesothelioma as a result of exposure to asbestos over the course

---

[1] R. Doc. 495.  Defendants' motion is joined by Ancon Insulations, Inc., Continental Insurance Company, Travelers Indemnity Company, and Liberty Mutual Insurance Company.  *See* R. Docs. 575, 583, & 598.

[2] R. Doc. 652.

of his career,[3] as well as take-home exposure resulting from his father's[4] and brothers' work when the family shared a home.[5] Cortez was diagnosed with mesothelioma on June 2, 2020.[6]

On July 1, 2020, he sued Westinghouse, General Electric, Foster Wheeler, and approximately thirty-two other defendants, including former employers, manufacturers, and insurance companies.[7] In his petition, plaintiff brought various intentional-tort, fraud, and concealment claims against defendants.[8] He additionally asserted that "[a]ll defendants who are at fault for Mr. Cortez's exposure to asbestos during the years of 1984 through 1996 are liable to petitioner for punitive damages."[9]

Callen Cortez passed away on May 26, 2022.[10] Cortez's surviving spouse and children filed an amended complaint on June 6, 2022,[11]

---

[3]   R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).
[4]   *Id.* at 7-9 (Complaint ¶¶ 11-16).
[5]   R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).
[6]   R. Doc. 1-1 at 10 (Complaint ¶ 17).
[7]   *Id.* at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.
[8]   R. Doc. 1-1.
[9]   *Id.* at 43 (Complaint ¶ 90).
[10]  R. Doc. 1026 at 2 (Fourth Amended Complaint ¶ 111).
[11]  *Id.*

substituting themselves as plaintiffs in a survival action and seeking additional damages arising from Cortez's alleged wrongful death.[12]

Defendants Westinghouse, General Electric, Foster Wheeler are sued in their capacities as manufacturers of asbestos-containing products.[13] Defendants now move for partial summary judgment, contending that plaintiffs' intentional-tort, fraud, and punitive-damages claims must be dismissed.[14] Plaintiffs oppose the motion as to their intentional-tort and fraud claims, and assert that defendants' motion on punitive-damages is moot.[15] The Court considers the motion below.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence

---

12    *Id.* at 2-3 (Fourth Amended Complaint ¶¶ 111-114).
13    R. Doc. 1-1 at 24-25 (Complaint ¶ 53).
14    R. Doc. 495.
15    R. Doc. 652.

in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

4

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

As an initial matter, the Court rejects plaintiffs' contention that summary judgment is inappropriate here because plaintiffs' intentional-tort and fraud claims turn on issues of fact regarding defendants' knowledge and

5

intent.[16]  The Fifth Circuit has explained that although "summary judgment is rarely proper when an issue of intent is involved, the presence of an intent issue does not automatically preclude summary judgment; the case must be evaluated like any other to determine whether a genuine issue of material fact exists."  *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("The Fifth Circuit consistently has affirmed summary judgment in cases where a plaintiff fails to present any evidence of fraud or where no genuine issue of material fact remains regarding the fraud claim.").  As long as the court is "vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party," summary judgment is appropriate in intent cases, especially when the "circumstantial evidence is so minimal and the legal standard so daunting." *Int'l Shortstop*, 939 F.2d at 1266; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164, at *3 n.1 (E.D. La. Mar. 7, 2014) ("Summary judgment is especially appropriate where, as here, Plaintiffs face such a daunting burden to prove that [the decedent's] mesothelioma was substantially certain to result from Defendants' conduct.").  Thus, having

---

[16]     R. Doc. 652 at 2-3.

determined that courts are not precluded from granting summary judgment on issues of intent, the Court proceeds to evaluate each of plaintiffs' claims.

### A. Intentional-Tort Claims

Plaintiffs assert that Westinghouse, General Electric, and Foster Wheeler committed intentional torts because they were "well aware" of the hazards of asbestos, and what precautionary measures should be taken for people working with and around their asbestos-containing products, but failed to implement these precautionary measures.[17] To prove an intentional tort, plaintiffs must show that each defendant either "(1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Batiste v. Bayou Steel Corp.*, 45 So. 3d 167, 168 (La. 2010). In other words, plaintiffs must show that General Electric, Westinghouse, and Foster Wheeler each either consciously desired that Collen Cortez contract mesothelioma, or knew that the result was "substantially certain to follow from [their] conduct." *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005), *cert. denied*, 925 So. 2d 538 (2006) (internal citations omitted).

---

[17]  R. Doc. 652 at 17.

7

Here, plaintiffs' intentional-tort claims are rooted in the second prong of the analysis, *i.e.*, that Cortez's mesothelioma was "substantially certain" to follow from defendants' conduct.[18]  Substantial certainty "requires more than a reasonable probability that an injury will occur," and plaintiffs must prove that Callen Cortez's contracting mesothelioma was "inevitable or incapable of failing." *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999) (internal citations omitted).  It is not sufficient for plaintiffs to show that defendants had knowledge that their practices were dangerous and created a high probability that someone would eventually be injured.  *Id.* Indeed, a defendant's "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts." *Id.* at 214.  Similarly, a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Id.* at 213 (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993)).

Other sections of this Court have considered similar intentional-tort claims arising out of asbestos exposure.  In a case before Judge Carl Barbier,

---

[18]    *Id.* at 13-15.

8

plaintiffs argued that Avondale was "aware of the risks associated with asbestos and with the unsafe working conditions at Avondale," and that it "failed to remedy those conditions despite [its] knowledge of the risks." *Vedros*, 2014 WL 906164, at *3. Judge Barbier dismissed the claim on summary judgment. He found that, "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [decedent] would contract mesothelioma," plaintiffs had not submitted evidence permitting a reasonable jury to "conclude that [decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from Defendants' conduct." *Id.* Similarly, in a case before Judge Ivan Lemelle, plaintiffs brought intentional-tort claims against Hopeman Brothers, Inc., alleging that Hopeman both knew of the hazards of asbestos, and that decedent's disease "was substantially certain to occur." *Becnel v. Lamorak Ins. Co.*, No. 19-14536, 2022 WL 2116896, at *3 (E.D. La. June 13, 2022). The court dismissed plaintiffs' intentional-tort claims, finding that plaintiffs' reliance on evidence that defendant exposed the decedent to asbestos and was aware at the time of the hazards of asbestos was insufficient to raise a material issue of fact for an intentional-tort claim. *Id.* at *4.

Here, plaintiffs assert that Westinghouse, General Electric, and Foster Wheeler "knew [that] asbestos would cause disease, . . yet chose to conceal[19] these hazards" and proceeded to expose workers, such as Callen Cortez, to asbestos.[20] Plaintiffs contend that defendants had knowledge about the hazards of asbestos based on government regulations, such as the Louisiana Worker's Compensation Act,[21] the Walsh Healey Act,[22] and the Louisiana Sanitary Code,[23] which warned about the dangers of asbestos, and were promulgated before Callen Cortez began his career in 1968.[24] Plaintiffs also point to deposition testimony from corporate representatives of

---

[19]    Although plaintiffs' passingly state that defendants' chose to "conceal these hazards," plaintiffs have pointed to no evidence of acts of active concealment, only inaction and silence. R. Doc. 652 at 4-5.
[20]    *Id.*
[21]    R. Doc. 652-3 at 1-2 (listing "asbestosis" as an occupational disease).
[22]    R. Doc. 652-4 at 26-27 (stating that the "allowable concentration[]" for asbestos dust is 5 million particle per cubic foot, and listing methods that "should be used to control harmful dust, mists, fumes, gases, and other atmospheric impurities").
[23]    R. Doc. 652-5 at 5 (adopting a 5 million particle per cubic foot standard).
[24]    R. Doc. 652 at 4-5.

Westinghouse,[25] General Electric,[26] and Foster Wheeler[27] that states that each defendant had learned about the hazards of asbestos before Callen Cortez began his career.[28] Plaintiffs assert that the evidence they rely on creates an issue of material fact as to whether defendants knew it was substantially certain that individuals working around their asbestos-containing products would contract asbestos-related diseases as a result of defendants' actions or inactions.[29]

Plaintiffs' evidence falls far short of what is necessary to raise a material issue for an intentional-tort claim. As noted above, a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Reeves*, 731 So. 2d at 213 (citations omitted). Likewise, the government regulations attached to plaintiffs' opposition show, at best, that

---

[25]  R. Doc. 652-6 at 113:10-13 (Deposition of Mark Perrello) ("Westinghouse . . . probably in the [19]30s and [19]40s became aware of asbestos and some hazard potential.").

[26]  R. Doc. 652-7 at 19:11-21 (Deposition of Majorie Drucker) (noting that General Electric became aware that asbestos caused diseases in the "early 1930s," and believed that asbestos-related diseases were "caused by high concentrations of asbestos for long periods of time").

[27]  R. Doc. 652-9 at 241-242:21-11 (Deposition of Richard C. Johnson) (stating that Foster Wheeler "didn't know that asbestos could be hazardous to humans" until after a meeting in 1968).

[28]  R. Doc. 652 at 4-5.

[29]  *Id.* at 17.

defendants had knowledge about the risks of asbestos, and thus may have believed that "someone may, or even probably will, eventually get hurt" if additional precautions are not taken. *Id.* at 212. But such knowledge, and the associated failure to take precautionary measures based on that knowledge, "do[] not rise to the level of an intentional act, but instead falls within the range of negligent acts." *Id.*; *see also Evans v. Int'l Paper Co.*, No. 10-1916, 2011 WL 1898912, at *6 (W.D. La. Mar. 24, 2011), *report and recommendation adopted*, No. 10-1916, 2011 WL 1930679 (W.D. La. May 19, 2011) ("The court emphasizes that neither the failure to provide safety equipment, nor the failure to adhere to OSHA safety regulations constitute 'intentional acts.'" (citing *Bridges v. Carl E. Woodward, Inc.*, 663 So. 2d 458, 463 (La. App. 4 Cir. 1995))).

Further, the evidence produced by plaintiffs in the form of testimony from defendants' corporate representatives about their knowledge of the risks associated with asbestos does not suggest that defendants intended to harm Cortez, or that his mesothelioma was "inevitable or incapable of failing." *Id.*; *see also Zimko*, 905 So. 2d at 479 (holding that although members of the defendant's management team testified that "they knew that asbestos presented health hazards," there was "no evidence that anyone associated with [defendant] had any intent to injure [plaintiff]" or that

12

"management knew that [plaintiff's] injury was substantially certain to follow from their conduct or that his injury was inevitable"). In fact, as other courts have recognized, "it is [not] common human experience . . . that mesothelioma is known certainly or inevitably to follow from asbestos exposure." *Vedros*, 2014 WL 906164, at *3 (quoting *Zimko*, 905 So. 2d at 479).

Plaintiffs cite several Louisiana cases that they contend support their position that summary judgment is premature as to their intentional-tort claims.[30] But the cases plaintiffs rely on are all distinguishable from the facts involved here. For example, plaintiffs cite cases in which employees were ordered to work in conditions that employers were substantially certain would injure the exposed employees. *See, e.g.*, *Belgard v. Am. Freightways, Inc.*, 755 So. 2d 982, 986-87 (La. App. 3 Cir. 1999) (reversing the entry of summary judgment in favor of the employer when the employee suffered injuries after being ordered into an "area of toxic fumes that ha[d] just been evacuated to protect other workers"); *Holmes v. Pottharst*, 557 So. 2d 1024, 1026 (La. App. 4 Cir. 1990) (finding that the affidavit of the decedent's co-worker raised a genuine issue of fact as to whether defendants knew that the deceased was wearing inadequate protective clothing, when it was

---

[30]   R. Doc. 652 at 14-17.

13

established that defendants knew that "sandblasting while wearing inadequate protective clothing . . . would be substantially certain to harm him").

Here, plaintiffs have not produced any evidence that defendants knew Collen Cortez's mesothelioma was an inevitable result of his asbestos exposure. Such evidence is required to withstand a motion for summary judgment. Other cases plaintiffs rely on are likewise inapposite. In *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir. 1985), plaintiff brought product-liability claims against manufacturers of respiratory safety equipment, who in turn brought a third-party action against various shipyards for "intentionally caus[ing] the medical disorders" of plaintiff, alleging that the shipyards "were aware as early as 1968 that plaintiff was suffering from a lung disorder but continued to expose him to said dangerous substances knowing that he was substantially certain to further damage his lungs." *Id.* at 991 (intentional quotations omitted). The Fifth Circuit affirmed the trial court's denial of defendants' motion to dismiss the intentional-tort claim under the then lenient standard announced by *Conley v. Gibson*. *Compare id.* (stating that although the manufactures' complaint simply alleged that defendants knew it was "substantially certain" that their actions would cause further harm to plaintiff, the court was not

satisfied "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (stating that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In finding that the third-party plaintiff stated a cause of action, the Fifth Circuit did not change the elements of an intentional-tort claim or dispense with the need for proof of those elements. *Id.* at 991.

Similarly, in *DeBlanc v. International Marine Carries, Inc.*, 748 So. 2d 649 (La. App. 4 Cir. 1999), plaintiff's complaint alleged that defendants instructed him to use a hazardous substance, despite knowing the risks involved, and that plaintiff was "substantially certain to be injured by such unprotected exposure to asbestos." *Id.* at 652. Defendants brought an exception of no cause of action, asserting that plaintiff "fails to offer any factual evidence in support" of his intentional-tort allegation. *Id.* at 654. The court rejected defendants' argument, pointing out that "[a] test of the sufficiency of any available evidence may be made through a motion for

15

summary judgment." *Id.*; *see also Hirst v. Thieneman*, 901 So. 2d 578, 582 (La. App. 4 Cir. 2005) (noting that "[i]nasmuch as [*DeBlanc*] concerned an exception of no cause of action, as opposed to a motion for summary judgment as is at issue herein, the case has little value as precedent . . . [and] cannot be read to have lowered the standards with regard to an intentional tort").

In sum, the Court finds that plaintiffs' claims against defendants "lie[] in the realm of negligence, not in the realm of intentional tort." *Vedros*, 2014 WL 906164, at *3 (quoting *Zimko*, 905 So. 2dat 479). For these reasons, defendants are entitled to summary judgment dismissing plaintiffs' intentional-tort claims.

### B.   Fraud Claims

Plaintiffs' complaint alleges that defendants were "aware of the health hazards associated with exposure to asbestos," but nevertheless "remained silent as to the unreasonably dangerous nature of the products," and that this "suppression of the truth was made with the intention of obtaining unjust

advantage over unsuspecting victims."[31] Plaintiffs' fraud theory is thus based on omissions, not affirmative misrepresentations.[32]

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.* The elements of a Louisiana fraud and intentional misrepresentation claim are: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to the circumstance substantially influencing the victim's consent to (a cause of) the contract." *Jones v. Wells Fargo Bank, N.A.*, 626 F. App'x 500, 505 (5th Cir. 2015) (quoting *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001)). Although fraud may result from silence or inaction, "mere silence or inaction without fraudulent intent does not constitute fraud." *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 76 So. 3d 502, 509 (La. App. 1 Cir. 2011) (citing *Whitehead v. Am Coachworks, Inc.*, 837 So. 2d 678, 682 (La. App. 1

---

[31] R. Doc. 1-1 at 27 (Complaint ¶ 56).
[32] *See* R. Doc. 652 at 5 ("Thus, the Defendants knew asbestos would cause disease and what precautionary measures should be taken with regard to asbestos, yet chose to conceal these hazards and refrain from implementing such precautionary measures.").

Cir. 2002)). Additionally, fraud "cannot be predicated upon mistake or negligence, no matter how gross." *Id.*

Here, plaintiffs have failed to create an issue of material fact as to the requisite element of fraudulent intent. As stated above, a fraud claim under Louisiana law requires proof of a defendant's "intent to obtain an unjust advantage or to cause damage or inconvenience to another." *Shelton*, 798 So. 2d at 64. Aside from plaintiffs' assertion in their complaint that defendants suppressed the truth "with the intention of obtaining unjust advantage over unsuspecting victims,"[33] they fail to even mention the requirement of fraudulent intent in their briefs,[34] let alone produce any evidence "which would allow for the reasonable inference that the [defendants] acted with a [fraudulent] state of mind." *Int'l Shortstop*, 939 F.2d at 1266. Moreover, given that the Court found that plaintiffs' claims against defendants lie "in the realm of negligence, not the realm of intentional tort," these claims are not a valid predicate for plaintiffs' allegation of fraud. *See Whitehead*, 837 So. 2d at 682 ("Fraud cannot be predicated on mistake or negligence, no matter how gross.").

---

33  R. Doc. 1-1 at 27 (Complaint ¶ 56).
34  *See* R. Doc. 652 at 19 (asserting that evidence establishes that defendants were "well-aware that asbestos was dangerous and what precautionary measures should be taken, but chose to remain silent").

Accordingly, because plaintiffs have not produced any evidence raising a genuine issue of material fact with respect to defendants' fraudulent intent, defendants are entitled to summary judgment on plaintiffs' fraud claims. *See id.* ("Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud."); *see also Int'l Shortstop*, 939 F.2d at 1266 ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990))).

### C. Punitive-Damages Claims

Defendants additionally move to dismiss plaintiffs' punitive-damages claims under former article 2315.3 of the Louisiana Civil Code.[35] Former article 2315.3 authorized awards for punitive damages for the reckless handling and transportation of hazardous materials.[36] Plaintiffs contend that this issue is moot, in light of the parties' joint motion to dismiss plaintiffs' punitive-damages claims against General Electric, Foster Wheeler,

---

[35] R. Doc. 495-1 at 7-9.
[36] *Id.* at 7-8.

19

and Westinghouse.[37] This motion was granted on March 15, 2022, rendering defendants' motion for summary judgment on plaintiffs' punitive-damages claims moot.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for partial summary judgment as to plaintiffs' intentional-tort and fraud claims. The Court DISMISSES AS MOOT defendants' motion as to plaintiffs' punitive-damages claims. Plaintiffs' claims for intentional-tort and fraud against Westinghouse, Foster Wheeler, and General Electric are hereby DISMISSED.

New Orleans, Louisiana, this __25th__ day of July, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[37] R. Doc. 673.