UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ, ET AL.                           CIVIL ACTION

VERSUS                                                        NO. 20-2389

LAMORAK INSURANCE COMPANY,              SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is defendant The Travelers Indemnity Company's ("Travelers") motion for summary judgment, as the alleged insurer of B&B Engineering and Supply Company of Louisiana, Inc. ("B&B").[1]  Travelers seeks to dismiss the claims of plaintiffs Callie Cortez Billiot, Kelsey J. Cortez, and Mona Hotard Cortez arising from decedent Callen Cortez's alleged "take-home" exposure to asbestos when his father, Calise Cortez, was employed by B&B.[2]  Plaintiffs oppose the motion.[3]

For the following reasons, the Court grants defendant's motion in part, and denies the motion in part.

---

[1]    R. Doc. 502.  Liberty Mutual Insurance Company ("Liberty") originally joined in the motion, but the claims against Liberty as alleged insurer of B&B have been dismissed.

[2]    *Id.*

[3]    R. Doc. 684.

## I.   BACKGROUND

This is an asbestos exposure case.  Plaintiffs allege that decedent Callen Cortez contracted mesothelioma as a result of exposure to asbestos over the course of his career,[4] as well as take-home exposure resulting from his father's[5] and brothers' work when the family shared a home.[6]  Callen Cortez lived in his family home in Kraemer, Louisiana, starting from his birth in 1951, until he married and moved out in May of 1972.[7]  Decedent's father, Calise Cortez, also lived in the home.  Social Security records reflect that Calise Cortez began to work for B&B in 1966 and continued working there until 1968.[8]  Callen Cortez testified that Calise Cortez worked as an insulator for B&B at Union Carbide's facility in Taft, Louisiana.[9]  He also testified that

---

[4]   R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).

[5]   *Id.* at 7-9 (Complaint ¶¶ 11-16).

[6]   R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

[7]   R. Doc. 499-4 at 17-18 (Discovery Deposition of Callen Cortez at 100:11- 101:8).

[8]   R. Doc. 684-3 at 4.

[9]   R. Doc. 684-5 at 2-3, 5 (Discovery Deposition of Callen Cortez at 212:25-213:18, 360:8-15).

when Calise Cortez came home at the end of the day, his work clothes were covered in asbestos dust.[10]

On July 1, 2020, Callen Cortez sued Travelers and approximately thirty-four other defendants, including former employers, manufacturers, and insurance companies,[11] asserting liability, negligence, and intentional tort claims arising from his harmful exposure to asbestos.[12]  Callen Cortez passed away on May 26, 2022.[13]  Cortez's surviving spouse and children filed an amended complaint on June 6, 2022,[14] substituting themselves as plaintiffs in a survival action and seeking additional damages arising from Cortez's alleged wrongful death.[15]

Plaintiffs seek to hold Travelers, as insurer for B&B engineering at the time of the events giving rise to plaintiffs' claims, liable for Cortez's exposure to asbestos from his father's employment.[16]   Travelers moves for summary judgment, seeking dismissal of these claims.

The Court considers the parties' arguments below.

---

[10]    *Id.* at 10 (Discovery Deposition of Callen Cortez at 776:11-20).

[11]    R. Doc. 1-1  at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.

[12]    R. Doc. 1-1.

[13]    R. Doc. 1026 at 2 (Fourth Amended Complaint ¶ 111).

[14]    *Id.*

[15]    *Id.* at 2-3 (Fourth Amended Complaint ¶¶ 111-114).

[16]    R. Doc. 1-1 at 3-6 (Complaint ¶¶ 32-35); *see also* R. Doc. 648 at 3-7.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

Travelers raises four arguments in support of summary judgment, which the Court address below.

### A.   Whether B&B Was Negligent

Travelers first asserts that B&B is not liable for negligence because it owed no duty of care to Callen Cortez, and even if it did, plaintiffs have not provided evidence that B&B breached that duty.[17]  As to the existence of a duty, Travelers asserts that because the U.S. Occupational Safety and Health Administration ("OSHA") did not promulgate standards concerning potential asbestos exposures to household members until 1972, it owed no legal duty to the families of its employees for pre-1972 exposures.[18]

Louisiana courts employ "a duty-risk analysis to determine whether [negligence] liability exists under the particular facts presented." *Posecai v.*

---

[17]     R. Doc. 502-1 at 11.

[18]     *Id.*

*Wal-Mart Stores, Inc.*, 752 So. 2d 762, 765 (La. 1999). "Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Id.* At issue here are the second and third elemts: whether B&B owed a duty of care to Callen Cortez and whether B&B breached that duty.

"Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'" *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir.1994)). There is a "universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." *Boykin v. La. Transit Co.*, 707 So.2d 1225, 1231 (La. 1998). In determining whether specific duties of care exist, "[t]he role of the court is to determine whether any jurisprudential or statutory rule exists, or any policy reason why, under the facts and circumstances of the case, the [defendant] would owe a duty to compensate the plaintiff for his injuries." *Bridgewater v. New Orleans Reg'l Transit*

*Auth.*, 190 So. 3d 408, 415 (La. App. 4 Cir. 2016), *writ denied*, 191 So. 3d 1071 (La. 2016) (citing *Cormier v. T.H.E. Ins. Co.*, 745 So. 2d 1, 8 (La. 1999)).

Travelers' argument—that B&B did not owe Callen Cortez a duty of care because OSHA did not promulgate standards concerning potential take-home exposures until 1972—erroneously assumes that violation of a statutory or regulatory duty is a requisite element of negligence. On the contrary, a duty of care may arise regardless of the existence, *vel non*, of applicable regulations. *Id.*; *see also Posecai*, 752 So. 2d at 766 ("In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented."). Nonetheless, plaintiffs do point to applicable regulations concerning potential take-home exposure that predate the 1972 OSHA rule. As noted by the court in *Catania v. Anco Insulations, Inc.*, "the [1951] Walsh–Healey Act addressed the hazards of asbestos and required that employers provide a change of clothing to employees to prevent them from carrying asbestos home." No. 05-1418, 2009 WL 3855468, at *2 (M.D. La. Nov. 17, 2009). Further, the Supreme Court of Louisiana has recognized that the Walsh-Healey Act reflected "a level of knowledge that pervaded the industry and exhibited a growing understanding and awareness of a serious problem regarding asbestos." *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1087

(La. 2009).  In addition, plaintiffs' industrial hygiene expert, Gerard Baril, cited Louisiana Sanitary Code Industrial Health Regulations from as early as 1943, which identified asbestos as a potentially dangerous substance and required employers to implement protective measures to prevent harmful materials from being carried home on workers' clothes.[19]  Furthermore, Louisiana case law has recognized the existence of a duty in the para-occupational context for pre-1972 exposures.  *See Zimko v. Am. Cyanamid*, 905 So. 2d 465, 483-84 (La. App. 4 Cir. 2005), *writ denied*, 925 So. 2d 538 (La. 2006) (finding a pre-1972 duty owed by employer to take-home-exposure plaintiff); *c.f. Sutherland v. Alma Plantation, L.L.C.*, 193 So. 3d 1178, 1184 (La. App. 4 Cir. 2016), *writ denied*, 206 So. 3d 208 (La. 2016) (reversing summary judgment and holding "that a trial on the merits is necessary and would assist in determining whether [defendant] owed [a take-home-exposure plaintiff] a duty" when the exposures occurred before 1972).  Plaintiffs' evidence of pre-1972 regulatory pronouncements and case law holding that there is a duty in this context require the denial of summary judgment on the duty issue.

---

[19]     R. Doc. 684-12 at 9 (Declaration of Gerard Baril); R. Doc. 684-13 at 5, 9 (Louisiana Sanitary Code – Industrial Health Regulations).

Defendant's reliance on *Chaisson v. Avondale Industries, Inc.* does not alter this conclusion.  947 So. 2d 171 (La. App. 4 Cir. 2006), *writ denied*, 954 So. 2d 145 (La. 2007).  *Chaisson* did not hold that employers owe no duty to household members for pre-1972 exposures.  It merely distinguished a Texas take-home-exposure case that found that employers owed no duty to the family members of employees for pre-1972 exposures.  *Id.* at 182-83.  Indeed, *Chaisson* held only that the defendant owed the take-home-exposure plaintiff a duty for post-1972 exposures.  *Id.*

Additionally, there is a material factual dispute as to whether B&B breached a duty of care it owed Callen Cortez.  Russel Kraemer, a former B&B employee, testified that B&B provided the insulation for the Union Carbide job.[20]   Likewise, Wayne Coates, a former B&B insulator, testified that asbestos insulation products were used at the Union Carbide job.[21]  Plaintiffs' expert, Gerard Baril, reviewed the testimony of individuals who worked at Union Carbide during the relevant time period and observed that the workers identified the use of asbestos insulation, lack of precautionary measures, and zero separation of the trades or isolation of the insulation

---

[20]   R. Doc. 684-8 at 5-6 (Deposition of Russell Kramer at 81:20-22, 84:3-5).

[21]   R. Doc. 684-9 at 4 (Deposition of Wayne Coates at 54:10-21).

work.[22]  Similarly, Baril opined that B&B failed to provide its workers with separate lockers for street clothes and work clothes, did not require workers to remove dirty work clothes and shower, and provided no asbestos health hazard warning information.[23]  And Callen Cortez testified that his father Calise Cortez came home from his job at B&B covered in asbestos dust.[24] Plaintiffs' evidence creates a triable issue of fact on whether B&B breached a duty of care it owed Callen Cortez.  Summary judgment is denied on the issue of B&B's negligence.

## B.    Whether B&B Was a Professional Vendor of Asbestos

Travelers also contends that summary judgment is warranted on the issue of whether B&B was a "professional vendor" of asbestos, and thus subject to strict liability as a manufacturer.[25]  It asserts that plaintiffs have not produced evidence creating an issue of material fact on the "professional vendor" question.

Under Louisiana law, a "professional vendor" is held to the same standard of liability as a manufacturer.  *Chappuis v. Sears Roebuck & Co.*,

---

[22]    R. Doc. 684-12 at 18-19 (Declaration of Gerard Baril).
[23]    *Id.* at 19-20.
[24]    R. Doc. 684-5 at 10 (Discovery Deposition of Callen Cortez at 776:11-20).
[25]    R. Doc. 502-1 at 17.

11

358 So. 2d 926, 930 (La. 1978).  In order to be held liable as a professional vendor, a seller must: (1) hold a "product out to the public as its own" and (2) operate with the requisite "size, volume, and merchandising practices," such that the firm is presumed to know the defects of its wares.  *Id.*  Hence, "a professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that the courts are justified in treating the retailer like a manufacturer."  *Nelton v. Astro-Lounger Mfg. Co.*, 542 So. 2d 128, 132 (La. App. 1 Cir. 1989).  Because of the scale and merchandising requirements necessary for a finding that a firm is a professional vendor, a seller does not become a professional vendor just because it sells a product.  *Id.* ("[W]e reject plaintiff's contention that Fraenkel is a professional vendor simply because it is in the business of selling sofa beds.").

Plaintiffs' strict products liability claims against Travelers are predicated on B&B's asserted status as a professional vendor of asbestos insulation.  To support their contentions, plaintiffs point to the testimony of Russel Kraemer, a former B&B employee who testified that B&B provided

the insulation for the Union Carbide job.[26]    Plaintiffs assert that this testimony, plus testimony that the Union-Carbide job involved over 1,500 insulators[27] and that B&B had offices in three different states,[28] are sufficient to create a material issue of fact as to whether B&B was a professional vendor of asbestos.

The Court finds that plaintiffs' evidence is insufficient to create a material fact question on the professional vendor issue.  Even if B&B provided the asbestos material on the Union Carbide job, there is no evidence that it held the product out as its own.  Indeed, the evidence suggests the opposite.  Witnesses identified the asbestos used at Union Carbide by the brand names used by the manufacturer.  The products they identified, included Kaylo by Johns-Manville, Unibestos, and One Shot.[29] No witness identified B&B with the asbestos products they used.  Further, the asbestos material arrived by train.[30]  There is  no evidence of re-packaging by BB or of advertising or merchandising practices suggesting that BB held out the brand name products of others as its own.  The absence of this type of

---

[26]    R. Doc. 684-8 at 5-6 (Deposition of Russell Kramer at 81:20-22, 84:3-5).

[27]    R. Doc. 684-9 at 6-7 (Deposition of Wayne Coates at 56:24-57:5).

[28]    R. Doc. 684-20 at 3 (Deposition of Lionel Dubea at 30:9-15).

[29]    R. Doc. 684-9 at 4 (Deposition of Wayne Coates at 54:10-21).

[30]    R. Doc. 684-8 at 5-6 (Deposition of Russell Kramer at 81:15-19).

evidence is significant. *See Hoerner v. ANCO Insulations, Inc.*, 812 So. 2d 45, 60-61 (La. App. 4 Cir. 2002), *writ denied*, 819 So. 2d 1023 (La. 2002) (relying significantly upon evidence that the suppliers re-packaged the asbestos insulation in boxes containing the suppliers' respective names to support a finding that defendants were professional vendors).

Furthermore, plaintiffs have not produced evidence that B&B sold asbestos material on the scale necessary to be deemed a professional vendor. Plaintiffs' evidence does not even indicate whether B&B sold the asbestos used on other jobs or whether it was supplied by the owner of the project. And plaintiff offers no evidence for the exposure period of the volume of sales of asbestos products by B&B Engineering and Supply Company of Louisiana, Inc., the entity it sued. Additionally, while plaintiffs point to testimony that B&B had other offices, the witness identified three offices open at one time or another during his 30-plus years with B&B and did not state they were all extant at the time of the take-home exposure at issue[31] Further, he said that the Baton Rouge office was a subsidiary company.[32] It is not clear that the other offices were part of the same corporation or were different corporate entities. Plaintiffs' evidence is simply too sheer to create an issue of fact on

---

[31]    R. Doc. 684-20 at 2-3 (Deposition of Lionel Dubea at 17:4-5, 30:9-15).

[32]    *Id.* (Deposition of Lionel Dubea at 30:9-15)

the professional vendor issue. Accordingly, the Court grants summary judgment on the issue of whether B&B was a professional vendor of asbestos.

### C.    Liability Under Article 2317

Travelers also moves for summary judgment on the grounds that Louisiana Civil Code article 2317 is inapplicable to this case because plaintiffs have not produced evidence that asbestos was in the care, custody, or control of B&B.[33]

Louisiana Civil Code article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody." At the time of the exposure at issue, article 2317 "was a basis for the imposition of strict liability on the owner or custodian of an object that causes an injury." *Venezia v. ConocoPhillips Co.,* No. 12-2168, 2014 WL 107962, at *10 (E.D. La. Jan. 9, 2014). "To establish strict liability under article 2317, a plaintiff must show that: '(1) the thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by this defect.'" *Smith v. Union Carbide Corp.*, No. 13-

---

[33]    R. Doc. 502-1 at 18.

6323, 2014 WL 4930457, at *6 (E.D. La. Oct. 1, 2014) (quoting *Migliori v. Willows Apartments*, 727 So.2d 1258, 1260 (La. App. 4 Cir. 1999). "'Custody,' for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled." *Id.* (quoting *Haydel v. Hercules Transp., Inc.*, 654 So. 2d 408, 415 (La. App. 1 Cir. 1995), *writ denied*, 656 So. 2d 1018 (La. 1995)). "More than one party may have custody and control or *garde* under [article 2317]." *Ehrman v. Holiday Inns, Inc.*, 653 So. 2d 732, 738 (La. App. 4 Cir. 1995), *writ denied*, 655 So. 2d 343 (La. 1995).

Here, plaintiffs have created triable issues of fact as to whether Travelers is liable under article 2317. The evidence shows that B&B had contracted to install insulation at Union Carbide and employed insulators like Calise Cortez to do the insulation work with the asbestos products it supplied. Plaintiffs point to the deposition of Russel Kramer, who testified that B&B supplied the asbestos insulation used by employees performing insulation work at the Union Carbide job.[34] Likewise, plaintiffs offer the deposition testimony of Wayne Coates, a former B&B insulator, who testified that B&B employees used asbestos products at the Union Carbide job.[35]

---

[34]   R. Doc. 684-8 at 5-6 (Deposition of Russell Kramer at 81:20-22, 84:3-5).

[35]   R. Doc. 684-9 at 4 (Deposition of Wayne Coates at 54:10-21).

Further, Callen Cortez recalled that Calise Cortez regularly came home from his job at B&B covered in asbestos dust.[36]   Evidence that B&B, as the insulation contractor, provided the asbestos materials for employees to use on the job is sufficient to create an issue of material fact as to whether the asbestos insulation was in the control and under the supervision of B&B. Further, because the insulation B&B supplied and directed employees to utilize was in furtherance of a contract, there is evidence that B&B derived a benefit from the asbestos.   Indeed, in a factually similar case involving a plaintiff's exposure to asbestos while performing insulation work on the defendants' premises, Judge Carl L. Barbier, found that it was the contractors and insulators, such as B&B, and not premises owners, who had custody of asbestos insulation for the purposes of article 2317.  *Smith*, 2014 WL 4930457, at *6.

As to the second element, there "is really no dispute . . . that asbestos is a substance that creates an unreasonable risk of harm when inhaled." *Watts v. Georgia-Pac. Corp.*, 135 So. 3d 53, 60 (La. App. 1 Cir. 2013), *writ denied*, 131 So. 3d 59 (La. 2014).  And on causation, plaintiffs' medical expert, Dr. Stephen Kraus, testified that Cortez's exposures from his father's

---

[36]     R. Doc. 684-5 at 10 (Discovery Deposition of Callen Cortez at 776:11-20).

employment at B&B were a significant contributing factor in the development of Cortez's mesothelioma.[37]

Defendant contends that B&B did not have custody or control over the insulation used, citing case law holding that "an owner of a thing who transfers its possession, but not its ownership to another, continues to have the *garde* of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer." *Ross v. La Coste de Monterville*, 502 So. 2d 1026, 1032 (La. 1987). Travelers does not explain how *Ross* would relieve B&B of liability here. Further, the concept of *garde* does not preclude multiple parties from having custody and control of an object. *Ehrman*, 653 So. 2d at 738. For the purposes of article 2317, *garde* merely requires that a party have the right of direction and control over a thing and derive a benefit from it. *Doughty v. Insured Lloyds Ins. Co.*, 576 So. 2d 461, 464 (La. 1991). Even if Union Carbide also had *garde* of the asbestos insulation, plaintiffs have created a material factual dispute as to whether the asbestos insulation was in the custody or control of B&B, who derived a benefit from the insulation. Accordingly, summary judgment is denied on the issue of article 2317 liability.

---

[37]   R. Doc. 684-14 at 8-9 (Declaration of Stephen Terry Kraus, M.D.).

D.    **Applicability of *Halphen***

Travelers' final contention is that *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986), and its strict products liability theory are inapplicable here because *Halphen* was decided in 1986, after the decedent's exposure to asbestos from 1966 until 1968 while working for B&B.[38]

To be sure, the substantive law that governs plaintiffs' claims is the law in effect when the alleged exposure occurred. *Rando*, 16 So. 3d at 1072. But courts are in agreement that "the Louisiana Supreme Court did not create new substantive law in *Halphen*." *Abadie v. Metro. Life Ins. Co.*, 784 So. 2d 46, 78 (La. App. 5 Cir. 2001), *writ denied*, 804 So. 2d 642 (La. 2001). Indeed, "Judge Dennis, the author of *Halphen*, wrote in *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 334 (5th Cir.1999), that the Louisiana Supreme Court did not create new substantive law in *Halphen*, but merely compiled and interpreted the law with regard to products liability in Louisiana at that time." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 123 (La. App. 1 Cir. 2005), *writ denied*, 925 So. 2d 519 (La. 2005). *See Hulin*, 178 F.3d at 327 (Dennis, J.) (characterizing *Halphen* as simply applying "Civil Code principles and prior jurisprudential interpretations of those principles by analogy to a products liability issue that had not been foreseen by the Code."). For this

---

[38]    R. Doc. 502-1 at 19.

reason, *Halphen* can be applied to actions accruing before the decision was published.  *Id.*  Further, Louisiana state and federal courts have routinely applied *Halphen* to cases accruing before the decision was decided. *See, e.g.*, *Toups v. Sears, Roebuck & Co.*, 507 So. 2d 809, 815-16 (La. 1987) (applying *Halphen* to an accident that occurred in 1977); *Bloxom v. Bloxom*, 512 So. 2d 839, 843 (La. 1987) (applying *Halphen* to an accident that occurred in 1982); *Hines v. Remington Arms Co.*, 648 So. 2d 331, 334 (La. 1994) (applying *Halphen* to an accident that occurred in 1984); *Hennegan v. Cooper/T. Smith Stevedoring Co.*, 837 So. 2d 96, 102 (La. App. 4 Cir. 2002), *writ denied*, 841 So. 2d 794 (La. 2003) (applying *Halphen*'s unreasonably dangerous per se theory to asbestos exposures from the 1960s); *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 334 (5th Cir.1999) (applying retroactively). Travelers' temporal argument about the applicability of *Halphen* is wrong as a matter of law.

Nevertheless, *Halphen* strict products liability is inapplicable here for another reason.  *Halphen*-era law applied strict products liability to manufacturers and certain suppliers that can be held liable as manufacturers.  *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113-15 (La. 1986); *see also Rowell v. Carter Mobile Homes, Inc.*, 500 So. 2d 748, 752 (La. 1987) (specifying which suppliers, including professional vendors,

may be held liable under a strict products liability theory).  The Court has held that B&B was not a professional vendor, which is the basis upon which plaintiffs asserted that B&B could be held liable as a manufacturer. Accordingly, strict products liability is inapplicable here.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Travelers' motion for summary judgment.[39]  The Court grants the motion as to whether B&B was a professional vendor of asbestos insulation. The Court denies the motion as to all other issues.

New Orleans, Louisiana, this __28th__ day of July, 2022.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[39]    R. Doc. 502.