UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ, ET AL.                          CIVIL ACTION

VERSUS                                            NO. 20-2389

LAMORAK INSURANCE COMPANY,                        SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is defendant Legacy Vulcan, LLC's ("Vulcan") motion for summary judgment.[1]  Plaintiffs, Huntington Ingalls, Inc. ("Avondale"), and Continental Insurance Company ("Continental") oppose the motion.[2] Because material facts remain in dispute, the Court denies Vulcan's motion.

## I.    BACKGROUND

This is an asbestos exposure case.  Plaintiffs allege that Callen Cortez contracted mesothelioma as a result of, *inter alia*, working with asbestos-containing insulation and removing and installing asbestos-containing gaskets at Vulcan's facility in Geismar, Louisiana.[3]  On July 1, 2020, Cortez sued Vulcan, and approximately thirty-four other defendants, including

---

[1]    R. Doc. 433.
[2]    R. Docs. 639, 653, & 680.
[3]    R. Doc. 1-1 at 36 (Complaint ¶ 74).

former employers, manufacturers, and insurance companies.[4]   In his petition, Cortez alleged various negligence and strict liability claims against Vulcan as a premises owner.[5]  Callen Cortez passed away on May 26, 2022.[6] Cortez's surviving spouse and children filed an amended complaint on June 6, 2022,[7] substituting themselves as plaintiffs in a survival action and seeking additional damages arising from Cortez's alleged wrongful death.[8]

Vulcan now moves for summary judgment, seeking the dismissal of plaintiffs' negligence and strict liability claims against it.[9]   Plaintiffs, Avondale, and Continental oppose the motion.[10]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

---

[4]   R. Doc. 1-1 at 1-3 (Complaint ¶¶ 1-2); *id.* at 45-48.
[5]   *Id.* at 36-39 (Complaint ¶¶ 74, 76-80).
[6]   R. Doc. 1026 at 2 (Fourth Amended Complaint ¶ 111).
[7]   *Id.*
[8]   *Id.* at 2-3 (Fourth Amended Complaint ¶¶ 111-114).
[9]   R. Doc. 433.
[10]   R. Docs. 639, 653, & 680.

1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by

either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

Vulcan seeks summary judgment on plaintiffs' negligence and strict liability claims for three reasons: (1) Cortez's alleged exposure to asbestos at Vulcan was not a substantial contributing factor to his mesothelioma; (2) Vulcan did not owe a duty to Cortez as an employee of an unknown independent contractor; and (3) Vulcan, as a premises owner, cannot be strictly liable for a dangerous condition on its premises that is temporary in nature.

### A.   Asbestos Exposure

Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)).   The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004).   When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 1 Cir. 2005)

(citing *Vodanovich*, 969 So. 2d at 932). "Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *Labarre v. Bienville Auto Parts, Inc.*, No. 21-89, 2022 WL 293250, at *3 (E.D. La. Feb. 1, 2022) (citing *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 4 Cir. 2009)). Thus, as the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)).

Vulcan asserts that it is entitled to summary judgment because plaintiffs have not produced sufficient evidence that Cortez had significant exposure to asbestos during his "very short job" at Vulcan, let alone that the

exposure was a substantial factor in causing Cortez's injuries.[11]   Vulcan asserts that plaintiffs cannot meet their burden on either requirement because the "only evidence in this matter is the extremely limited testimony" provided by Cortez, who had a "poor memory" of the nature of his work at Vulcan.[12]

### 1.   Significant Exposure

First, Vulcan argues that plaintiffs lack evidence that Cortez had significant exposure to asbestos at Vulcan.  In support of its assertion, Vulcan notes that Cortez testified that he "never saw any of the Vulcan specifications"[13] for the gaskets or insulation that he worked with, and "couldn't tell how old [the insulation] was," or the date that the gaskets were originally installed.[14]   Vulcan also cites to the deposition of plaintiffs' industrial-hygiene expert, Gerard Baril, who testified that he "can[not] say one way or the other . . . whether any insulation [Cortez] may have removed [at Vulcan] contained asbestos."[15]   Vulcan further contends that even if the gaskets and insulation did contain asbestos, Vulcan had safety procedures in

---

[11]   *Id.* at 7-8.
[12]   R. Doc. 433-1 at 4-6.
[13]   R. Doc. 433-4 at 13 (Deposition of Collen Cortez at 431:5-11).
[14]   *Id.* at 7 (Deposition of Callen Cortez at 194:9-15); *id.* at 13 (Deposition of Callen Cortez at 431:1-4).
[15]   R. Doc. 433-5 at 26 (Deposition of Gerard Baril, at 261:3-12).

place during the 1980s for handling asbestos-containing products.[16] Defendant specifically points to the deposition testimony of its corporate representative, Rodney Gremillion, who testified that when he arrived at the plant in 1984, Vulcan provided written instructions to maintenance contractors on the appropriate procedure for handling asbestos-containing insulation and gaskets, and Gremillion speculated that "most" of these procedures "extended back to about [the] mid-seventies."[17]

Plaintiffs have cited sufficient evidence to create an issue of material fact that Cortez was exposed to asbestos-containing gaskets and insulation at the Vulcan plant. Specifically, plaintiffs cite Cortez's testimony that he was exposed to asbestos at Vulcan from changing asbestos-containing gaskets and removing old asbestos-containing insulation. Plaintiffs submit the following description from Cortez's deposition:

**Q.** Now, you said you were also exposed to asbestos at Vulcan.

**A.** Yes.

**Q.** And how were you exposed to asbestos at Vulcan?

**A.** I was on a shutdown over there and I was . . . [n]ut busting, changing gaskets, removing old insulation so we could get to the flanges and stuff. And if we had to change out a whole pipe, we

---

[16]   R. Doc. 433-1 at 7 & n.36.

[17]   R. Doc. 433-6 at 3, 22-24 (Deposition of Rodney Gremillion at 71:1-4; 90:8-92:25).

had to take the whole pipe down and replace it with a new pipe. And then they would come back behind us and insulate it.

. . .

**Q.** And how did you remove gaskets at Vulcan?

**A.** With a scraper and wire brush.

**Q.** And there did you use [a] power wire brush and [a] hand wire brush?

**A.** Yes.

**Q.** And when you would replace the gaskets, what kind of gaskets were you replacing?

**A.** Mostly everywhere[] I worked it was Garlock.

**Q.** And at Vulcan[,] what style numbers were you using?

**A.** . . . 900 and the 7705.[18]

As to Cortez's exposure to asbestos-containing gaskets, Garlock's corporate representative, James Hefron, testified that Garlock's 7705 style gaskets contained crocidolite asbestos,[19] and its 900 series gaskets contained chrysotile asbestos.[20]   Additionally, two of plaintiffs' experts testified that based on their education, training, and review of the literature, the Garlock 900 and 7705 gaskets both contained asbestos.[21]   Finally, Vulcan's corporate

---

[18]   R. Doc. 653-4 at 2-4 (Deposition of Callen Cortez at 53:25-55:19).

[19]   R. Doc. 639-3 at 5 (Deposition of James Heffron at 41:6-8).

[20]   *Id.* at 10 (Deposition of James Heffron at 14-22).

[21]   *See* R. Doc. 653-12 at 3 (Deposition of James Millette at 52:2-10) (explaining that based on his "review of literature and [his] education, training, [and] experience," it was his understanding that the Garlock 900 "contains chrysotile asbestos . . . [a]nd the Garlock 7705 was a

representative, Gremillion, testified that these asbestos-containing gaskets were still used at Vulcan's plant when he arrived in 1984.[22]  The foregoing evidence raises a genuine issue of material fact as to whether Cortez was exposed to asbestos-containing gaskets during his time at the Vulcan plant.

As to Cortez's exposure to asbestos-containing insulation, Cortez testified that when he was "changing out valves and gaskets at Vulcan," this work generated dust, which he breathed in.[23]  Cortez additionally testified that by changing out the gaskets and valves, he disturbed insulation, and although he could not tell the exact age of the insulation, he knew "it wasn't new" and that it "looked like it had been there."[24]  Vulcan's corporate representative testified that several facilities within the Vulcan plant were initially constructed during the 1970s with asbestos-containing insulation, and that when he arrived in 1984, many of those facilities' "lines and equipment" still utilized asbestos insulation.[25]  And although Cortez testified that he did not know the exact age of the insulation he was exposed to at

---

gasket that contained crocidolite asbestos"); R. Doc. 653-6 at 6-7 (Deposition of Gerard Baril at 25:21-26:16) (noting that based on his reading of "the literature over the years," both the Garlock 900 and Garlock 7705 gaskets "contained asbestos during the years relevant to Mr. Callen Cortez's exposure history").

[22]   R. Doc. 639-4 at 3 (Deposition of Rodney Gremillion at 57:15-18).
[23]   R. Doc. 653-5 at 6-7 (Deposition of Callen Cortez at 194:5-195:8).
[24]   *Id.* at 194:5-15 at 6 (Deposition of Callen Cortez at 194:5-15).
[25]   R. Doc. 653-13 at 8-10 (Deposition of Rodney Gremillion at 53:1-55:7).

Vulcan, his testimony that it "looked like it had been there," combined with the testimony from Gremillion, "could be construed by a jury as indicating that asbestos-containing [insulation] . . . was used" at Vulcan during the 1980s. *See Lopez v. McDermott, Inc.*, No. 17-8977, 2020 WL 3668059, at *4 (E.D. La. July 6, 2020) (noting that testimony in the record that the "'insulation looked the same from 1968 to 1980' . . . could be construed by a jury as indicating that asbestos-containing materials continued to be used on [defendant's] platforms in a manner that would release asbestos fibers into the air despite the EPA's ban in 1975"). Thus, as with the gaskets, the Court finds that plaintiffs' have presented sufficient evidence to raise a genuine issue of fact as to whether Cortez was exposed to asbestos-containing insulation at Vulcan.

Finally, the Court finds that plaintiffs' have raised a genuine issue as to whether Vulcan failed to have precautionary measures in place during Cortez's time at the plant that would have protected workers from substantial exposure to asbestos. Although Vulcan's corporate representative testified that by the 1980s defendant and its contractors had implemented safety procedures for work involving asbestos-containing products, this testimony is directly contradicted by Cortez's own testimony that he was not provided "any warnings about [the] hazards of asbestos when [he] w[as] at Vulcan,"

and that he was not provided "any protective equipment to protect [him] from breathing the dust."[26]

In sum, based on the above testimony, plaintiffs have created a genuine issue of fact as to whether Cortez was exposed to asbestos-containing gaskets and insulation during his work at Vulcan.

### 2.  Substantial Factor in Causing Injury

Vulcan also contends that, even if Cortez were exposed to asbestos through his work at Vulcan, plaintiffs cannot show that the exposure was a substantial factor in causing his injury.   Vulcan notes that its certified industrial hygienist, Joseph Holtshouser, opined that Cortez "did not receive any direct . . . [or] bystander exposures to asbestos while he worked at the Vulcan Chemicals plant that would have been a substantial contributing factor towards increasing his risk for any asbestos-related disease."[27] Further, Vulcan emphasizes that Cortez worked at Vulcan "on only _one_ occasion . . . for a shutdown that lasted approximately _one month_," and argues that, accordingly, his exposure cannot be considered a substantial factor.[28]   Specifically, Vulcan asserts that in order to support "a reasonable

---

26    R. Doc. 653-5 at 6-7 (Deposition of Callen Cortez at 194:16-195:8).
27    R. Doc. 433-7 at 8-9 (Holtshouser Report).
28    R. Doc. 433-1 at 5 (emphasis in original).

inference of substantial causation," plaintiffs must come forward with "evidence of exposure to a specific product on a regular basis over some extended period of time," and that plaintiffs have failed to produce such evidence here.[29]

These arguments fail for two reasons.  First, the brevity of Cortez's asbestos exposure does not alone warrant summary judgment for the defendant.  As the Louisiana Supreme Court has explained, "[s]imply because a plaintiff suffered asbestos exposure while working only a short period for an employer," and "had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma." *Rando*, 16 So. 3d 1065 at 1091; *Hoerner v. ANCO Insulations, Inc.*, 812 So. 2d 45, 64 (La. App. 4 Cir. 2002) (noting that the "frequent and regular" requirement for asbestos exposure in Louisiana "refers to the quality of the exposure during the employment period, not to the length of that period").  Accordingly, Vulcan's assertion that plaintiffs must produce evidence of exposure "over some extended period of time" seeks to hold plaintiffs to a higher causation standard than required under Louisiana law.

---

[29]    *Id.* at 4.

Second, contrary to defendant's expert, plaintiffs' experts all opine that Cortez's exposure through his work at Vulcan was a substantial contributing factor in causing his mesothelioma. Specifically, Baril, an expert industrial hygienist, noted in his report that Cortez worked at Vulcan "during a shutdown 12 hours per day, 7 days per week" and that his basic work "involved removing and replacing gaskets . . . [with] scraper and wire brushes . . . which created visible dust which he inhaled."[30] Based on this exposure, Baril testified that, in his opinion, "Callen Cortez sustained occupational exposures to asbestos while he was working at Vulcan" and that those exposures at Vulcan "significantly increase[d] his risk of developing mesothelioma."[31] Similarly, Dr. Stephen Kraus, testified that after reviewing Cortez's deposition and the relevant scientific literature, it was his "opinion that Callen Cortez sustained occupational exposures to asbestos while he was working at Vulcan" and that those exposures were "a significant contributing factor to causation of his mesothelioma."[32]

In light of this conflicting evidence, the Court denies summary judgment on the issue of whether Cortez's exposure through his work at Vulcan was a substantial factor in causing his mesothelioma.

---

[30]   R. Doc. 653-9 at 41 (Baril Report).
[31]   R. Doc. 653-6 at 9 (Deposition of Gerard Baril 62:6-22).
[32]   R. Doc. 653-8 at 14-15 (Deposition of Stephen Kraus at 71:23-72:12).

### B.    Negligence Claims

Plaintiffs allege that Vulcan, as the premises owner, was negligent in failing to warn Cortez about the hazards associated with exposure to asbestos and for failing to provide Cortez a safe place to work.[33]   Louisiana courts conduct "a duty-risk analysis to determine whether [negligence] liability exists under the particular facts presented." *Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 765 (La. 1999).  Under the duty-risk analysis, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries; and (5) actual damages. *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 816 So. 2d 270, 275-76 (La. 2002).

Vulcan challenges the duty[34] element of plaintiffs' negligence claims, invoking the "independent-contractor defense."[35]  "Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the

---

[33]    R. Doc. 1-1 at 36-39 (Complaint ¶¶ 74, 76-80).

[34]    Vulcan's challenge to causation was previously addressed in in Part III (A).

[35]    R. Doc. 433-1 at 3-15.

facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'" *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir.1994)).  In determining whether specific duties of care exist, "[t]he role of the court is to determine whether any jurisprudential or statutory rule exists, or any policy reason why, under the facts and circumstances of the case, the [defendant] would owe a duty to compensate the plaintiff for his injuries." *Bridgewater v. New Orleans Reg'l Transit Auth.*, 190 So. 3d 408, 415 (La. App. 4 Cir. 2016) (citing *Cormier v. T.H.E. Ins. Co.*, 745 So. 2d 1, 8 (La. 1999)).  Plaintiffs' negligence claims "will only survive a motion for summary judgment if, as a matter of law, [they] can prove [Vulcan] owed [Cortez] a duty of care."  *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 WL 1528082, at *1 (E.D. La. Oct. 13, 2000).

It is undisputed that Cortez was not an employee of Vulcan, the premises owner.[36]   In such a situation, there are "two ways in which a premises owner can be liable to employees of contractors who are injured while working on its premises: '(1) *directly*, for its own negligence; (2) *vicariously*, for the negligence of the independent contractor.'"  *Thomas v.*

---

[36]     R. Doc. 653-1 at 2 (Plaintiffs' Statement of Uncontested Facts); R. Doc. 433-2 at 3 (Defendant's Statement of Uncontested Facts).

*A.P. Green Indus., Inc.*, 933 So. 2d 843, 851 (La. App. 4 Cir. 2006) (quoting 1A Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, *The American Law of Torts* § 4:23 (2003)).  The Court considers plaintiffs' vicarious and direct liability claims in turn.

### 1.   Vicarious Liability

Under Louisiana law, "a premise[s] owner is not vicariously liable for the negligence of an independent contractor." *Thomas*, 933 So. 2d at 852; *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987).  This general rule, often known as the independent-contractor defense, is subject to "two exceptions:" (1) when the independent contractor is engaged in an ultrahazardous activity;[37] or (2) when the principal "retains or exercises operational control" or expressly or impliedly authorizes an unsafe practice. *Ainsworth*, 829 F.2d at 549-550; *Bartholomew v. CNG Producing, Inc.*, 832 F.2d 326, 329 (5th Cir. 1987) (holding that there was evidence to support a jury's finding that the principal was liable given that the principal expressly authorized an unsafe work practice).

---

[37]   Neither party contends that Cortez was engaged in an "ultrahazardous activity" during his time at the Vulcan plant.

"Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge ex rel. v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003); *see also Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 907-08 (5th Cir. 1985) (finding there was no operational control because the principal checked on operations but never supplied detailed instructions). "It is not enough" that the principal "has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992). Instead, there must be "control over the operative detail of doing any part of the work." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 613-14 (5th Cir. 2018).

Vulcan contends that Cortez worked on its premises for an independent contractor and that it did not have any supervision or operational control over Cortez's work.[38]  Accordingly, Vulcan asserts that, as a matter of law, it did not owe Cortez a duty to provide a safe place to

---

[38]    R. Doc. 433-1 at 11-12.

work.[39]    Plaintiffs    contest    whether    Vulcan    has    established    that    the independent-contractor    defense    is    applicable    to    plaintiffs'    vicarious negligence    claims.[40]    Plaintiffs    note    that    defendant    has    not    produced    a contract    establishing    that    a    principal-independent    contractor    relationship existed, and that even if it had, there is an issue of material fact as to whether Vulcan    controlled    and    directed    the    work    of    its    alleged    independent contractor's employees.[41]

Vulcan, as the "principal seeking to avoid vicarious liability through the independent-contractor    exception    must    establish    the    existence    of    an independent-contractor relationship between it and the alleged[ly] negligent contractor."    *Coleman v. BP Expl. & Prod. Inc.*, No. 19-102, 2020 WL 6292491, at *3 (S.D. Tex. Oct. 27, 2020), *aff'd* 19 F.4th 720 (5th Cir. 2021) (applying Louisiana law).  To determine whether Vulcan has established the existence of such a relationship, the Court must consider whether: "(1) a valid contract exists between the parties; (2) the work is of an independent nature; (3) the contract allows for the work to be done according to the contractor's own methods, without being subject to control and direction, except as to the result of the services to be rendered; (4) a specific price for the overall

---

[39]    R. Doc. 433-1 at 10.
[40]    R. Doc. 653 at 18.
[41]    *Id.* at 14.

undertaking is agreed upon; and (5) the duration of the work is for a specific time and not subject to termination at the will of either party." *Bouquet v. Williams*, 206 So. 3d 232, 237 (La. App. 1 Cir. 2016) (citing *Hickman v. S. Pac. Trans. Co.*, 262 So. 2d 385, 390-91 (La. 1972)). "In other words, to determine whether someone is an independent contractor, the court must look at the degree of control over the work." *Id.*; *Henderson v. Atmos Energy*, 509 F. Supp. 3d 625, 641 (E.D. La. 2020) ("[T]he most important inquiry is whether the principal retained the right to control the work." (quoting *McLeod v. Moore*, 7 So. 3d 190 at 192 (La. App. 2 Cir. 2009))).

The Court finds that defendant is not entitled to summary judgment on plaintiffs' vicarious liability claims. Cortez testified that he worked as a pipefitter at Vulcan's plant at some point during the 1980s, but that he was unable to remember his employer's name.[42] Vulcan argues that because Cortez could not identify his employer, it is "impossible" for Vulcan to produce a contract with an unknown entity.[43] Although Vulcan has not produced a written agreement that purports to establish an independent-contractor relationship, Louisiana courts have explained that the "existence of an independent contractor agreement is not necessarily dispositive," and

---

[42]   R. Doc. 433-4 at 6 (Deposition of Callen Cortez at 193:12-14).
[43]   R. Doc. 836 at 7 n.30.

that courts must "inquire as to the real nature of the relationship and the degree of control exercised." *Arroyo v. E. Jefferson Gen. Hosp.*, 956 So. 2d 661, 664 (La. App. 5 Cir. 2007). But Vulcan has not produced evidence on the factors that shed light on the "real nature" of its relationship with its allegedly independent contractor, such as facts about the specific terms defining the scope, nature, duration, or price of the contractor's work.

Further, plaintiffs have produced evidence that raises a genuine dispute as to whether Vulcan exercised control over the pipefitters that worked at its plant, thereby creating an issue of fact as to whether Cortez's employer was an independent contractor, and relatedly, whether an exception to the independent-contractor defense exists. *See Coleman*, 2020 WL 6292491, at *3 (noting that the answer to "whether there was an independent-contractor relationship will often correspondingly answer whether the principal enjoyed 'operational control' . . . an exception to the independent-contractor [defense]" (citing *Arroyo*, 956 So. 2d at 664)). Defendant argues that it did not control or direct the manner of Cortez's work as a pipefitter, pointing to Cortez's testimony that he did not know "any employees of Vulcan,"[44] that he took his "instructions from" either his union

---

[44]     R. Doc. 433-4 at 10 (Deposition of Callen Cortez at 428:17-19).

steward or his supervisor through his unknown employer,[45] and that he supplied his own tools.[46]  Defendant also notes that although it was "involved in safety" at its plant, and made sure that contractors followed its asbestos safety procedures, that does not equate to control over day-to-day activities.[47]   But the testimony of Vulcan's own corporate representative raises an issue of fact as to whether Vulcan "issued the 'how to' instructions to . . . workers necessary to support a finding that [Vulcan] exerted operational control."  *Thomas*, 2000 WL 1528082, at *2.   Specifically, Rodney Gremillion testified as follows:

> **Q.** Did Vulcan Geismar provide instruction to maintenance contractors as to what type of method should be used in removing an asbestos gasket?
>
> **A.** Yes.
>
> **Q.** Okay.  And what type of measures did Vulcan Geismar state should be used?
>
> . . .
>
> **A.** We had a procedure that was written.  And what that involved was, when you break the flange apart, [the contractor was] to spray a solvent release agent on it, which wetted the surface, and then [the contractor was to] scrape it . . . . But in no circumstances were [contractors] allowed to use any kind of power brushes or grinders.

---

[45]   *Id.* at 11-12 (Deposition of Callen Cortez at 429:16-430:1).

[46]   *Id.* at 12 (Deposition of Callen Cortez at 430:2-3).

[47]   R. Doc. 836.

**Q.** And . . . I know I've seen in the documents some written procedures for handling of insulation.

. . .

**Q.** Do you have any knowledge as to how far back that procedure goes?

**A.** . . . [M]y memory says that a lot of these—most of these documents we had, maintenance procedure wise, extended back to about [the] mid-seventies.[48]

Gremillion additionally testified that contractors "had to follow the Vulcan written asbestos procedure."[49]  He explained that pipefitters were made aware of Vulcan's procedures through "work packages" that were written by Vulcan maintenance personnel.[50]  These work packages would also include the list of materials that pipefitters would need for the job, and where those materials could be found at the plant.[51]  Gremillion further testified that based on these work packages, Vulcan maintenance planners would write "a purchase requisition to [Vulcan's] purchasing group," and that the purchasing group would then buy the necessary materials, and have those materials delivered to the plant's warehouse.[52]  He additionally

---

[48]   R. Doc. 433-6 at 22-24 (Deposition of Rodney Gremillion at 90:8-92:1).

[49]   R. Doc. 653-13 at 17 (Deposition of Rodney Gremillion at 71:1-4).

[50]   R. Doc. 433-6 at 25-26 (Deposition of Rodney Gremillion at 104:10-105:18).

[51]   *Id.* at 26 (Deposition of Rodney Gremillion at 105:1-6).

[52]   R. Doc. 653-13 at 13 (Deposition of Rodney Gremillion at 67:4-15).

specified that it would have been Vulcan's purchasing group that would have ordered gaskets and insulation based on "Vulcan's specifications that existed at the time."[53]

Gremillion's testimony further raises an issue of fact as to whether Vulcan was simply "involved in" worker safety, or whether it was providing workers with safety instructions and supervision on a day-to-day basis.  He confirmed that Vulcan had "site-specific safety rules" that "contractors were required to follow when working at its plant."[54]  And to ensure that these safety procedures were being followed, Gremillion agreed that "[w]henever asbestos insulation was being removed by the on-site insulation contractor in the seventies and eighties," there would "[a]bsolutely . . . be a Vulcan representative there to oversee that work."[55]  Gremillion additionally noted that during a shutdown, it would not have been "uncommon" to have contract maintenance employees working in the same area as Vulcan employees, and that Vulcan employees would help get contract maintenance workers "started on each of the[ir] jobs," including "actually walk[ing] [them]" out to the job site to "make sure they were on the right thing."[56]

---

[53]    *Id.* at 13-14 (Deposition of Rodney Gremillion at 67:20-68:16).
[54]    *Id.* at 18 (Deposition of Rodney Gremillion at 95:2-9).
[55]    *Id.* at 18-19 (Deposition of Rodney Gremillion at 95:22-96:2).
[56]    *Id.*

Based on the above testimony, a fact finder could reasonably conclude that Vulcan's role involved a level of "control over the operative detail of . . . the work," such that pipefitters were "not entirely free to do the work in [their] own way." *Grammar*, 860 F.2d at 644. Notably, the record raises fact issues as to Vulcan's control over workers tasked with removing asbestos gaskets during the time period that Cortez asserts he worked at the plant. Deposition testimony from Vulcan's corporate representative states that Vulcan oversaw many aspects of the manner in which pipefitters did their jobs, including the methods and tools that they required or prohibited when removing asbestos gaskets. *See Renwick*, 901 F.3d at 613-14 (finding that there was a "jury issue on operational control" when defendant controlled "work-site access," provided "specific instructions" about how to reach the work-site, and rejected an alternative access route); *Warner v. Talos ERT LLC*, No. 18-1435, 2022 WL 529351, at *3 (W.D. La. Feb. 22, 2022) (finding that there were "fact issues as to [defendant's] control over the time workers w[ere] allowed to work, the 'details' to which [they] must conform, and the tools [they] w[ere] allowed to use").

The cases defendant relies on are distinguishable. *Cf. Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (finding that the operational control exception to vicarious liability did not apply, in part because the "fact

that a principal . . . reserves the right to monitor its contractor's performance" and "has the right to make safety recommendations to the contractor and is obligated to report continuing unsafe work practices . . . does not mean that the principal controls the methods or details of the contractor's work"); *Lopez*, 2020 WL 3668059, at *5-6 (finding that Exxon did not have operational control over Brown & Root pipefitters, citing plaintiff's testimony that although Exxon inspectors were on the premises, the inspectors were 'inspecting the progress of the end product' rather than 'telling [him] how to weld," and that Brown & Root provided plaintiff with all his "training, safety instructions, and supervision"); *Thomas*, 2000 WL 1528082, at *2 (noting that the independent contractor's foreman "was left to accomplish the painting and sandblasting of the platform in any way he chose," and that although defendant's company representative would regularly attend safety meetings, he "did not participate in the discussion or any decisions"). The evidence of Vulcan's involvement and control is qualitatively more substantial than in any of these cases.

Further, the Court rejects defendant's argument that plaintiffs have relied on the "non-established notion" that Cortez worked for Payne and Keller of Louisiana, Inc. ("Payne and Keller") during his time at Vulcan's plant in order "to create an issue of material fact regarding operational

control."[57]  Plaintiffs have produced evidence that raises an issue of material fact as to whether Cortez worked for Payne and Keller.  Cortez testified that he replaced gaskets at Vulcan's plant at some point during the 1980s.[58] Vulcan's corporate representative testified that Vulcan had maintenance contracts with two companies, National Maintenance and Payne and Keller, and that one of the typical job duties of employees of either company during the 1970s through the 1980s was to remove and change gaskets.[59]  Cortez's Social Security Administration Statement of Earnings shows that Cortez received income from Payne and Keller in 1974, 1977, and 1979-1984.[60] Thus, the Court concludes that plaintiffs have produced evidence that raises a reasonable inference that Cortez was employed by Payne and Keller.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (explaining that in the summary judgment context "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion").

The Court concludes that there is an issue of fact as to whether defendant exercised control over Cortez's employer.  The Court is thus

---

[57]    R. Doc. 836 at 5.
[58]    R. Doc. 433-4 at 6 (Deposition of Callen Cortez at 193:12-14).
[59]    R. Doc. 653-13 at 4 (Deposition of Rodney Gremillion at 35:9-13; 51:10-24).
[60]    R. Doc. 653-3 at 3, 5.

unable to determine, for purposes of summary judgment, that there was an independent-contractor relationship here, and that no exception to the independent-contractor defense exists.   Accordingly, the Court denies defendant's motion for summary judgment on plaintiffs' vicarious liability claims.

### 2.    Direct Liability

"Although the independent contractor defense is a bar to a vicarious liability claim, it is not a bar to [a] direct liability claim arising out of a premises-owner's own negligence."   *Thomas*, 933 So. 2d at 852 (citing *Sandbom v. BASF Wyandotte, Corp.*, 674 So. 2d 349, 557 (La. App. 1 Cir. 1996)).   Plaintiffs contend that even if the independent-contractor defense prevents them from holding Vulcan vicariously liable for Cortez's injuries, Vulcan is still directly liable for its own negligence.[61]   In response, Vulcan asserts that as a premises owner, it cannot be held directly liable for its alleged negligence because it did not owe a duty to protect Cortez, an independent contractor's employee, from risks inherent to his job.[62]

---

[61]    R. Doc. 653 at 14-15.
[62]    R. Doc. 433-1 at 13.

"In general, a premises owner has a duty of exercising reasonable care for the safety of persons on its premises and a duty of not exposing such persons to unreasonable risks of injury or harm." *Id.*  A premises owner's "knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk." *Watts v. Ga.-Pac. Corp.*, 135 So. 3d 53, 59-60 (La. App. 1 Cir. 2013).  A premises owner's duty "extends to employees of independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment." *Id.*  But this duty "does not extend so far as to require the [premises owner] to intervene in and correct the work practices selected by an independent contractor." *Thomas*, 2000 WL 1528082, at *2 (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 551 (5th Cir. 1987)).  It similarly does not extend as far as to require a principal to protect its independent contractors' employees from dangers inherent in their job. *Lopez*, 2020 WL 3668059, at *7 (citing *Perkins v. Gregory Mfg. Co.*, 671 So. 2d 1036, 1040 (La. App. 3 Cir. 1996)).  In sum, "while a premises owner may be directly liable for hazards inherent in the premises, the owner cannot be liable for hazards inherent in a contractor's job." *Id.*

Vulcan argues that any asbestos that Cortez alleges he was exposed to during his time at Vulcan was created by his job as a pipefitter.[63]  Vulcan points to Cortez's testimony that his work involved "[c]hanging out gaskets [and] replacing valves" and that this work "create[d] dust."[64]  Vulcan thus argues that Cortez's alleged exposure to asbestos came not from some hazard inherent in its plant, but instead from a hazard inherent in Cortez's job of replacing gaskets and old insulation.[65]  Defendant cites two district court cases that both held that a premises owner does not have a duty to an independent contractor's employee under a theory of direct liability when there is evidence that the hazard "resulted from the tools, equipment, and material supplied by the independent contractor and accordingly was a risk inherent in [plaintiff's] job as a welder and pipefitter." *See Lopez*, 2020 WL 3668059, at *7 (finding that "the evidence indicates that any asbestos exposure suffered by [plaintiff] while working on Exxon platforms resulted from tools, equipment, and materials" supplied by the independent contractor, who not only supplied the materials necessary for the project, but "also supervised the manner in which the work was performed," and thus any asbestos exposure was "inherently related to the job [plaintiff] was hired by

---

[63]    R. Doc. 433-1 at 14.
[64]    R. Doc. 433-4 at 7-8 (Deposition of Callen Cortez at 194:23-195:8).
[65]    R. Doc. 433-1 at 14-15.

[the independent contractor] to perform"); *Roach v. Air Liquids Am.*, No. 12-3165, 2016 WL 1453074, at *4 (W.D. La. Apr. 11, 2016) ("In the instant case, the hazard was not inherent in defendant's premises; the airborne silica which was temporary in nature and transported to the facility by plaintiff's employer and/or supplier.").

The Court finds that defendant is not entitled to summary judgment on the duty issue.  First, as this Court observed in *Venezia v. ConocoPhillips Co.*, "[b]oth the Fifth Circuit and this Court have found summary judgment to platform owners to be unwarranted when a question of fact exists as to whether the owner created the hazard that resulted in the plaintiff's injury." *See* No. 12-2168, 2014 WL 107962, at *5 (E.D. La. Jan. 9, 2014) (collecting cases); *see also Thomas*, 933 So. 2d at 856-57 (affirming the jury's verdict that defendant "breached its duty as a premises owner" by exposing employees of an independent contractor to asbestos, "to the extent [that defendant] specified the use of asbestos containing products"); *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-366, 2015 WL 6758258, at *19 (E.D. La. Nov. 5, 2015) ("Although duty is a question of law, the Court finds that opposing parties have proffered sufficient evidence of a genuine issue of material fact that precludes summary judgment on whether [defendant] created a hazardous situation . . . and therefore was

independently negligent."). Here, there is evidence in the record that Cortez was exposed to asbestos because of Vulcan's actions in specifying the use of asbestos-containing gaskets and insulation, and providing asbestos gaskets to pipefitters like Cortez.[66]

Further, there is evidence that Vulcan had knowledge of the risks of asbestos exposure during the relevant time period. Defendant's corporate representative testified that the company was aware of the hazards of asbestos in 1957, and was involved in the 1970s and 1980s in approving protective measures for workers.[67] Based on this testimony, it is reasonable to infer that Vulcan knew, or should have known, about the dangers of asbestos exposure, and thus had a duty to protect pipefitters that were exposed to asbestos at its facility. *See Watts*, 135 So. 3d at 59-60 (noting that either actual or constructive knowledge of a risk "gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk").

Finally, there is an issue of material fact as to whether Vulcan retained control over the work performed by pipefitters, and thus owed them a duty of care. *See Smith v. Union Carbide Corp.*, No. 13-6323, 2014 WL 4930457,

---

[66]    R. Doc. 653-13 at 14 (Deposition testimony of Rodney Gremillion at 68:6-16).

[67]    *Id.* at 10 (Deposition of Rodney Gremillion at 96:3-13).

at *2 (E.D. La. Oct. 1, 2014) (noting that although a principal owes no duty to its independent contractor's employees "absent a showing that the principal's conduct created the risk or the principal retained control over the contractor's employees," plaintiff had "presented a genuine issue of material fact as to whether Defendants breached the independent duty they owed to [plaintiff]").  As previously discussed, Vulcan's corporate representative testified that Vulcan provided pipefitters with written guidelines on how to handle asbestos-containing materials, and then supervised the manner in which the work was performed.[68]

In light of the record evidence raising issues of fact as to whether Cortez was exposed to asbestos because of the risks created by Vulcan, while doing work that was controlled by Vulcan, and despite Vulcan's knowledge about the risks associated with asbestos exposure, the Court denies defendant's motion for summary judgment on the no-duty argument.  In sum, defendant's motion for summary judgment on plaintiffs' negligence claims under a theory of direct or vicarious liability are denied.

---

[68]   R. Doc. 653-13 at 18-19 (Deposition of Rodney Gremillion at 95:22-96:2).

### C.    Strict-Liability Claims

Defendant also moves for summary judgment on plaintiffs' strict-liability claims, arguing that plaintiffs cannot to show that Cortez's injuries were caused by a defect on Vulcan's premises.[69]   In cases involving long-latency occupational diseases, such as mesothelioma, the Court must apply the law that was in effect at the time of the exposure.  *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1066 (La. 1992).   Accordingly, the Court looks to the language of Louisiana Civil Code article 2317, which, at the time of the exposure at issue, imposed strict liability for damage caused by "things which we have in our custody."  La. Civ. Code art. 2317.  To establish strict liability under this version of article 2317, a plaintiff must prove that: "(1) the thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by this defect."  *Migliori v. Willows Apartments*, 727 So.2d 1258, 1260 (La. App. 4 Cir. 1999).

Here, the parties dispute the first and second elements:[70] whether Vulcan had care, custody, and control of the asbestos, and whether asbestos

---

[69]    R. Doc. 433-1 at 15-16.

[70]    The third element—causation—was previously addressed in Part III (A).

constitutes a defect under article 2317.[71]  "Custody" in this context means

"supervision and control." *Ainsworth*, 829 F.2d at 551.  Ownership creates

a presumption of custody that may be rebutted "by showing that the owner

(1) did not receive a substantial benefit from ownership nor (2) had any

control or authority over the [object]."  *Royer v. Citgo Pet. Corp.*, 53 F.3d

116, 119 (5th Cir. 1995).  Defendant asserts that because it did not have

control over Cortez's work activities that allegedly resulted in his exposure to

asbestos, it did not have care, custody, or control over the asbestos.[72]  In

support of its argument, defendant points to *Lopez v. McDermott*, in which

the court granted defendant's motion for summary judgment on plaintiff's

strict-liability claims, finding that the plaintiff had failed to point to evidence

that the premises-owner defendant had custody of the asbestos.  2020 WL

3668059, at *8.  In *Lopez*, the court held that although "[a]lthough asbestos

may have been present in materials, equipment, and tools located on

[defendant's] platforms, and that asbestos may have been disturbed," the

record reflected that it was defendant's independent contractor "who

provided the tools, equipment, and materials, oversaw the operation, and

gave instructions to welders and pipefitters."  *Id.*  Defendant also points to

---

[71]    R. Doc. 433-1 at 15-17; R. Doc. 836 at 8.

[72]    R. Doc. 836 at 8.

*Smith v. Union Carbide Corp.*, in which a court similarly granted summary judgment on plaintiff's strict-liability claims on the grounds that plaintiff had not produced evidence that defendants had custody of the asbestos while it was being installed in their facility.  No. 13-6323, 2014 WL 4930457, at *6 (E.D. La. Oct. 1, 2014).

But *Lopez* and *Smith* are both distinguishable from this case.  As previously discussed, plaintiffs have presented evidence that Vulcan "provided" the asbestos-containing materials, "oversaw the operation," and "gave instructions" to pipefitters on asbestos removal procedures. *Cf. Lopez*, 2020 WL 3668059, at *8.  And unlike in *Smith* where the court found that defendants did not have custody of the asbestos used in constructing their plant "until after [the asbestos] was installed and put into service at their facilities," Cortez was allegedly exposed to asbestos that was already in use on Vulcan's premises.[73] *Cf.* 2014 WL 4930457, at *6.  Accordingly, unlike the plaintiffs in *Lopez* and *Smith*, plaintiffs here have pointed to evidence

---

[73]   *See* R. Doc. 653-13 at 8-10 (Deposition of Rodney Gremillion at 53:1-55:7) (testifying that several facilities within the Vulcan plant were initially constructed during the 1970s with asbestos-containing insulation, and that throughout the 1980s many of those facilities' "lines and equipment" still utilized asbestos insulation).

showing that Vulcan had custody of the asbestos for purposes of strict liability.

Vulcan also asserts that because Cortez's alleged exposure to asbestos dust at Vulcan was a temporary condition that was created by Cortez's work methods, it does not constitute a defect under article 2317.[74]  "A defect for the purposes of article 2317 is a flaw or condition of relative permanence inherent in the thing as one of its qualities."  *Crane v. Exxon Corp., U.S.A.*, 613 So. 2d 214, 219 (La. App. 1 Cir. 1992).  And although a "temporary condition may constitute a hazard, . . . it does not constitute a defect as contemplated by article 2317."  *Dauzat v. Thompson Const. Co.*, 839 So. 2d 319, 323 (La. App. 5 Cir. 2003) (holding that a hole in a concrete slab was a "temporary condition" and thus not a defect under article 2317).

The parties dispute what the "thing that caused the damage" is for purposes of strict liability.  Plaintiffs assert that "the thing in question is the asbestos,"[75] whereas defendant contends that the unreasonably dangerous thing is respirable asbestos-fibers released into Vulcan's facility.[76]  Vulcan argues that under Louisiana law, asbestos itself is not considered defective, and thus the unreasonably dangerous condition here must be asbestos dust.

---

[74]    R. Doc. 433-1 at 16-17.

[75]    R. Doc. 653 at 23.

[76]    R. Doc. 836 at 7.

This, they contend is only a temporary condition and therefore cannot be a "defect" for purposes of strict liability.[77]

Both parties assert that the *Smith* decision supports their argument. In *Smith*, the court noted that it was "unclear whether the 'thing' in question" was defendants' premises generally or the asbestos used in defendants' facility more specifically. *Smith*, 2014 WL 4930457, at *6. The court proceeded to hold that if "the thing in question is the asbestos" that plaintiff's strict-liability claims failed because "defendants did not have custody of the asbestos at the time of [plaintiff's] exposure." *Id.* On the other hand, the court noted that if "the thing in question is the premises itself," plaintiff's exposure to asbestos dust during the construction of the premises "was temporary in nature," and thus did "not constitute a defect in satisfaction of the second element of a strict liability claim under Article 2317." *Id.* at *7.

Here, unlike in *Smith*, the Court has found a question of material fact as to Vulcan's custody over the asbestos-containing materials, and therefore must determine whether asbestos is a defect for purposes of strict liability. Because the *Smith* court never had to answer this question, defendant's reliance on it for its temporary condition argument is misplaced. Notably, in assuming that the thing in question was the premises itself, the *Smith* court

---

[77]    *Id.*

explained that the "defect in asbestos is not temporary; it is the dusty condition during construction of Defendants' premises that was temporary," and therefore sought to distinguish the case from a Louisiana court of appeals case where "the 'thing' in question was the asbestos itself . . . not the premises on which the asbestos exposure occurred." *Id.* (citing *Watts*, 135 So. 3d at 53).

Defendant asserts that asbestos itself is not unreasonably dangerous under Louisiana law. In support of its argument, Vulcan relies on *Palermo v. Port of New Orleans*, 933 So. 2d 168, 180 (La. App. 4 Cir. 2006), in which the court held that a boiler insulated with asbestos did not constitute a vice or defect absent evidence that asbestos was disturbed. *Id.* at 179 (noting that "it was undisputed that the boilers were inactive during the time period in question" and that there was "no evidence that [plaintiff] ever worked on or near the boilers, as their jobs did not include repairing pipes"). But here, unlike in *Palermo*, there is evidence that the asbestos present on defendant's premises was disturbed. In fact, Cortez explicitly stated in his testimony that when he was changing out gaskets and replacing valves he had to "disturb" the asbestos-containing insulation.[78] Further, there is evidence that it was Vulcan's direction to pipefitters to replace the gaskets which created the

---

[78]   R. Doc. 433-4 at 7 (Deposition of Callen Cortez at 194:1-8).

disturbance.  The Court thus rejects defendant's assertion that asbestos itself cannot be considered a defect, and notes that Louisiana courts have held that asbestos is unreasonably dangerous in cases with similar facts to the present case.  For example, in *Watts*, a Louisiana appeals court concluded that there was "a reasonable factual basis" to support the trial court's finding that Dow was liable under article 2317 based on the evidence that the decedent worked at Dow's plant, "inhaled significant quantities of asbestos . . . on Dow's premises," and that "*Dow owned the asbestos, which was unreasonably dangerous.*" *See Watts*, 135 So. 3d at 62 (emphasis added).

Thus, plaintiffs have raised an issue of fact as to whether the asbestos-containing gaskets and insulation on Vulcan's premises were a "thing [that] had a vice or defect that created an unreasonable risk of harm."  A characteristic of asbestos that makes it unreasonably harmful is that when it is disturbed, its fibers can be inhaled by workers causing injury.  *See id.* at 62 (noting that there "is really no dispute . . . that asbestos is a substance that creates an unreasonable risk of harm when inhaled").  Here, plaintiffs have produced evidence that Vulcan required workers to use asbestos-containing products, and to use them in ways that would disturb the asbestos, thereby

40

activating its dangerous characteristics.[79]   Defendant seeks to avoid this conclusion by noting that it required pipefitters to use a solvent when removing gaskets to reduce dust, and that it therefore "cannot be liable for th[e] unsafe work practices performed by an outside contractor."[80]  But given the evidence in the record that Vulcan required its contractors to follow its asbestos removal procedure, and that Vulcan representatives oversaw that work, there is at least a dispute of material fact as to Vulcan's involvement in the unsafe practices that Cortez alleges he was exposed to in his deposition.

Accordingly, because plaintiffs have raised issue of material fact as to each element of their strict-liability claims, defendant's motion for summary judgment on these claims is denied.

---

[79]   R. Doc. 653-13 at 14, 17 (Deposition of Rodney Gremillion at 68:5-25; 71:1-4).

[80]   R. Doc. 836 at 7.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for summary judgment.[81]

New Orleans, Louisiana, this ___3rd___ day of August, 2022.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[81]     R. Doc. 433.