UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALLEN J. CORTEZ, ET AL.                               CIVIL ACTION

VERSUS                                                 NO. 20-2389

LAMORAK INSURANCE COMPANY,                             SECTION "R" (1)
ET AL.

**ORDER AND REASONS**

Before the Court is defendant Hopeman Brothers, Inc.'s ("Hopeman")
motion for partial summary judgment, seeking summary judgement on the
issue of whether Wayne Manufacturing Corp. ("Wayne") was the alter ego of
Hopeman, as well as dismissal of plaintiffs' intentional tort claims.[1]
Plaintiffs oppose the motion.[2]  For the following reasons, the Court grants
defendant's motion.

I.      **BACKGROUND**

This is an asbestos exposure case.  Plaintiffs allege that Callen Cortez
contracted mesothelioma as a result of exposure to asbestos over the course

---

[1]      R. Doc. 498.
[2]      R. Doc. 667.

of his career,[3] as well as take-home exposure resulting from his father's[4] and brothers' work when the family shared a home.[5]

Hopeman is a Delaware corporation[6] that performed joiner work at Avondale Shipyards during the period in which Callen Cortez and his brother, Daniel Cortez, worked at Avondale.[7]  Wayne, a now-dissolved Virginia corporation,[8] was a wholly-owned subsidiary of Hopeman during the relevant period.[9]  As a service to Hopeman, Wayne regularly glued Micarta laminate manufactured by Westinghouse to Marinite boards manufactured by Johns-Manville, and sent the resulting composite wallboards to Hopeman at Avondale for use on vessels.[10]

Callen Cortez lived in his family home in Kraemer, Louisiana, starting from his birth in 1951, until he married and moved out in May of 1972.[11] Daniel Cortez also lived in the home.  Daniel began working at the Avondale

---

[3]     R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).

[4]     *Id.* at 7-9 (Complaint ¶¶ 11-16).

[5]     R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

[6]     R. Doc. 498-14 at 1 (Hopeman Articles of Incorporation).

[7]     R. Doc. 498-1 at 2 (Hopeman's Statement of Uncontested Material Facts ¶ 5).

[8]     R. Doc. 498-15 (Wayne Articles of Incorporation).

[9]     R. Doc. 498-1 at 2 (Hopeman's Statement of Uncontested Material Facts ¶ 17).

[10]    R. Doc. 498-1 at 3 (Hopeman's Statement of Uncontested Material Facts ¶ 10).

[11]    R. Doc. 499-4 at 17-18 (Discovery Deposition of Callen Cortez at 100:11- 101:8).

Shipyards on August 29, 1967,[12] and lived with Callen Cortez until Daniel moved out in July of 1968.[13]   Daniel testified that he was exposed to asbestos at Avondale, when he worked around Hopeman employees while they were cutting asbestos-containing wallboards.[14]   He further testified that fibers released from the wallboards likely got onto his work clothes.[15]   He also testified that, after work each day, he came home, put up his clothes, and, with Callen Cortez's help, beat the fibers off his clothes.[16]

From March 6, 1969 until May 31, 1974, Callen Cortez worked for Avondale as a welder and tacker helper, primarily at Avondale's Westwego Yard.[17]   Cortez testified that when he worked at Avondale, he was exposed to asbestos dust generated by Hopeman employees while they were cutting wallboards in his vicinity.[18]

Cortez was diagnosed with mesothelioma on June 2, 2020.[19]   On July 1, 2020, he sued Hopeman and approximately thirty-four other defendants, including former employers, manufacturers, and insurance companies.[20]   In

---

[12]   R. Doc. 499-6 at 13 (Deposition of Daniel Cortez at 12:3-13).
[13]   *Id.* at 12-13 (Deposition of Daniel Cortez at 11:21-12:2).
[14]   *Id.* at 58-63 (Deposition of Daniel Cortez at 57:23-62:18).
[15]   *Id.* at 37 (Deposition of Daniel Cortez at 36:6-13).
[16]   *Id.* at 18-19 (Deposition of Daniel Cortez at 17:16-18:17).
[17]   *Id.* at 26-27 (Discovery Deposition of Callen Cortez at 108:25-109:9).
[18]   *Id.* at 44-45 (Discovery Deposition of Callen Cortez at 43:18-44:8).
[19]   R. Doc. 1-1 at 10 (Complaint ¶ 17).
[20]   *Id.* at 1-3, 11-13 (Complaint ¶¶ 1-2, 25-29).

his petition, plaintiff brought various negligence, products liability, and intentional-tort claims against defendants.[21]  He additionally asserted that Wayne was the alter ego of Hopeman during the relevant period.[22]

Callen Cortez passed away on May 26, 2022.[23]  Cortez's surviving spouse and children filed an amended complaint on June 6, 2022,[24] substituting themselves as plaintiffs in a survival action and seeking additional damages arising from Cortez's alleged wrongful death.[25]

Hopeman is sued in its capacity as a supplier of asbestos-containing products.[26]  Hopeman is also sued as the alleged "alter ego" of Wayne.[27] Hopeman now moves for partial summary judgment, contending that plaintiffs' intentional-tort and alter ego liability claims must be dismissed.[28] Plaintiffs oppose the motion.[29]  The Court considers the motion below.

## II.   LEGAL STANDARD

---

[21]   R. Doc. 1-1.
[22]   *Id*. at 43 (Complaint ¶ 90).
[23]   R. Doc. 1026 at 2 (Fourth Amended Complaint ¶ 111).
[24]   *Id*.
[25]   *Id*. at 2-3 (Fourth Amended Complaint ¶¶ 111-114).
[26]   R. Doc. 1-1 at 11-12 (Complaint ¶ 25-29).
[27]   R. Doc. 1-1 at 12 (Complaint ¶ 27).
[28]   R. Doc. 498.
[29]   R. Doc. 667.

4

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence

which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

### A.   Intentional-Tort Claims

As an initial matter, the Court rejects plaintiffs' contention that summary judgment is inappropriate here because plaintiffs' intentional-tort claims turn on issues of fact regarding defendants' knowledge and intent.[30] The Fifth Circuit has explained that although "summary judgment is rarely proper when an issue of intent is involved, the presence of an intent issue does not automatically preclude summary judgment; the case must be evaluated like any other to determine whether a genuine issue of material fact exists." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("The Fifth Circuit consistently has affirmed summary judgment in cases where a plaintiff fails to present any evidence of fraud or where no genuine issue of material fact remains regarding the fraud claim."). As long as the court is "vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party," summary

---

[30]    R. Doc. 667 at 2-3.

judgment is appropriate in intent cases, especially when the "circumstantial evidence is so minimal and the legal standard so daunting." *Int'l Shortstop*, 939 F.2d at 1266; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164, at *3 n.1 (E.D. La. Mar. 7, 2014) ("Summary judgment is especially appropriate where, as here, Plaintiffs face such a daunting burden to prove that [the decedent's] mesothelioma was substantially certain to result from Defendants' conduct."). Thus, having determined that courts are not precluded from granting summary judgment on issues of intent, the Court proceeds to evaluate whether plaintiffs' intentional-tort claims survive summary judgment.

Plaintiffs assert that Hopeman committed intentional torts because it was well aware of the hazards of asbestos, and what precautionary measures should be taken for people who work with and around their asbestos-containing products, but failed to implement these precautionary measures and instead concealed the dangers of asbestos.[31] To prove an intentional tort, plaintiffs must show that each defendant either "(1) consciously desire[ed] the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) [knew] that the result [was] substantially certain to follow from his conduct, whatever his desire may [have been] as to that

---

[31]   R. Doc. 667 at 14.

result." *Batiste v. Bayou Steel Corp.*, 45 So. 3d 167, 168 (La. 2010).  In other words, plaintiffs must show that Hopeman either consciously desired that Callen Cortez contract mesothelioma, or knew that the result was "substantially certain to follow from [their] conduct."  *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005), *writ denied*, 925 So. 2d 538 (2006) (internal citations omitted).

Here, plaintiffs' intentional-tort claims are rooted in the second prong of the analysis, *i.e.*, that Cortez's mesothelioma was "substantially certain" to follow from defendant's conduct.[32]   Substantial certainty "requires more than a reasonable probability that an injury will occur," and plaintiffs must prove that Callen Cortez's contracting mesothelioma was "inevitable or incapable of failing."  *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999) (internal citations omitted).  It is not sufficient for plaintiffs to show that defendants had knowledge that their practices were dangerous and created a high probability that someone would eventually be injured.  *Id.* Indeed, a defendant's "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts." *Id.* at 214.  Similarly, a defendant's "mere knowledge and appreciation of a

---

[32]    *Id.* at 14-15.

risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Id.* at 213 (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993)).

Other sections of this Court have considered similar intentional-tort claims arising out of asbestos exposure.  In a case before Judge Carl Barbier, plaintiffs argued that Avondale was "aware of the risks associated with asbestos and with the unsafe working conditions at Avondale," and that it "failed to remedy those conditions despite [its] knowledge of the risks." *Vedros*, 2014 WL 906164, at *3.  Judge Barbier dismissed the claim on summary judgment.  He found that, "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [decedent] would contract mesothelioma," plaintiffs had not submitted evidence permitting a reasonable jury to "conclude that [decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from Defendants' conduct." *Id.*  Similarly, in a case before Judge Ivan Lemelle, plaintiffs brought intentional-tort claims against Hopeman, alleging that defendant both knew of the hazards of asbestos, and that decedent's disease "was substantially certain to occur." *Becnel v. Lamorak*

*Ins. Co.*, No. 19-14536, 2022 WL 2116896, at *3 (E.D. La. June 13, 2022). The court dismissed plaintiffs' intentional-tort claims, finding that plaintiffs' reliance on evidence that defendant exposed the decedent to asbestos and was aware at the time of the hazards of asbestos was insufficient to raise a material issue of fact for an intentional-tort claim. *Id.* at *4.

Here, plaintiffs assert that Hopeman "knew [that] asbestos would cause disease, . . . yet chose to conceal these hazards" and proceeded to expose workers, such as Callen Cortez, to asbestos.[33]  Plaintiffs contend that defendant had knowledge about the hazards of asbestos based on government regulations, such as the Louisiana Worker's Compensation Act,[34] the Walsh Healey Act,[35] and the Louisiana Sanitary Code,[36] which warned about the dangers of asbestos, and were promulgated before Callen Cortez began his career in 1968.[37]  Plaintiffs also point to deposition testimony from a corporate representative of Hopeman that shows defendant had knowledge of the hazards of asbestos before Callen Cortez

---

[33]  *Id.*

[34]  R. Doc. 667-3 at 1-2 (listing "asbestosis" as an occupational disease).

[35]  R. Doc. 667-4 at 26-27 (stating that the "allowable concentration[]" for asbestos dust is 5 million particle per cubic foot, and listing methods that "should be used to control harmful dust, mists, fumes, gases, and other atmospheric impurities").

[36]  R. Doc. 667-5 at 5 (adopting a 5 million particle per cubic foot standard).

[37]  R. Doc. 667 at 4-5.

began his career.[38]   Plaintiffs assert that this evidence creates an issue of material fact as to whether Hopeman  knew it was substantially certain that individuals working around its asbestos-containing products would contract asbestos-related diseases as a result of Hopeman's actions or inactions.[39]

Plaintiffs' evidence falls far short of what is necessary to raise a material issue for an intentional-tort claim.  As noted above, a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."  *Reeves*, 731 So. 2d at 213 (citations omitted).  Likewise, the government regulations attached to plaintiffs' opposition show, at best, that defendants had knowledge about the risks of asbestos, and thus may have believed that "someone may, or even probably will, eventually get hurt" if additional precautions are not taken.  *Id.* at 212.  But such knowledge, and the associated failure to take precautionary measures based on that knowledge, "do[] not rise to the level of an intentional act, but instead falls within the range of negligent acts."  *Id.*; *see also Evans v. Int'l Paper Co.*, No. 10-1916, 2011 WL 1898912, at *6 (W.D. La. Mar. 24, 2011), *report and recommendation adopted*, No. 10-1916, 2011 WL 1930679 (W.D. La. May 19,

---

[38]   R. Doc. 667-6 at 3 (Deposition of Bertram Hopeman at 20:1-21).
[39]   R. Doc. 667 at 14-15.

2011) ("The court emphasizes that neither the failure to provide safety equipment, nor the failure to adhere to OSHA safety regulations constitute 'intentional acts.'" (citing *Bridges v. Carl E. Woodward, Inc.*, 663 So. 2d 458, 463 (La. App. 4 Cir. 1995))).

Further, the evidence produced by plaintiffs in the form of testimony from defendant's corporate representative about his knowledge of the risks associated with asbestos does not suggest that defendant intended to harm Cortez, or that his mesothelioma was "inevitable or incapable of failing." *Id.*; *see also Zimko*, 905 So. 2d at 479 (holding that although members of the defendant's management team testified that "they knew that asbestos presented health hazards," there was "no evidence that anyone associated with [defendant] had any intent to injure [plaintiff]" or that "management knew that [plaintiff's] injury was substantially certain to follow from their conduct or that his injury was inevitable").  In fact, as other courts have recognized, "it is [not] common human experience . . . that mesothelioma is known certainly or inevitably to follow from asbestos exposure." *Vedros*, 2014 WL 906164, at *3 (quoting *Zimko*, 905 So. 2d at 479).

Plaintiffs cite several Louisiana cases that they contend support their position that summary judgment is premature as to their intentional-tort

claims.[40]  But the cases plaintiffs rely on are all distinguishable from the facts involved here.  For example, plaintiffs cite cases in which employees were ordered to work in conditions that employers were substantially certain would injure the exposed employees.  *See, e.g.*, *Belgard v. Am. Freightways, Inc.*, 755 So. 2d 982, 986-87 (La. App. 3rd Cir. 1999) (reversing the entry of summary judgment in favor of the employer when the employee suffered injuries after being ordered into an "area of toxic fumes that ha[d] just been evacuated to protect other workers"); *Holmes v. Pottharst*, 557 So. 2d 1024, 1026 (La. App. 4 Cir. 1990) (finding that the affidavit of the decedent's co-worker raised a genuine issue of fact as to whether defendants knew that the deceased was wearing inadequate protective clothing, when it was established that defendants knew that "sandblasting while wearing inadequate protective clothing . . . would be substantially certain to harm him").

Here, plaintiffs have not produced any evidence that Hopeman knew Callen Cortez's mesothelioma was an inevitable result of his asbestos exposure.  Such evidence is required to withstand a motion for summary judgment.  Other cases plaintiffs rely on are likewise inapposite.  In *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir. 1985),

---

[40]     R. Doc. 667 at 10-15.

plaintiff brought product-liability claims against manufacturers of respiratory safety equipment, who in turn brought a third-party action against various shipyards for "intentionally caus[ing] the medical disorders" of plaintiff, alleging that the shipyards "were aware as early as 1968 that plaintiff was suffering from a lung disorder but continued to expose him to said dangerous substances knowing that he was substantially certain to further damage his lungs." *Id.* at 991 (intentional quotations omitted).  The Fifth Circuit affirmed the trial court's denial of defendants' motion to dismiss the intentional-tort claim under the then lenient standard announced by *Conley v. Gibson*. *Compare id.* (stating that although the manufactures' complaint simply alleged that defendants knew it was "substantially certain" that their actions would cause further harm to plaintiff, the court was not satisfied "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (stating that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  In finding that the third-party plaintiff stated

a cause of action, the Fifth Circuit did not change the elements of an intentional-tort claim or dispense with the need for proof of those elements. *Ducre*, 752 F.2d at 991.

Similarly, in *DeBlanc v. International Marine Carries, Inc.*, 748 So. 2d 649 (La. App. 4 Cir. 1999), plaintiff's complaint alleged that defendants instructed him to use a hazardous substance, despite knowing the risks involved, and that plaintiff was "substantially certain to be injured by such unprotected exposure to asbestos." *Id.* at 652. Defendants brought an exception of no cause of action, asserting that plaintiff "fails to offer any factual evidence in support" of his intentional-tort allegation. *Id.* at 654. The court rejected defendants' argument, pointing out that "[a] test of the sufficiency of any available evidence may be made through a motion for summary judgment." *Id.*; *see also Hirst v. Thieneman*, 901 So. 2d 578, 582 (La. App. 4 Cir. 2005) (noting that "[i]nasmuch as [*DeBlanc*] concerned an exception of no cause of action, as opposed to a motion for summary judgment as is at issue herein, the case has little value as precedent . . . [and] cannot be read to have lowered the standards with regard to an intentional tort").

In sum, the Court finds that plaintiffs' claims against defendant "lie[] in the realm of negligence, not in the realm of intentional tort." *Vedros*, 2014

WL 906164, at *3 (quoting *Zimko*, 905 So. 2dat 479).  For these reasons, defendant is entitled to summary judgment dismissing plaintiffs' intentional-tort claims.

### B.    Alter Ego Claims

Defendants also move for summary judgment on plaintiffs' claims against Hopeman as the alleged alter ego of Wayne.[41]  Plaintiffs ask the Court to disregard the corporate form and find that Wayne was the alter ego of Hopeman, or alternatively, that the two were a single business enterprise.[42]

In Louisiana, "[c]orporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the debts of the corporation." *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (citing *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La. 1991)), *reh'g or reh'g en banc denied*, 232 F.3d 212 (5th Cir. 2000).  "The fundamental purpose of the corporate form is to promote capital by enabling investors to make capital contributions to corporations while insulating separate corporate and personal asset from the risks inherent in business." *Bujol v. Entergy Servs.,*

---

[41]    R. Doc. 498-2 at 8-15.

[42]    R. Doc. 667 at 16-18.

*Inc.*, 922 So. 2d 1113, 1128 (La. 2004) (citing *Smith v. Cotton's Fleet Serv., Inc.*, 500 So.2d 759, 762 (La. 1987)).   This limited "shareholder liability shield encourages business investments in high-risk areas by enabling investors who utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business." *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168 (La. 1991). Further, the same principal of limited shareholder liability "applies where one corporation wholly owns another." *Bujol*, 922 So. 2d at 1127.   Courts may disregard the concept of corporate separateness, or "pierce the corporate veil," in rare instances, such as when the shield of the corporate form is used to "defeat public convenience, justify wrong, protect fraud, or defend crime." *Smith*, 500 So.2d at 762.   Indeed, "Louisiana courts have declared that the strong policy of Louisiana is to favor the recognition of the corporation's separate existence, so that veil-piercing is an extraordinary remedy, to be granted only rarely." *Bujol*, 922 So. 2d at 1127 (quoting Glenn G. Morris and Wendell H. Holmes, 8 *Louisiana Civil Law Treatise*, *Business Organizations* § 32.02 (1999)).

The "alter ego" and "single business enterprise" ("SBE") theories offer two different avenues to "pierce the corporate veil."   Under the alter ego theory, the factors Louisiana courts consider "include, but are not limited to:

1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Riggins*, 590 So. 2d at 1168.  In *Riggins*, the court explained that the purpose behind the alter ego doctrine is to "protect a creditor in his dealings with a shareholder who fails to distinguish, in transactions, between the corporation and his identity as a shareholder."  *Id.* at 1065.  Here, plaintiffs do not point to evidence supporting any of the above factors, and simply restate the general rule that the corporate form may be disregarded in some instances.[43]  As plaintiffs have not produced evidence supporting even a single factor that Louisiana courts look to when analyzing whether a corporation is the alter ego of another business, these assertions fail as a matter of law.

In addition to mentioning the standard alter ego theory, plaintiffs cite *Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. App. 1 Cir. 1991), and ask the Court to deem Hopeman and Wayne a single business enterprise under the eighteen-factor test laid out in that case.[44]  The *Green* court, fashioning

---

43   R. Doc. 667 at 17.
44   *Id.* at 18.

a new method of piercing the corporate veil, held that in determining whether affiliated entities constitute a SBE, courts are to consider the following eighteen factors:

(1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

(2) common directors or officers;

(3) unified administrative control of corporations whose business functions are similar or supplementary;

(4) directors and officers of one corporation act independently in the interest of that corporation;

(5) corporation financing another corporation;

(6) inadequate capitalization ("thin incorporation");

(7) corporation causing the incorporation of another affiliated corporation;

(8) corporation paying the salaries and other expenses or losses of another corporation;

(9) receiving no business other than that given to it by its affiliated corporations;

(10) corporation using the property of another corporation as its own;

(11) noncompliance with corporate formalities;

(12) common employees;

(13) services rendered by the employees of one corporation on behalf of another corporation;

(14) common offices;

(15) centralized accounting;

(16) undocumented transfers of funds between corporations;

(17) unclear allocation of profits and losses between corporations; and

(18) excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 257-58.  The court explained that the factors are "illustrative and [are] not intended as an exhaustive list," and "[n]o one factor is dispositive."  *Id.* And "[t]he party asserting the single-business-enterprise theory must provide clear and convincing evidence that the corporations acted as a single business enterprise."  *Cole v. P.S. Fisheries*, No. 18-8929, 2019 WL 4415261, at *3 (E.D. La. Sept. 16, 2019) (citing *Miller v. Entergy Servs., Inc.*, 913 So. 2d 143, 148 (La. App. 4 Cir. 2005)).  The *Green* court reiterated that the purpose of disregarding corporate separateness is ultimately "to prevent fraud or to achieve equity."  577 So. 2d at 259.  In practice, *Green*'s eighteen-factor test makes principled application difficult.  It sets forth a laundry list of nonexclusive factors, including common business practices, and gives no guidance as to the weight to be assigned to them or whether any one or more of the factors must be present to find a SBE.  *See Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La.*, 690 F. Supp. 2d 435, 445 (E.D. La. 2010) (noting that the *Green* test is "difficult to apply, as it provides no guidance as to the weight to be given any of the eighteen factors or whether any, all or some of the factors must be present to find a SBE.").

21

Plaintiffs do not contest defendant's evidence that the companies were separately incorporated in different states at different times, that Wayne was primarily involved in the sheet metal fabrication, that the companies maintained separate accounting systems and bank accounts, that the companies filed separate tax returns, that the companies did not comingle funds, and that Wayne was profitable from its inception in 1922 to its dissolution in 1985.[45]  Rather, plaintiffs point to testimony of former Hopeman officers showing that: Wayne and Hopeman shared some officers;[46] the two businesses had the same address for a time;[47] Wayne primarily provided composite wallboards to Hopeman, and sold wallboards to customers other than Hopeman only when Hopeman performed joiner work for those customers;[48] and Wayne was a wholly-owned subsidiary of Hopeman at the relevant time.[49]  But "[u]nlike in the *Green* case . . . there is simply no wrongdoing or other extraordinary circumstances present in the

[45]  *See* R. Docs. 498-18 at 1 (Affidavit of Charles Johnson, Jr. ¶¶ 5-9) & 498-16 at 5 (Affidavit of John Baker ¶ 26).

[46]  R. Doc. 667-18 at 2-6 (Deposition of John Baker at 16:16-20:10).

[47]  R. Doc. 667-17 at 5 (Deposition of John Baker at 84:1-22).

[48]  R. Doc. 667-6 at 8 (Deposition of Bertram Hopeman at 151:2-26). Notably, the testimony offered by plaintiffs does not support an inference that Wayne had *no other business* besides that provided by Hopeman, which is a factor under *Green*.  The evidence plaintiffs point to is silent as to Wayne's other operations or lack thereof.

[49]  R. Doc. 667-17 at 4 (Deposition of John Baker at 80:10-15).

relationship between [Wayne] and [Hopeman] that justifies disregarding the law of Louisiana corporations." *Johnson v. BP Prod. N. Am., Inc.*, No. 14-541, 2014 WL 5410646, at *4 (La. App. 4 Cir. 2014), *writ denied*, 161 So. 3d 641 (La. 2015); *see also Spillman v. Gasco, Inc.*, 110 So. 3d 150, 159 (La. App. 2 Cir. 2012), *writ denied*, 99 So. 3d 652 (La. 2012) (rejecting SBE liability where "the case present[ed] none of the normal grounds for piercing the corporate veil"); *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So. 2d 192, 198-99 (La. App. 2 Cir. 2007) (reversing trial court's SBE finding when there was no evidence of "wrongdoing or other extraordinary circumstances" affecting the plaintiff's dealings with a subsidiary within an affiliated group); *Peyton Place, Condo. Assocs., Inc. v. Guastella*, 18 So.3d 132, 150 (La. App. 5 Cir. 2009) (applying traditional veil-piercing principles in rejecting a SBE claim).   Indeed, the Fifth Circuit has instructed that SBE veil-piercing is utilized "for the purpose of preventing fraud or achieving equity." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007).   Further, the *Green* factors present in this case[50] are "perfectly consistent with legitimate,

---

[50]   Plaintiffs also note that Wayne's non-real-estate assets were acquired by a wholly-owned subsidiary of Hopeman upon Wayne's liquidation in 1985. *See* R. Doc. 667 at 16.   Plaintiffs do not explain how this is relevant to the Court's analysis.   The record reflects documented transactions for the assets at issue, and that the acquiring subsidiary maintained a separate existence from Hopeman. R. Doc. 498-16 at 2, 5

efficient business operations." *Bona Fide Demolition & Recovery, LLC*, 690 F. Supp. 2d at 445 (citing James Dunne, *Taking the Entergy out of Louisiana's Single Business Enterprise Theory*, 69 La. L.R. 691, 695 (2009)); *see also Berger v. Columbia Broad. Sys., Inc.*, 453 F.2d 991, 995 (5th Cir. 1972) (noting that complete stock ownership and the presence of common officers are merely "business practices common to most parent-subsidiary relationships"); *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330-32 (5th Cir. 2011) (finding that a foreign corporation was not the alter ego of a Louisiana corporation when the two shared common officers); *Guastella*, 18 So. 3d at 150 (rejecting SBE claims where the record reflected that the defendants "conducted a large amount of business amongst themselves").

The two cases cited by plaintiffs that utilize the SBE theory both involved fraud or malfeasance. *See generally Green*, 577 So. 2d at 249; *Brown v. Automotive Cas. Ins. Co.*, 644 So. 2d 723, 728 (La. App. 1 Cir. 1994), *writ denied*, 648 So. 2d 932 (La. 1995). The other cases plaintiffs cite are inapposite. For example, plaintiffs cite *Lucey Manufacturing Corporation v. Oil City Iron Works*, 131 So. 57 (La. App. 2 Cir. 1930), a case

---

(Affidavit of John Baker ¶¶ 11-13, 26). Accordingly, this does not change the Court's conclusion.

involving an entity incorporated before the relevant laws on corporate liability were enacted.  *See Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1127 (La. 2004) ("The law has long been clear that a corporation is a legal entity distinct from its shareholders and the shareholders of a corporation organized after January 1, 1929 shall not be personally liable for any debt or liability of the corporation.").  Plaintiffs additionally cite *Teknika v. Satellite Earth*, 673 So. 2d 1129 (La. App. 3rd Cir. 1996), a case that did not apply the SBE theory and was limited to the issue of contacts for personal jurisdiction. *Id.*

The Court will not extend the SBE theory to the point that this exception swallows the general rule of limited corporate liability.  Set against the backdrop of Louisiana's strong policy in favor of recognizing corporate separateness, and the Louisiana Supreme Court's statement that veil piercing is an extraordinary remedy to be granted only rarely, it follows that veil-piercing theories must be applied cautiously.  *Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1127-28 (La. 2004).  *C.f.* Glenn G. Morris and Wendell H. Holmes, 8 *Louisiana Civil Law Treatise, Business Organizations* § 32:2 (2022) (noting that "in any ordinary sense almost all closely-held small business corporations are operated as the alter ego or instrumentality of their respective shareholders").  Accordingly, the weight of Louisiana authority

reveals that veil-piercing requires something more than mere control or affiliation.

In the absence of contrary guidance from Louisiana courts, the single business enterprise theory must fail here, where only a few of the *Green* factors are present, the factors at issue are all consistent with legitimate business practices, and plaintiffs have not pointed to evidence showing that any extraordinary circumstances, such as fraud or other wrongdoing, exist. Accordingly, the Court grants summary judgment on the issue of whether Wayne was the alter ego of Hopeman.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment.  Plaintiffs' claims for intentional-tort and alter ego liability are hereby DISMISSED.

New Orleans, Louisiana, this   10th   day of August, 2022.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE