UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALLEN J. CORTEZ, ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-2389 |
| LAMORAK INSURANCE COMPANY, ET AL. | SECTION "R" (1) |

# ORDER AND REASONS

Hopeman Brothers, Inc. and Liberty Mutual Insurance Co. (together, "Hopeman") move to strike the testimony of Gerald Baril, plaintiff's expert industrial hygienist, under Federal Rule of Evidence ("FRE") 702, 703, and 403, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[1] For the reasons that follow, the Court denies the motion.

## I. BACKGROUND

Callen Cortez, now deceased, sued Hopeman, among others, for asbestos exposures causing him to develop mesothelioma.[2] Plaintiffs' industrial hygienist, Gerald Baril, opined that plaintiff suffered paraoccupational, direct, and bystander exposure to asbestos products from Hopeman that significantly contributed to his risk of developing

[1] R. Doc. 491.
[2] R. Doc. 1-1 at 1-3, 11-13 (Complaint ¶¶ 1-2, 25-29).

mesothelioma.[3] Baril relies on testimony from Cortez's brothers, Daniel and Mitchell Cortez, that they worked around Hopeman's employees while the employees cut asbestos wallboard at Avondale Shipyards, as well as testimony from other Avondale employees that Hopeman's workers installed wallboard in living areas and galleys of ships at Avondale.[4] The testimony was that when Hopeman cut wallboards around the Cortez brothers, Hopeman exposed them to asbestos dust.[5] Baril also relied on Callen Cortez's testimony about his work around Hopeman's employees at Avondale, including that he worked next to Hopeman's employees while they cut asbestos wallboard in ships' galleys and living quarters.[6] Baril used six studies to determine the level of asbestos exposure Cortez experienced from Hopeman's cutting of wallboard.[7] The cited exposure levels ranged from 1.84 f/cc up to 112.2 f/cc. Baril then compared Cortez's exposures to current and historical occupational health standards for asbestos and found them to be well in excess of these standards and to present a significant risk of mesothelioma.[8]

---

3 *See generally* R. Doc. 491-7 (Baril Report).
4 *Id.* at 17-44.
5 *Id.* at 23-24, 27.
6 *Id.* at 33.
7 *Id.* at 43.
8 *Id.* at 44.

## II. DISCUSSION

Hopeman seeks to exclude Baril's testimony as unreliable and unhelpful. *See* Fed. R. Evid. 702 (requiring expert testimony to be reliable and helpful to the factfinder). Hopeman first contends that Baril did not reliably determine asbestos exposure levels.[9] This argument is without merit. Baril's methodology consisted of consulting scientific studies and literature that calculated asbestos exposure levels from activities like those identified by witnesses and comparing the resulting exposure levels to occupational standards establishing permissible exposure limits to asbestos. The law does not require plaintiffs to show the precise amount of a toxic substance to which they were exposed. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999). In *Curtis*, *supra*, the Fifth Circuit upheld an expert's opinion that relied, *inter alia*, on testimony about the work practices at the workplace at issue, including testimony that witnesses became soaked in the relevant toxic material when they performed certain tasks. *Id.* This is similar to the evidence Baril relied on here. Hopeman also contends that Baril simply assumes that every exposure above background is harmful. But Baril has not opined that exposures from Hopeman were harmful simply

---

[9] R. Doc. 491-1 at 6.

because they were above background. Rather, he concluded that they exceeded applicable safety standards. This argument is likewise without merit.

Hopeman's other argument, that Baril was unfamiliar with its operations or materials, also does not warrant exclusion of Baril's testimony. Baril's report discusses witness testimony that Hopeman's wallboard was made of Micarta and that Hopeman's workers cut the boards with skil saws, creating asbestos dust.[10] Baril relies on studies that evaluated asbestos fiber releases from cutting products with this material. Hopeman's arguments do not support a finding that Baril's opinion lacks a factual basis. Rather, these arguments are the proper subject of cross-examination.

Hopeman also argues that the Court should preclude plaintiffs from using a videotape of the Longo/Hatfield Micarta study at trial. This argument is moot, because plaintiffs stipulate that they will not attempt to use the video at trial.

To the extent that Hopeman attacks the Longo/Hatfield study itself, its arguments lack merit. For example, Hopeman argues that the study simulated workers who stood still during exposures, while Cortez simply walked by Hopeman's workers in passing. But the record reflects that Callen

---

10 R. Doc. 491-7 at (Baril Report).

Cortez also testified that he worked next to Hopeman's employees in ships' living quarters and galleys while they cut the dust-generating wallboards. Hopeman's argument does not warrant exclusion of this study. Hopeman also faults the Longo/Hatfield study because it uses a transmission electron microscopy ("TEM") method of measuring asbestos release, which Hopeman contends produces exaggerated results. But the study also uses the phase-contrast microscopy ("PCM") method, which Hopeman does not criticize. Baril relies only on the PCM test results in his report. For this reason, the use of the TEM method by Longo/Hatfield is not a basis to exclude Baril's testimony about the study, although this topic may be explored on cross-examination.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Hopeman and Liberty Mutual's motion to exclude or limit Gerard Baril's testimony.

New Orleans, Louisiana, this 23rd day of August, 2022.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE