UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALLEN J. CORTEZ, ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-2389 |
| LAMORAK INSURANCE COMPANY, ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants' omnibus motion *in limine*.[1] Plaintiffs oppose each of these motions.[2]

## I.  BACKGROUND

This is an asbestos exposure case. Plaintiffs allege that decedent Callen Cortez contracted mesothelioma as a result of exposure to asbestos over the course of his career,[3] as well as take-home exposure resulting from his father's and brothers' work when the family shared a home.[4] Defendants are sued in a variety

---

1   R. Doc. 929.
2   R. Doc. 942.
3   R. Doc. 1-1 at 3-6 (Complaint ¶¶ 3, 8).
4   R. Doc. 149 at 1-2 (Second Amended Complaint ¶¶ 94-95).

of capacities, including as manufacturers, premises owners, or employers allegedly responsible for Cortez's exposure to asbestos.[5]

Before the Court is defendants' omnibus motion *in limine*.[6]  Several of the motions in defendants' omnibus motion *in limine* have been withdrawn or resolved by agreement among the parties.  The Court considers the remaining motions below.

## II. DISCUSSION

### A. Motion *in limine* to Prohibit the Term "Asbestos Industry"

Defendants move to prohibit plaintiffs from characterizing defendants as "asbestos companies," or part of the "asbestos industry," on the grounds that such characterization is inaccurate, misleading, of no probative value, and prejudicial. Defendants state that they were never "in the business" of mining, milling, or manufacturing asbestos.  Plaintiffs contend that defendants were manufacturers and users of asbestos-containing products, which makes the reference to them as members of "the asbestos industry," accurate.

The Court agrees that use of the phrase "the asbestos industry" in reference to all of the defendants suggests that all the defendants were part of a monolithic

---

[5]     *See generally* R. Doc. 1-1.
[6]     R. Doc. 929.

industry devoted primarily to production and sale of asbestos. This is not accurate. Companies that used asbestos-containing products on their premises, for example, are not the same as a manufacturer or seller of asbestos. The Court grants the motion to the extent that plaintiffs seek to refer to defendants collectively as "the asbestos industry."

Plaintiffs argue that industry knowledge is relevant in this case. This is true. But it is up to plaintiffs to prove what the industry is, what the knowledge was, and why the particular defendants were or should have been privy to that knowledge. This argument does not justify equating all the defendants as members of "the asbestos industry." As to use of the term "asbestos defendants," plaintiffs assert usage of that term saves time. Because the defendants are sued for their roles in exposing Cortez to asbestos, which plaintiffs will have to prove as to each of them, the Court fails to see how use of the term "defendants" would not suffice. The use of "asbestos" before "defendants" does nothing but add a toxic label. The Court grants the motion under Fed. R. Evid. 403.

### B.     Motion *in limine* to Prohibit the Term "Asbestos Victim"

Defendants move to prohibit plaintiffs from referring to Callen Cortez as an "asbestos victim" or "victim of asbestos" as unfairly prejudicial. The motion is denied. The Court granted summary judgment to plaintiffs on the issue of whether

Cortez's mesothelioma was caused by asbestos exposure. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 1135830, at *2 (E.D. La. Apr. 18, 2022). The use of "asbestos victim" or "victim of asbestos" is not unduly prejudicial given the cause of decedent's illness.

### C. Motion *in limine* to Prohibit Reference to Medical Conditions of Individuals Other Than Callen Cortez

Defendants move to exclude or prohibit reference to medical conditions of Callen Cortez's spouse, children, co-workers, or other family members. The Court denies the motion as to evidence that Cortez's family members or co-workers suffered from asbestos-related injuries. Plaintiffs have not pointed to any evidence of any other potentially relevant medical conditions of Cortez's wife, children, co-workers, or other family members. Such evidence is excluded as irrelevant.

### D. Motion *in limine* to Prohibit References to Liability Insurance

Defendants move *in limine* to exclude evidence of insurance under Rule 403 of the Federal Rules of Evidence because such evidence would unfairly influence the jury's determination of liability or damages. Plaintiffs concede that the amount of insurance coverage is inadmissible, and that the Rule 411 forbids the use of evidence of the presence or absence of liability insurance to prove whether a person

acted wrongfully. Plaintiffs contend that evidence of insurance is admissible for other purposes. The Court grants defendants motion as to evidence of the amount of liability coverage and as to any use designed to prove that a person acted wrongfully. But plaintiffs sued a number of insurers in this case under the Louisiana Direct Action Statute. For plaintiffs to recover against these defendants, there must be evidence of insurance coverage. Unless defendants stipulate that specific parties are covered by specific insurance policies, plaintiffs may introduce insurance policies into evidence against the insurer defendants. Plaintiffs also argue that jurors may be informed that insurance is at issue when they must make a fact finding necessary to a determination of a coverage issue. Plaintiffs point to no such coverage issues in this case, and the Court will not rule on hypothetical issues.

### E.   Motion *in limine* to Prohibit Reference to Any Defendant's Financial Condition

Defendants move to exclude evidence of their income, profits earned, or financial status as irrelevant and unduly prejudicial. Plaintiffs contend that the evidence is relevant to the application of the Walsh-Healey Act and the "professional vendor" issue. The Court finds evidence of defendants' income, profits earned, or financial condition irrelevant. The Walsh-Healey Act applied to furnishing materials and equipment worth more than $10,000. Plaintiffs have not

suggested that any defendant contests that it met the monetary threshold for application of the Walsh-Healey Act, and proof of defendants' general financial condition, overall income, or sales is unnecessary to establish this threshold.

As to the "professional vendor" theory, that is a defendant-specific issue, and plaintiffs have not identified which defendants they contend were professional vendors. Further, the doctrine does not require proof of the total income, profits, or the general financial condition of a seller. The relevant inquiry is sales volume of the product at issue, merchandising practices, and scope of operations—not total income or profits. *See Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926, 930 (La. 1978). Defendants' motion is granted except to the extent that "professional vendor" status is at issue as to a defendant, and plaintiffs' line of inquiry is limited as stated in this paragraph.

### F.     Motion *in limine* to Exclude Evidence of Punitive Damages

The defendants seek to exclude evidence to support an award of punitive damages against defendants because there is no evidence of conduct entitling plaintiffs to such relief. Plaintiffs point to no such evidence as to any specific defendant, but apparently argue that there might be. This glib argument does not respond to the motion. Plaintiffs should know by now which defendants, if any, they contend are liable for punitive damages. The motion is granted.

### G.  Motion *in limine* to Exclude Lay Opinion Regarding Asbestos Dust

Defendants contend that testimony by Callen Cortez and his brothers, that the dust emitted from work with asbestos-containing products contained asbestos, must be excluded because it is the proper subject of expert opinion.  Lay opinion is admissible if: (1) it is rationally based on the witness's perception; (2) it is helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) it is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.

The Court finds the testimony is admissible.  All three individuals worked with and around asbestos-containing products extensively during their careers. Their experience with these products was that they contained asbestos and produced dust when cut or manipulated.  Their testimony that the products contained asbestos was based on information available to them from working with these products.  As to their opinion that dust produced by manipulation of these asbestos-containing products contained asbestos, this is a permissible inference rationally based on their perception as witnesses. Scientific or technical knowledge is not required to permit an inference that if an asbestos-containing product produces dust when cut, the dust will contain what the product contains.

7

Defendants can challenge this inference by cross-examination. The motion to exclude this evidence is denied.

### H. LIGA's Motion to Exclude Opinion About the Content of Dust on Calise Cortez's Work Clothes in 1967

The Louisiana Insurance Guaranty Association ("LIGA") moves to exclude evidence about the content of dust on Calise Cortez's work clothes in 1967. Callen Cortez testified that his father, Calise Cortez, came home from the Nine Mile Point power plant covered with white dust. He concluded that his father worked with asbestos-containing products at Nine Mile Point because the dust looked like the same dust he himself got on his clothes when he worked around insulation at various job sites. LIGA points out that Cortez had no experience working with or around asbestos in 1967, when he claims his father worked for Gabler Insulation, Inc. ("Gabler") at Nine Mile Point. LIGA's point is well taken. Plaintiffs' testimony about the content of the dust on his father's clothes is not based on his perception at the time, because he had never worked with asbestos and specifically testified that he concluded that the 1967 dust contained asbestos because it looked like the dust he was later covered in when he worked around asbestos products. This testimony is extrapolation and is not based on the perception of the witness at the

8

time he was talking about. The testimony is too speculative to be probative. The motion is granted.

The Court further notes that it has already granted summary judgment to Entergy on the grounds that there was no admissible evidence that Callen Cortez's father worked at Nine Mile Point. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 1320429, at *5 (E.D. La. May 3, 2022). Further, the Court excluded evidence that Calise Cortez said he worked there as inadmissible hearsay. *Id.*

### I. Motion to Exclude Cumulative Deposition Testimony

Defendant's motion is deferred until trial.

### J. Motion *in limine* to Exclude Any Reference to Hopeman Brothers, Inc.'s Work at Halter Marine

Hopeman Brothers, Inc. ("Hopeman") seeks to exclude evidence of its work at Halter Marine because it asserts there is no evidence that it installed asbestos-containing wallboard there. The Court has already denied Westinghouse's summary judgment motion in this issue, on the grounds that testimony from Callen Cortez created an issue of material fact as to whether Hopeman installed asbestos-containing wallboard at Halter Marine when it worked there. *Cortez v.*

*Lamorak Ins. Co.*, No. 20-2389, 2022 WL 2714111, at *3 (E.D. La. July 13, 2022). For the same reasons, the Court denies this motion.

### K. LIGA's motion to Exclude the Deposition of Gustav von Bondugen

LIGA, as successor to the insurer of Gabler, moves to exclude the deposition testimony of Gustav von Bondugen, an Entergy representative, which was taken in an unrelated proceeding. LIGA contends that the deposition has not shown compliance with Federal Rule of Civil Procedure 32(a)(8), which requires the deposition to involve the same subject matter between the same parties, their representatives, or successors in interest to the same extent as if taken in the later action. LIGA also contends that there is no admissible evidence that Calise Cortez worked at Nine Mile Point for Gabler.

Plaintiffs contend that they may use the deposition at trial because Entergy is a party-defendant. Entergy was granted summary judgment on the grounds that there was no admissible evidence that Calise Cortez worked at Nine Mile Point, the only proffered evidence amounting to inadmissible hearsay. *Cortez*, 2022 WL

2714111, at *5. The Court also granted LIGA's motion *in limine* to exclude Calise Cortez's hearsay statements that he worked at Nine Mile Point. *Id.*

Plaintiffs have not shown that the deposition satisfies Rule 32(a)(8) for use against Gabler. LIGA's motion is granted.

### L.   Westinghouse's Motion *in limine* to Exclude the Bair Memorandum

ViacomCBS, Inc. ("Westinghouse") moves to exclude a 1987 draft memorandum by a Westinghouse in-house attorney regarding a proposed document retention program under Rules 401, 403, and 801 of the Federal Rules of Evidence.

The convoluted sequence of events regarding the memorandum and related documents is as follows. In October of 1987, Jeffrey Bair, Westinghouse's in-house counsel, was tasked with reviewing documents in the custody of the Westinghouse Industrial Hygiene department and developing a document retention and disposal policy.[7] At some point in late 1987, Bair drafted the memorandum at issue here. The memorandum contains references to documents described as potentially problematic to Westinghouse's pending and future litigation efforts, including the characterization of some documents as "smoking gun[s]."[8] In the memorandum,

---

7    R. Doc. 929-12 at 10.
8    R. Doc. 929-13 at 22.

Bair suggested the disposal of several different groups of documents, including plant correspondence files created before 1974, which Bair asserted were potentially harmful due to opinionated "self-analysis" and "editorializing" commentary on the company's practices by Westinghouse employees.[9] A January 22, 1988 draft letter from Bair to Wayne Bickerstaff, a manager in the Industrial Hygiene department, stated that the document retention guidelines had been developed and the program was to be implemented.[10] On January 29, 1988, a letter authored by Bickerstaff, which significantly resembled the draft Bair had sent one week before, stated that the document retention system had been developed.[11] He described the same system outlined in the January 22 draft letter and the Bair draft memorandum, explaining that the firm would begin to implement the measures described in the correspondence, and noted that the project would be completed by June of 1988.[12]

In a February 9, 1988 memorandum, Bair instructed the Industrial Hygiene department <u>not</u> to begin the document reduction program until the files were reviewed to ensure that documents relevant to ongoing insurance coverage litigation were not discarded, which "should take place within the next few

---

[9]  *Id.* at 28-29.
[10] R. Doc. 929-14 at 3-4.
[11] *Id.* at 1-2.
[12] *Id.* at

weeks."[13]  He also stated that all documentation relating to asbestos and other toxic-tort litigation should be maintained.[14]  After that, Bair's personal notes for March 3, 1988 reflect that he had informed Wayne Bickerstaff to begin discarding documents.  On March 8, 1988, Bair sent a memorandum to his supervisor stating that Bickerstaff and his staff had begun discarding documents per the retention guidelines.[15]  Bair's handwritten notes from late-March state that Westinghouse management decided not to implement his plan and concluded that Industrial Hygiene records should not be destroyed.  In 1993, Bair gave an affidavit likewise saying that Westinghouse management decided not to follow the recommendations contained in the draft memorandum and that no asbestos-related documents were destroyed in response to the memorandum.[16]  S.R. Pitts, Vice President of Environmental Affairs for Westinghouse, also testified in 1993 that he was assured by Bair and other Westinghouse in-house attorneys that no asbestos-related documents were destroyed, and that to the extent Bair's March 8 memorandum indicated otherwise, it was mistaken.[17]

Here, the parties present two different narratives as to the Bair memorandum and related evidence.  Plaintiffs assert that the Bair memorandum

---

[13]  *Id.* at 5
[14]  *Id.* at 7.
[15]  *Id.* at 11.
[16]  *Id.* at 12-13 (Bair Affidavit).
[17]  R. Doc. 929-15 at 6-7 (Deposition Testimony of S.R. Pitts at 24:10-25:23)

and accompanying documents support a finding that Westinghouse destroyed documents that it felt would have hampered the firm in toxic-tort litigation. They argue that, at the very least, the program was implemented on January 29, 1988, and that between that time and Bair's guidance on February 9, 1988, countless documents may have been destroyed. Defendant contends that, taken as a whole, the records reflect that Westinghouse never destroyed, or intended to destroy, potentially discoverable materials in toxic-tort cases. Westinghouse asserts that the contemplated document management system, had it gone into effect, would have excluded asbestos documentation from the classes of documents to be destroyed. Defendant further asserts that the plan contemplated in Bair's draft memorandum was never implemented, so no industrial hygiene documents were destroyed pursuant to the plan laid out in the draft memorandum. The Court finds the memorandum is inadmissible.

### 1. *Hearsay*

The Court addresses the hearsay contentions first. Federal Rule of Evidence 803(16) provides that a "statement in a document that was prepared before January 1, 1998, and whose authenticity is established" is excepted from hearsay. Fed. R. Evid. 803(16). Because there is no dispute as to the authenticity of the memorandum, and it was prepared prior to 1998, the Court finds that it is not

barred by the hearsay rule. Nevertheless, the Bair draft memorandum is inadmissible for the reasons in Section II.L.2, *infra*.

    2.   *Rule 403*

Westinghouse also moves on the basis that the Bair memorandum lacks relevance, or alternatively, that any relevance the document may have is substantially outweighed by its unfair prejudicial effects. Rule 403 of the Federal Rules of Evidence provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Plaintiffs state that the Bair memorandum is relevant to their fraud claim, but plaintiffs' fraud claim was dismissed on the merits on summary judgment. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 2921375, at *5 (E.D. La. July 25, 2022). The evidence is not relevant to the extent it is offered to prove a claim that has been dismissed from the case. Further, plaintiffs never even argued about the Bair scenario in response to the defendants' motion for summary judgment on plaintiffs' fraud claims.

Plaintiffs also argue that this evidence is relevant to their intentional-tort claims, because spoliation is an intentional tort. But the court also dismissed plaintiff's intentional-tort claims on summary judgment. *Id.* There is no remaining

15

intentional-tort claim against Westinghouse in the case. Further, plaintiffs never argued about this scenario in response to defendants' motion for summary judgment on plaintiffs' intentional-tort claims. And, they did not even include spoliation as a factual or legal issue in the Proposed Pretrial Order.[18]

Further, even if the above facts were not true, Westinghouse admitted in discovery that it was aware of the dangers of asbestos at the time of plaintiff's exposure.[19] To the extent plaintiffs assert that Westinghouse had documents pre-dating 1974 that reflected its knowledge of asbestos hazards, this evidence is cumulative of evidence plaintiffs already have. Further, plaintiffs have much other evidence of industry knowledge of asbestos hazards.[20] And, the Bair evidence itself is not strong. Litigating the Bair scenario involves many documents and several witnesses, and to put this before the jury would consume precious trial time in a mini-trial on an issue that is of at best marginal relevance. Proof of the Bair scenario is excluded under Rule 403 as its probative value, if any, is substantially

---

18   *See* R. Doc. 1228.
19   *See* R. Doc. 652-6 at 113:10-13 (Deposition of Mark Perrello) ("Westinghouse . . . probably in the [19]30s or [19]40s became aware of asbestos and some hazard potential.").
20   Plaintiffs say that the Bair memorandum would help explain to the jury why certain evidence is missing. But they have not identified any missing evidence. Indeed, plaintiffs have pointed to no evidence that Westinghouse's document production was deficient. Nor have they sought a ruling during discovery that Westinghouse's production was inadequate, or specified documents that should have been produced but were not.

outweighed by its propensity to waste time, unduly delay the trial, mislead the jury, and involve the needless presentation of cumulative evidence.

## III. CONCLUSION

For the foregoing reasons, the defendants' omnibus motion *in limine* is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this __24th__ day of October, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE